UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| TUCKERBROOK ALTERNATIVE INVESTMENTS, LP., <br><br>                  Plaintiff <br> v. <br><br> SUMANTA BANERJEE, <br><br>                  Defendant. | ) <br> ) <br> ) <br> ) <br> ) CASE NO. <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) |

## COMPLAINT

## INTRODUCTION

1.     In May 2006, Plaintiff Tuckerbrook Alternative Investments L.P. ("Tuckerbrook") hired Defendant Sumanta Banerjee (`Banerjee") to manage the investments in two of Tuckerbrook's proprietary hedge funds, the Global Distressed Fund ("GDF") and the Global Special Situations Fund ("GSS") (collectively, the "Funds").

2.     Soon thereafter, Banerjee violated the non-competition, intellectual property, and confidentiality clauses of his employment agreement by, among other things:  (i) trying to steal the Funds and new funds Tuckerbrook was developing; (ii) divulging confidential information and work product of Tuckerbrook to its competitors and potential employers; (iii) retaining Tuckerbrook's confidential information after his separation from Tuckerbrook; (iv) claiming as his own Tuckerbrook's legal, analytical, performance and marketing materials; (v) disparaging Tuckerbrook during and following his employ; and (vi) encouraging and enabling other Tuckerbrook employees to leave their employ and steal Tuckerbrook's intellectual property.

3.     When Tuckerbrook discovered Banerjee's wrongdoing, it filed an action against

1

him in the United States District Court for the District of Massachusetts, Tuckerbrook Alternative Investments L.P. v. Sumanta Banerjee, C.A. No. 08-10636-PBS ("Tuckerbrook v. Banerjee I").

4.      On September 24, 2008, the parties entered into a settlement agreement ending the lawsuit. The terms of the settlement were confidential, but generally provided, among other things, that Banerjee would not compete with Tuckerbrook in any way or interfere with Tuckerbrook for a year after the date of the settlement, and that Banerjee would not disparage Tuckerbrook.

5.      In the course of discovery in a separate proceeding filed after the settlement, Alkek & Williams Ltd. et al v. Tuckerbrook Alternative Investments L.P. et al., Case No. 4:08-CV-3501, pending in the United States District Court for the Southern District of Texas (the "Alkek Lawsuit"), Tuckerbrook learned of overwhelming evidence of Banerjee's blatant breaches of the settlement by, inter alia, sharing the terms of the confidential agreement with the plaintiff in the Alkek Lawsuit, interfering with Tuckerbrook's relationships, claiming Tuckerbrook's work product as his own, and disparaging Tuckerbrook and its business.

## PARTIES

6.      Plaintiff, Tuckerbrook Alternative Investments, LP, is a limited partnership organized under the laws of the State of Delaware, and has its principal place of business at the America's Cup Building, 30 Doaks Lane, Marblehead, Massachusetts 01945.

7.      Defendant Sumanta Banerjee, an individual, believed to be an Indian and American citizen who resides in Weston, Connecticut and India.

2

## JURISDICTION AND VENUE

8.      This Court has personal jurisdiction over Defendants pursuant to M.G.L. c. 223A, Section 3.

9.      This Court has subject matter jurisdiction over this action based upon diversity of citizenship pursuant to 28 U.S.C. § 1332(a)(1) and the fact that the amount in controversy exceeds $75,000.

10.     Venue in the District of Massachusetts is appropriate pursuant to 28 U.S.C. § 1391(a) because a substantial part of the events or omissions giving rise to this claim occurred in Massachusetts and/or a substantial part of property that is the subject of the action is situated in Massachusetts.

## STATEMENT OF FACTS

11.     At all relevant times, Tuckerbrook was a registered investment advisor regulated by the Securities and Exchange Commission and manages hedge funds and private equity fund-of-funds. Tuckerbrook's clients included university endowments, foundations, large and small wealth managers, private banks, fund-of-funds, and other institutions.

12.     Founded in 2003, Tuckerbrook employed 11 employees and maintained offices in Marblehead, Massachusetts and Stamford, Connecticut.

13.     Because of the regulated and highly competitive nature of the investment management business, entities such as Tuckerbrook must protect their confidential business information, including, for example, information regarding the firm's legal, marketing and investment strategies and programs, its business plans, accounting details, and its personnel

information, as well as highly confidential information concerning its clients and prospective clients.

14.    Tuckerbrook takes precautions to protect its proprietary information by limiting its dissemination within the firm by, for example, taking physical security measures at its offices, and by requiring its employees, such as Mr. Banerjee, to sign employment agreements containing confidentiality, non-competition, and non-solicitation provisions.

15.    The development and enhancement of its investment programs and the development of client goodwill were a critical factor in ensuring Tuckerbrook's success. Since its inception, and at great effort and expense, Tuckerbrook developed and successfully marketed several investment programs, including for distressed investments, for which Banerjee was portfolio manager. Clients have included university endowments, foundations, corporate pension plans, wealth managers and fund-of-funds. Tuckerbrook established and cultivated its programs and relationships, and it relied on these programs and relationships to grow its business.

16.    In May 2006, Tuckerbrook hired Banerjee to be a portfolio manager for the Funds.

17.    When he commenced work for Tuckerbrook, Banerjee signed an employment agreement, which contained provisions relating to maintaining the confidentiality of Tuckerbrook's sensitive information, non-solicitation and non-competition clauses, a code of ethics, and an intellectual property ownership clause (the "Employment Agreement").

18.    The Employment Agreement also provided that Banerjee would return all Tuckerbrook material, confidential or not, upon his termination from Tuckerbrook.

19.    Banerjee's role as portfolio manager allowed him access to Tuckerbrook's

proprietary information regarding the Funds, including investment strategy, marketing plans, partnership structure, compensation methods, and existing and prospective client information (the "Trade Secret").

20.     On March 25, 2008, Tuckerbrook terminated Mr. Banerjee's employment, on the grounds that he breached his Employment Agreement.

21.     Tuckerbrook then sought and obtained, in Tuckerbrook v. Banerjee I, temporary injunctive relief requiring that Mr. Banerjee abide by the Employment Agreement.

22.     Banerjee counterclaimed for, inter alia, wrongful termination.

23.     On September 23, 2008, following a day of mediation with Magistrate Hillman conducted in Worcester, Massachusetts, Tuckerbrook and Mr. Banerjee entered into a settlement resolving Tuckerbrook v. Banerjee I.

24.     The settlement was memorialized in two ways: a written settlement agreement (the "Written Settlement Agreement") and a transcription in open court in the U.S. District Court for the District of Massachusetts in Boston of an 11-point, detailed account of the settlement reached during mediation (the "Transcribed Settlement") (the Transcribed Settlement and the Written Settlement Agreement are referred to collectively herein as the "Settlement").

25.     The Transcribed Settlement provided that Banerjee would not, for a period of one year after the Settlement Date:

> directly or indirectly as a consultant, employee of a third party, or in any other capacity or fashion work for and/or receive payment, compensation, or any other consideration from any current or former limited partner of GDF or GSS and will not directly or indirectly as a consultant, employee of a third party, or in any other capacity or fashion work for and/or receive payment, compensation, or any other consideration from or advise in any way the GDF or GSS partnerships, their general partner or affiliates as defined in the respective limited partnership agreements or GDF, GSS. Further, Mr. Banerjee will not interfere with any relations Tuckerbrook has or will have with the limited partners to GDF or GSS or the third-

5

party vendors or other affiliates of GDF or GSS.

(for reference the foregoing will be referred to herein as the "Settlement Non-competition Provision").

26.    Further, the Transcribed Settlement provided that the terms of the settlement were to be kept confidential, except that the parties could disclose to the limited partners of the Funds the Settlement Non-competition Provision.

27.    The Transcribed Settlement provided for the dismissal with prejudice of the claims and counterclaims in Tuckerbrook v. Banerjee I.

28.    As stipulated in the Transcribed Settlement, the Settlement Agreement contained mutual releases by both Banerjee and Tuckerbrook.

29.    Specifically, Tuckerbrook released Banerjee from:

> any and all claims, including both known and Unknown Claims . . . liabilities, causes of action, rights of action and actions, demands, suits, proceedings, damages, costs, fees and expenses, and any and all claims, demands, and liabilities whatsoever, of every name and nature, both at law and in equity, from the beginning of time to the Settlement Date, that TB has ever had or ever may have had against Banerjee . . . *except that* nothing in the Release is intended to or shall relieve Banerjee of their obligations under the settlement as reported to the Court.

(emphasis added).

30.    Similarly, Banerjee released Tuckerbrook from:

> any and all claims, including both known and Unknown Claims . . . liabilities, causes of action, rights of action and actions, demands, suits, proceedings, damages, costs, fees and expenses, and any and all claims, demands, and liabilities whatsoever, of every name and nature, both at law and in equity, from the beginning of time to the Settlement Date, that Banerjee has ever had or ever may have had against TB . . . *except that* nothing in the Release is intended to or shall relieve TB of its obligations under the settlement as reported to the Court.

31.     Further, the Settlement Agreement provided that:

> The Parties agree and warrant that they will refrain from making,
> disseminating, posting, publishing, placing on Web sites, or
> otherwise distributing any derogatory or disparaging comments,
> whether orally, visually, or in writing, whether electronic or hard
> copy, to third parties regarding the other Party or its/his funds,
> partnerships, limited liability companies, business, products,
> services, or practices, or regarding its principals, employees,
> founders, customers, clients, or investors.

32.     The Settlement Date was September 23, 2008.

33.     Banerjee and Tuckerbrook each signed the Settlement Agreement.

34.     Tuckerbrook provided substantial consideration for the bargain of the
Settlement, including a substantial cash payment to Banerjee. The confidentiality provision, the
Settlement Non-competition Provision, the non-interference provision, and the non-
disparagement provision of the Settlement each were material to Tuckerbrook's willingness to
enter into the Settlement.

35.     After the date of the Settlement, Banerjee remained in possession of certain of
Tuckerbrook's Trade Secrets, including but not limited to sensitive work product and a database
of confidential client information.

36.     On November 26, 2008, the Alkek Foundation, which is one of the limited
partners of the GSS, filed a lawsuit against the GSS partnership and Tuckerbrook alleging,
among other things, certain breaches by the partnership, and breaches by Tuckerbrook of its
obligations as the general partner and investment manager for the GSS fund.

37.     Discovery in the Alkek Lawsuit in August and September 2009 revealed that
Banerjee has breached the terms of the Settlement.

38.     Specifically, the Director of the Plaintiff in the Alkek Lawsuit testified, in a
deposition in the Alkek Lawsuit, that Banerjee revealed to him the confidential terms of the

Settlement on the very day after the Settlement was reached.

39.     Further, Banerjee has interfered with Tuckerbrook's relationship with the limited partners of the Funds and the general partner of GSS, by assisting and coordinating with Alkek in its lawsuit against Tuckerbrook.

40.     In addition, Banerjee has been disparaging Tuckerbrook to, at minimum, Alkek, and, upon information and belief, to other current and prospective clients and business partners of Tuckerbrook.

41.     Further, upon information and belief, after the Settlement Date, Banerjee has claimed Tuckerbrook's work product and Trade Secrets as his own.

42.     Moreover, upon information and belief, after the Settlement Date, Banerjee has used Tuckerbrook's work product and Trade Secrets in competition with Tuckerbrook by offering to provide them or actually providing them to Tuckerbrook's competitors, in an effort to compete with Tuckerbrook.

43.     Mr. Banerjee's assistance to Alkek in its lawsuit, his continuing disparagement of Tuckerbrook, his breach of confidentiality regarding the terms and conditions of the Settlement Agreement, his continuing interference with Tuckerbrook limited partners, and his theft of Tuckerbrook's work product and Trade Secrets has caused and continues to cause substantial injury and damage to Tuckerbrook and the GSS fund.

## COUNT I

### (Breach of Contract)

44.     Plaintiff realleges and incorporates by reference its allegations set forth in the foregoing paragraphs as if fully set forth herein.

45.     The Settlement is a valid contract and Tuckerbrook has performed its obligations under the Settlement.

8

46.     The Settlement provides that Banerjee is not to compete with Tuckerbrook,
interfere with Tuckerbrook's relationships or disparage Tuckerbrook from September 23, 2008
through September 23, 2009 (the "Restricted Period").

47.     In violation of the Settlement, during the Restricted Period, Banerjee has:

- disparaged Tuckerbrook;

- interfered with Tuckerbrook's client and partner relationships; and

- competed with Tuckerbrook or made significant efforts to compete with
  Tuckerbrook, including by offering to provide or actually providing
  Tuckerbrook's Trade Secrets to Tuckerbrook's competitors.

48.     Mr. Banerjee's disparagement of and interference and competition with
Tuckerbrook has caused, is continuing to cause and threatens to cause Tuckerbrook to suffer
substantial damages.

## COUNT II

### (Tortious Interference with Contract and/or Advantageous Business Relations)

49.     Plaintiff realleges and incorporates by reference its allegations set forth in the
foregoing paragraphs as if fully set forth herein.

50.     Tuckerbrook had contractual and/or advantageous business relations with its
employees, clients, prospective clients and its partners in the Funds as of the Settlement Date.

51.     After the Settlement Date, Banerjee, with knowledge of Tuckerbrook's
contractual and/or advantageous business relations, intentionally interfered with Tuckerbrook's
relations by, among other things, disparaging Tuckerbrook to its partners and employees and
assisting Tuckerbrook's partner with a lawsuit against Tuckerbrook.

52.     Banerjee's motive in interfering with Tuckerbrook's contractual and/or
advantageous business relations was improper.

53.     Tuckerbrook has suffered and will continue to suffer harm as a result of the defendant's tortious interference with its contractual and/or advantageous business relations, in an amount to be determined at trial.

## COUNT III

### ((Misappropriation of Trade Secrets)

54.     Plaintiff realleges and incorporates by reference its allegations set forth in the foregoing paragraphs as if fully set forth herein.

55.     Tuckerbrook's confidential and proprietary information regarding the Funds, including investment strategy, portfolio construction methods, research and analytics, marketing plans, partnership structure, compensation methods, and existing and prospective client information are trade secrets.

56.     Tuckerbrook's Trade Secrets are not known outside of Tuckerbrook's business and are known only to employees of Tuckerbrook.

57.     Tuckerbrook expended great effort and money to develop the Trade Secrets.

58.     Tuckerbrook took reasonable steps to protect the confidentiality of the Trade Secrets, including, but not limited to, disclosing the Trade Secrets only to certain of its employees and client relationships under the condition of confidentiality.

59.     By virtue of his employment with Tuckerbrook, Banerjee learned of Tuckerbrook's Trade Secrets.

60.     The Trade Secrets were and are of enormous value to Tuckerbrook as its own and that value is depleted by the unauthorized, improper use of the Trade Secrets and claims by Banerjee that they are his.

61.     Banerjee has, after the Settlement Date, used the Trade Secrets for his own benefit and by improper means by, inter alia, claiming that Tuckerbrook's Trade Secrets are his own work product and by offering to provide them, or actually providing them, to Tuckerbrook's competitors.

62.     Tuckerbrook has been harmed by Banerjee's theft and use of the Trade Secrets.

## COUNT IV
### (Violation of MGL Ch. 93A)

63.     Plaintiff realleges and incorporates by reference its allegations set forth in the foregoing paragraphs as if fully set forth herein.

64.     Banerjee's conduct as described herein constitutes an unfair and deceptive trade practice within the meaning of M.G.L. ch. 93A, entitling Tuckerbrook to an award of treble damages and attorney's fees.

## COUNT V

### (Breach of 2011 Settlement Agreement)

65.     Plaintiff realleges and incorporates by reference its allegations set forth in the foregoing paragraphs as if fully set forth herein.

66.     On or about June 29, 2011, Tuckerbrook and Banerjee entered into a settlement agreement, a material term of which was that Banerjee would appear for his deposition and testify truthfully.

67.     On July 21, 2011, Mr. Banerjee appeared for his deposition.

68.     After Mr. Banerjee testified, Tuckerbrook challenged his truthfulness.  In accordance with the terms of the settlement agreement, the parties submitted the issue of Mr. Banerjee's truthfulness to a neutral arbitrator, the Honorable Margaret Hinkle of JAMS Arbitration.

69.     On September 7, 2011, this Court ordered the administrative closure of the case, tolled the statute of limitations, and allowed for a motion to re-open if the moving party demonstrated that the impediment to trial had been removed.

70.     On May 9, 2012, Arbitrator Hinkle issued her decision, finding that Mr. Banerjee testified untruthfully and declaring the settlement between the parties null and void in accordance with its terms.

71.     Because the settlement has been declared void, Tuckerbrook is entitled to proceed to prosecute all of its claims against Mr. Banerjee.

72.     Because Mr. Banerjee breached the Settlement Agreement, Tuckerbrook is also entitled to recover all consequential damages incurred as a result of his breach of that Agreement.

## PRAYERS FOR RELIEF

WHEREFORE, Plaintiff Tuckerbrook respectfully requests that this Court:

a.  Grant Tuckerbrook judgment on each of its claims;

b.  Award Tuckerbrook damages, including but not limited to direct, consequential, and incidental damages, in relation to each Count;

c.  Order Banerjee to return the financial consideration that Tuckerbrook paid to Banerjee as part of the Settlement;

d.  Extend the Restricted Period;

e.  Order Banerjee to cease and desist from disclosing any and all Tuckerbrook work product, confidential information, and/or Trade Secrets to anyone;

f.  Preliminarily and permanently enjoin Banerjee from further disparagement of Tuckerbrook;

g.  Order Banerjee to provide the names of anyone with whom Banerjee has communicated concerning Tuckerbrook or Tuckerbrook's Trade Secrets or other work product after September 23, 2008;

h.      Order Banerjee to provide the names of anyone to whom he disclosed the
        confidential terms of the Settlement;

i.      Grant Tuckerbrook such further and other relief as the Court deems just
        and proper, including costs and attorney's fees incurred in this action.

**PLAINTIFF DEMANDS A TRIAL BY JURY ON COUNTS SO TRIABLE**.

Respectfully submitted,

TUCKERBROOK ALTERNATIVE
INVESTMENT, LLP

By their attorneys,

   /s/ Sean T. Carnathan
Sean T. Carnathan (BBO #636889)
scarnathan@ocmlaw.net
O'Connor Carnathan and Mack LLC
1 Van De Graaff Drive, Suite 104
Burlington, MA 01803
Telephone:  (781) 359-9000
Facsimile:  (781) 359-9001

September 4, 2012

## CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system will be sent
electronically to the registered participants as identified on the Notice of Electronic
Filing and copies will be sent by electronic and U.S. Mail to those indicated as non-
registered participants on September 4, 2012.

/s/ Sean T. Carnathan

4816-5032-6032, v. 1