EXHIBIT 3

1

1             UNITED STATES DISTRICT COURT
          FOR THE DISTRICT OF MASSACHUSETTS

2

                           Civil Action
3                           No. 09-11672-WGY

4

5   * * * * * * * * * * * * * * *
                          *
6  TUCKERBROOK ALTERNATIVE       *
   INVESTMENTS, LP,          *
7                          *
         Plaintiff,        *
8                          *
   v.                    *  **STATUS CONFERENCE**
9                          *
   SUMANTA BANERJEE,        *
10                          *
        Defendant.        *
11  * * * * * * * * * * * * * * *

12

13

14

                BEFORE:  The Honorable William G. Young,
15                      District Judge

16

   APPEARANCES:
17

18          O'CONNOR, CARNATHAN and MACK LLC (By Sean
   T. Carnathan, Esq.), 1 Van de Graaff Drive, Suite
19  104, Burlington, Massachusetts 01803, on behalf of
   the Plaintiff
20

21          SUMANTA BANERJEE, Pro Se, 23 Soundview Farm
   Road, Weston, Connecticut 06883
22

23

                          1 Courthouse Way
24                          Boston, Massachusetts

25                          June 27, 2012

Case 1:12-cv-11643-LTS   Document 9-3   Filed 04/29/13   Page 3 of 74
Case 1:12-cv-11643-GAO   Document 4-2   Filed 10/26/12   Page 3 of 12

2

1          THE CLERK:  All rise.  The United States District

2     Court is now in session, you may be seated.

3          Now hearing Civil Matter 09-11672, Tuckerbrook

4     Alternative Investments LP v. Banerjee.

5          Will counsel and parties please identify

6     themselves.

7          MR. CARNATHAN:  Good afternoon, your Honor.  Sean

8     Carnathan for the plaintiff, Tuckerbrook Alternative

9     Investments.

10          MRS. BANERJEE:  Akshita Banerjee and Sumanta

11     Banerjee.

12          THE COURT:  Let me -- are you both sued?

13          MRS. BANERJEE:  No, just my husband's sued.

14          THE COURT:  Well, Mrs. Banerjee, you are welcome,

15     but under our rules of procedure only your husband, who's

16     the party, may speak.

17          MRS. BANERJEE:  Okay, thank you.

18          THE COURT:  But you are welcome and you may stay

19     right there --

20          MRS. BANERJEE:  Thank you.

21          THE COURT:  -- where you're seated.

22          I do want to recognize, and respectfully, the

23     presence of two judges from Japan who are here watching our

24     proceedings, and we welcome them to this Court.

25          All right.  Let me start by hearing plaintiff's

Case 1:12-cv-11643-LTS   Document 9-3   Filed 04/29/13   Page 4 of 74
Case 1:12-cv-11643-GAO   Document 4-2   Filed 10/26/12   Page 4 of 12

3

1  counsel.  This is a status conference and why don't you

2  explain the status.

3       MR. CARNATHAN:  Thank you, your Honor.

4       We are back before your Honor after a failed

5  settlement attempt.  We actually had reached an agreement to

6  resolve the dispute.

7       THE COURT:  Well, it's more than an attempt.  I

8  mean, you reported the case settled.

9       MR. CARNATHAN:  Correct, your Honor.  An important

10  material term of the settlement was that Mr. Banerjee appear

11  for his deposition and testify truthfully at that

12  deposition.  We've been trying to secure his testimony for,

13  I want to say about three years now.  We have some related

14  battles going on currently in Connecticut.

15       At Mr. Banerjee's deposition, we did not believe

16  that he was truthful.  One of the terms of the settlement

17  was that if we did not believe he was truthful we could

18  challenge his truthfulness and submit it to a neutral

19  arbitrator.  We did just that.  And the Honorable Margaret

20  Hinkle of JAMS reviewed his testimony and determined that he

21  was untruthful.

22       THE COURT:  I've read your, I've read the

23  submission.  But thank you.  I asked you to give me the

24  status and you are.  But what is it that you want this Court

25  to do having now reported this case settled?

4

1       **MR. CARNATHAN:**  Well, I believe that we were

2   entitled to reopen the matter for good cause shown.

3       **THE COURT:**  What gives you that belief?

4       **MR. CARNATHAN:**  I believe that was your Honor's

5   order.  At the time of the report you had dismissed the

6   matter without prejudice to reopening upon good cause shown.

7       **THE COURT:**  Well, that's true, but then you

8   reported it settled.

9       You see, my problem is this.  I take that report of

10  settlement extremely seriously and in my mind that shifts

11  the relationship between the parties.  It appears having

12  reported the case settled and gotten various advantages from

13  that report neither side had to incur any additional costs,

14  appear at the Court's docket, and I moved on to other

15  matters.

16      Now, I think I'm entitled, and indeed I warned the

17  parties about reporting it settled if it were not, to view

18  the relationship of the parties now as a contractual one.

19  And at least based upon what you tell me the contract has

20  been fulfilled.  He was required -- well, perhaps not.  He

21  was required to appear for his deposition.  He did.  He was

22  required to testify truthfully.  Tuckerbrook says he did

23  not.  The settlement agreement provides what will happen

24  then.  The matter will be submitted to a neutral arbitrator.

25  It was.

Case 1:12-cv-11643-LTS   Document 9-3   Filed 04/29/13   Page 6 of 74
Case 1:12-cv-11643-GAO   Document 4-2   Filed 10/26/12   Page 6 of 12

5

1          MR. CARNATHAN:  Correct, your Honor.

2          THE COURT:  That arbitrator has rendered her

3    decision.

4          MR. CARNATHAN:  Correct.

5          THE COURT:  A distinguished justice of the

6    Massachusetts Superior Court, Margaret Hinkle, and she has

7    concluded that Mr. Banerjee did not testify truthfully.

8          And so, what?

9          MR. CARNATHAN:  Well, as a consequence of that

10   declaration, your Honor, the arbitrator has also declared

11   the settlement null and void.  So Mr. Banerjee has in effect

12   breached the settlement agreement thus entitling us to

13   proceed with our claims.

14         THE COURT:  What gave the arbitrator the power --

15   well, that means that it's -- so you have whatever rights

16   you have against Mr. Banerjee, and go ahead and exercise

17   them.  But I don't have a case before me on which there is a

18   controversy, it seems to me, and I'm limited by the

19   constitution to cases or controversies.

20         MR. CARNATHAN:  Well, the terms of the settlement

21   agreement expressly provide, your Honor, that upon a

22   declaration that Mr. Banerjee failed to testify truthfully

23   our claims are not released and we're entitled to proceed

24   with them.

25         THE COURT:  Fine.

Case 1:12-cv-11643-LTS   Document 9-3   Filed 04/29/13   Page 7 of 74
Case 1:12-cv-11643-GAO   Document 4-2   Filed 10/26/12   Page 7 of 12

6

1    **MR. CARNATHAN:**  So we're proposing to proceed with

2    them, your Honor.

3        **THE COURT:**  Very well.  File a complaint, say it's

4    related to the earlier action, and it will be drawn to me

5    and we will start again.  But the next time don't report

6    things settled when in fact they are not settled.  If you

7    now have the right to proceed against the Banerjees, and you

8    say you have that contractual right, I'm not closing the

9    courtroom doors to you.  But I won't have parties play ducks

10   and drakes with the docket of this Court.  I schedule things

11   on a progression to a final trial.  If I had a trial, I know

12   how to do post-trial relief.  This case was reported

13   settled.  Settlements are much to be encouraged.  If now

14   this settlement has gone -- and I don't impugn anything you

15   say, sir.  All I'm saying is you have to start again.  Start

16   an action.  We'll let them defend it.  I'll put it on for a

17   prompt trial because I'm not, I don't want to waste anyone's

18   time and expense.  I'll get it to trial very rapidly,

19   believe me.  But I need a new case.  A case on which

20   properly I can act.

21       So, Mr. Banerjee, do you have anything to say?

22       **MR. BANERJEE:**  Your Honor, one of the conditions of

23   the settlement was that they got my testimony in a

24   deposition.  I came from India to give that testimony and I

25   gave that testimony truthfully.  And the Honorable Justice

Case 1:12-cv-11643-LTS   Document 9-3   Filed 04/29/13   Page 8 of 74
Case 1:12-cv-11643-GAO   Document 4-2   Filed 10/26/12   Page 8 of 12

7

```
 1    Hinkle didn't apply, she applied some contradiction stuff

 2    and not the perjury standards.  And I testified absolutely

 3    truthfully.  And they are entitled to their views.  And I'm

 4    happy to settle.  I want this thing settled.  There's

 5    nothing in this.  They just want information from me for

 6    another case.

 7              THE COURT:  It sounds like, that sounds right to

 8    me.  But be that as it may, your rights are contract rights.

 9         MR. BANERJEE:  Yes.

10              THE COURT:  If they bring now their original action

11    again --

12         MR. BANERJEE:  Right.

13              THE COURT:  -- saying that the settlement by its

14    terms is now null and void and that entitles them to bring

15    their action, you may attack their action --

16         MR. BANERJEE:  Uh-huh.

17              THE COURT:  -- by saying that action is all over

18    and in fact I have fully complied with whatever the

19    settlement was.  I express no opinion on any of that.

20         MR. BANERJEE:  Right.  Thank you, your Honor.

21         THE COURT:  But I have no basis to.

22         MR. BANERJEE:  Right.  Right.

23         THE COURT:  But that doesn't mean I will so

24    conclude --

25         MR. BANERJEE:  Yes.
```

Case 1:12-cv-11643-LTS   Document 9-3   Filed 04/29/13   Page 9 of 74
Case 1:12-cv-11643-GAO   Document 4-2   Filed 10/26/12   Page 9 of 12

8

1        THE COURT:  -- or that they can't go forward.

2        MR. BANERJEE:  Absolutely.

3        THE COURT:  I, I am here to give people their

4    rights according to law.  The only -- if anyone has slipped

5    a stitch here, it's only that before things were clear

6    someone reported to me the case was settled.  That's very

7    serious business.  And for very good reason.  Because the

8    Court's time is limited.  I went on to other cases.

9        MR. BANERJEE:  Right.

10       THE COURT:  Other people say they want trials.  I'm

11   here to give trials.  I have been engaged with those other

12   people.

13       MR. BANERJEE:  Right.

14       THE COURT:  And all I'm saying, really to you both,

15   you can't come back now.  Maybe they can start again.

16   Maybe.  We'll see.  You have all the defenses that you

17   originally had, and of course I don't know, I've just --

18   this is the first time I've met you.  Before I saw

19   attorneys.

20       MR. BANERJEE:  Right.

21       THE COURT:  And I was trying to get the dispute

22   ready for trial.

23       MR. BANERJEE:  Right.

24       THE COURT:  Then I was told it's over, the parties

25   have agreed.  Now, that's much to be preferred.  If you

Case 1:12-cv-11643-LTS  Document 9-3  Filed 04/29/13  Page 10 of 74
Case 1:12-cv-11643-GAO  Document 4-2  Filed 10/26/12  Page 10 of 12

9

```
1    seriously want to settle.  These things are expensive.  No
2    one would be happier if in fact you settled.  But I have
3    nothing before me, so I'll take no action.  But Tuckerbrook
4    has every right at least to allege that they now have a
5    right to substantive relief.  And the relief that they
6    originally wanted was a lot more than just getting your
7    deposition.  They may have settled for that, but they're not
8    going to sit still for that now.  Now they're going to come
9    back and they say they want something more.  I don't know
10   because we haven't had the taking of actual evidence, the
11   way cases should be resolved.
12           MR. BANERJEE:  Right.
13           THE COURT:  Are there any questions?
14           MR. CARNATHAN:  Well, your Honor, before we
15   conclude, may I respectfully suggest that perhaps another
16   way to approach this, given that your Honor has already
17   granted our motion to reopen and is here today to hear us,
18   perhaps we could proceed with this action and amend our
19   complaint.  Your Honor may recall we had some substantial
20   difficulties serving Mr. Banerjee.  It's not as easy as
21   restarting the matter as one might like.
22           THE COURT:  I understand.  Now that I've heard you,
23   I think I was improvident.  You reported the case settled.
24   Now, he's here, physically.  Maybe -- I'll ask him this.
25           You have no problem, since you're physically
```

Case 1:12-cv-11643-LTS   Document 9-3   Filed 04/29/13   Page 11 of 74
Case 1:12-cv-11643-GAO   Document 4-2   Filed 10/26/12   Page 11 of 12

10

1    present, and indeed you were residing in Connecticut, I

2    understand.

3              MR. BANERJEE:  Well, we have a house in India and

4    in Connecticut.

5              THE COURT:  Right.  But you'll accept service?

6              MR. BANERJEE:  Now?

7              THE COURT:  Yes, on a renewed complaint.

8              MR. BANERJEE:  Yes.  I mean, sure.

9              THE COURT:  All right.  They'll serve you in the

10   ordinary course at your home in Connecticut.  I will deem

11   that sufficient.

12             Is that all right?

13             MR. BANERJEE:  Yes, that's fine.

14             THE COURT:  Satisfied?

15             MR. CARNATHAN:  Thank you, your Honor.

16             THE COURT:  All right.  Thank you both.  We'll

17   recess.

18             THE CLERK:  All rise.

19             (Whereupon the matter concluded.)

20

21

22

23

24

25

1                    C E R T I F I C A T E

2

3

4           I, Donald E. Womack, Official Court Reporter for

5    the United States District Court for the District of

6    Massachusetts, do hereby certify that the foregoing pages

7    are a true and accurate transcription of my shorthand notes

8    taken in the aforementioned matter to the best of my skill

9    and ability.

10

11

12

13

14           _____
                    DONALD E. WOMACK
15                Official Court Reporter
                     P.O. Box 51062
16         Boston, Massachusetts 02205-1062
                  womack@megatran.com
17

18

19

20

21

22

23

24

25

EXHIBIT 4

## SUPPLEMENTAL SETTLEMENT AGREEMENT

This **SUPPLEMENTAL SETTLEMENT AGREEMENT**

("Agreement") is made and entered into by and between Sumanta Banerjee

("Banerjee") and Tuckerbrook Alternative Investments, LP ("Tuckerbrook") and all

of their respective predecessors and successors, servants, employees, officers,

directors, parents, subsidiaries, general, joint venture and limited partners,

shareholders, investors, affiliates, divisions and entities, heirs, trusts,

beneficiaries, agents, representatives, spouses, attorneys, assigns, and anyone

else claiming by or through any of them or on their behalf.  The foregoing are

referred to herein collectively as "the Parties".

**WHEREAS,** Tuckerbrook filed an action entitled *Tuckerbrook Alternative*

*Investments, LP v. Sumanta Banerjee* in the United States District Court for the

District of Massachusetts, Civil Action No. 09-CV-11672-WGY ("the Litigation");

~~**WHEREAS, Judge Young terminated the Litigation on 9/7/2011 and**~~

~~**and finally the Litigation was dismissed the Litigation on 7/5/2012;**~~

**WHEREAS,** the Parties previously entered into a settlement agreement

dated effective on or about June 29, 2011 ("Settlement"), which was later

declared null and void by Arbitrator Margaret Hinkle;

**WHEREAS, Judge Young terminated the Litigation on September 7,**

**2011 after the parties reported the matter settled, and dismissed the re-**

**opened Litigation on July 5, 2012, without prejudice to Tuckerbrook's right**

**to commence a new action.**

~~WHEREAS, Judge Young has deemed the Litigation as settled and dismissed the case on July 5, 2012.~~

**WHEREAS**, the Parties nevertheless wish to settle the <u>matter through this Supplement Settlement Agreement</u>~~Litigation~~;

~~WHEREAS, Any documents provided~~<u>exchanged</u> ~~as a direct result of this Litigation will be considered Confidential and release of these documents will require approval from Banerjee;~~

**WHEREAS,** this Agreement supplements the prior Settlement of the Litigation, and nothing contained herein shall be construed as an admission by Banerjee of any liability or any wrongdoing of any kind toward Tuckerbrook or vice versa; and

**WHEREAS,** the Parties have agreed that it is in their mutual interest to resolve **NOW AND FINALLY, THE LITIGATION** on the terms and conditions more fully set forth herein;

**NOW THEREFORE,** in consideration of the mutual promises and covenants herein set forth, which consideration is acknowledged by the Parties to be good and sufficient, the Parties hereto covenant and agree as follows:

1.      **Documents**

~~2.~~Within two (2) days of receipt of this Agreement fully executed by Tuckerbrook, Banerjee shall produce to Tuckerbrook in native format all <u>emails and attached </u>documents <u>(50+)</u> in his possession, custody or control concerning or relating to Alkek, Tuckerbrook, the Tuckerbrook-SB Global Special Situations Fund, the Tuckerbrook-SB Global Distressed Fund, as set forth and more fully

**Formatted:** Normal, Indent: First line:  0.5", No bullets or numbering

**Formatted:** Bullets and Numbering

described in the document attached to a subpoena issued in the pending

litigation between Tuckerbrook and Alkek in the Connecticut Superior Court,

DOCKET NO. X08 CV-11-6010952-S, which subpoena was served on Banerjee

in hand on June 27, 2012, and which is incorporated herein by reference.

~~2.~~2. ~~as Schedule A.~~

~~2.~~**Interview**

Subject to paragraph 3 below, ~~O~~on or before July 20~~3113~~, 2012, Banerjee

shall answer Tuckerbrook's follow up questions to his deposition testimony fully,

truthfully and candidly in an interview setting, not to be transcribed by a court

reporter or otherwise recorded by Tuckerbrook.  If requested, Banerjee shall

provide an affidavit recounting such truthful and accurate information as

Tuckerbrook may request.  The interview will be conducted at offices ~~infices in~~

~~either Worcester, Massachusetts or~~ in Hartford, Connecticut ~~at the at a location~~

~~convenient to and agreed to by both Banerjee and~~ ~~offices of O'Connor,~~

~~Carnathan and Mack LLC by attorney Sean Carnathan~~offices of Paul Dehemel,

~~Esq in Stamford, CT~~.  Akshita Banerjee may be present during the interview at

Banerjee's discretion.  No one else will be present during the interview.   The

interview will last no more than 3 hours.  Any affidavit must be requested and

presented to Banerjee for approval within seven (7) days after the interview.

3.      **Resolution of Dispute**

Upon ~~completion of the interview and~~ production of the all of the

documents described above ~~and in Schedule A~~, Tuckerbrook shall have two (2)

days in which to state whether it may ~~will~~ use any of the documents in the

3

pending litigation with Alkek or is relevant to the Alkek Litigation.  If any of the

documents constitute evidence that Tuckerbrook may will offer or otherwise use

in the Alkek litigation, then Tuckerbrook will waive the declaration by Arbitrator

Hinkle that the prior Settlement is null and void.  The releases set forth in that

Settlement dated June 29, 2011 shall then be deemed fully effective and the

litigation will be over, provided, however, that Banerjee will appear for the

interview described in paragraph 2 above.  If the Supplemental Settlement

Agreement is consummated, then Tuckerbrook will also withdraw the subpoena

previously served on Banerjee and agrees that it will not subpoena Banerjee for

a deposition in the pending litigation with Alkek.  Tuckerbrook reserves the right

to subpoena Banerjee for trial.  To the extent Tuckerbrook produces or otherwise

uses the documents in the Alkek litigation, it shall designate them as

"confidential" in accordance with the confidentiality stipulation in that proceeding.

_____ - If Tuckerbrook does not accept the documents as sufficient within two (2)

days of their production completion of the interview, then the Settlement shall

remain null and void, but Tuckerbrook shall be contractually foreclosed from

using the documents produced by Banerjee in any way in any current and

subsequent litigation and these documents will remain confidential and will not be

disclosed to any party unless Tuckerbrook is required to do so by law.  Provided,

however, that Tuckerbrook may be obligated to produce such documents to other

parties in the litigation in response to a proper discovery request, and will have

no ability to foreclose any other party from using such documents as that other

party may see fit. If the documents are requested by anyone then a release from

4

~~Banerjee will be required. Banerjee agrees to give the release of the confidential~~ ~~documents to parties and if the supplement agreement is effective Banerjee will~~ ~~unconditionally give the release of the confidential documents to Tuckerbrook.  A~~ ~~waiver of the confidentiality will be required from Banerjee.~~ If the Settlement is not consummated, then Banerjee will not appear for an interview, and the deposition will be rescheduled.

~~If the Settlement is consummated as described herein, Tuckerbrook will withdraw the subpoena altogether (while reserving the right, if necessary) to later subpoena Banerjee for a deposition in the pending Alkek litigation.  If the Settlement is not consummated as set forth herein, Tuckerbrook will reschedule the deposition in light of Banerjee's travel schedule.~~

4.    **Entirety**

This Agreement and the prior Settlement together constitute the entire agreement between the Parties with respect to the subject matter hereof, as amended by this agreement.  Other than as stated herein, the Parties represent and warrant that no representation, promise, or other inducement has been offered or made to induce any party to enter into this Agreement, and that they are competent to enter into this Agreement.  Except as otherwise stated in this Agreement, this Agreement supersedes and replaces all negotiations, agreements, and understandings between the Parties, whether written or oral. This Agreement may not be waived, repealed, altered or amended in whole or in part except by an instrument in writing executed by authorized representatives of each and every party hereto.

5.    **Beneficiaries**

This Agreement is for the benefit of both Tuckerbrook and Banerjee. The provisions of this Agreement shall extend to and inure to the benefit of and be binding upon the Parties and their respective agents, affiliates, successors, representatives and legally permissible assigns, just as if they had executed this Agreement.

**THE UNDERSIGNED HAVED CAREFULLY READ AND UNDERSTAND THE CONTENTS OF THIS SUPPLEMENTAL SETTLEMENT AGREEMENT, AND SIGN THE SAME AS THEIR OWN FREE ACT AS OF THE LATEST DATE SET FORTH BELOW.**

**IN WITNESS WHEREOF, Tuckerbrook Alternative Investments LP** has caused its signature and seal to be affixed hereto this ⎯13 day of July 2012.

**TUCKERBROOK ALTERNATIVE INVESTMENTS LP**

BY: _____

TITLE: _____

_____
Witness

Seal:

**IN WITNESS WHEREOF, Sumanta Banerjee** has caused his signature and seal to be affixed hereto this ⎯13 day of July 2012.

_____
Sumanta Banerjee

6

_____
Witness


4837-4869-1984, v. 1

## NEW SETTLEMENT AGREEMENT

This **New** Settlement Agreement ("**Agreement**") is made and entered into by and between Sumanta Banerjee ("**Banerjee**") and Tuckerbrook Alternative Investments, LP ("**Tuckerbrook**") and all of their respective predecessors and successors, servants, employees, officers, directors, parents, subsidiaries, general, joint venture and limited partners, shareholders, investors, affiliates, divisions and entities, heirs, trusts, beneficiaries, agents, representatives, spouses, attorneys, assigns, and anyone else claiming by or through any of them or on their behalf.  The foregoing are referred to herein collectively as "the **Parties**".

WHEREAS, Tuckerbrook filed an action entitled *Tuckerbrook Alternative Investments, LP v. Sumanta Banerjee* in the United States District Court for the District of Massachusetts, Civil Action No. 09-CV-11672-WGY (the "**Litigation or the Matter**");

WHEREAS, the Parties previously entered into a settlement agreement dated effective on or about June 29, 2011, which was later declared null and void by Arbitrator Margaret Hinkle;

WHEREAS, Judge Young terminated the Litigation on September 7, 2011 and dismissed the re-opened Litigation on July 5, 2012, without prejudice to Tuckerbrook's right to commence a new action.

WHEREAS, the Parties nevertheless sought to settle the matter through a supplement settlement agreement ("**Supplemental Settlement**") on July 13, 2012;

Whereas, such supplemental settlement efforts resulted in the delivery of certain documents by Banerjee ("**Supplemental Documents**");

Whereas, the supplemental settlement efforts failed; and

WHEREAS, Banerjee, effective the date hereof, has proposed this New Settlement Agreement, and Tuckerbrook is interested in pursuing a settlement under the terms and conditions of this Agreement;

WHEREAS, Banerjee affirms and promises that with respect to this Agreement or the Supplemental Settlement, he has not, directly or indirectly, communicated in any form or fashion with any third party with which/whom Tuckerbrook has been in or in which it is currently in litigation, including but not limited to Alkek, its agents or affiliates;

WHEREAS, nothing contained herein shall be construed as an admission by Banerjee of any liability or any wrongdoing of any kind toward Tuckerbrook or vice versa; and

WHEREAS, the Parties have agreed that it is in their mutual interest to resolve **NOW AND FINALLY, THE MATTER** on the terms and conditions more fully set forth herein;

NOW THEREFORE, in consideration of the mutual promises and covenants herein set forth, which consideration is acknowledged by the Parties to be good and sufficient, the Parties hereto covenant and agree as follows:

1.    Declaration and Documents

Within two (2) days of receipt of this Agreement, fully executed by Tuckerbrook and Banerjee, Banerjee shall produce to Tuckerbrook a draft form

2

of a declaration of certain facts ("**Declaration**") and provide to Tuckerbrook in native format, any and all additional, if any, (in addition to any Supplemental Documents already delivered) emails, documents or records (altogether the "**Documents**") in his possession, custody or control concerning or relating to Alkek, Tuckerbrook, the Tuckerbrook-SB Global Special Situations Fund, the Tuckerbrook-SB Global Distressed Fund, as set forth and more fully described in the document attached to a subpoena issued in the pending litigation between Tuckerbrook and Alkek in the Connecticut Superior Court, DOCKET NO. X08 CV-11-6010952-S, which subpoena was served on Banerjee in hand on June 27, 2012, and which is incorporated herein by reference.

    2. Acceptance

    Upon production of the draft Declaration and Documents described above, Tuckerbrook shall have one (1) day in which to state whether it may use the draft Declaration or any of the Documents in the pending litigation with Alkek. If the draft Declaration or any of the Documents constitute evidence that Tuckerbrook may offer or otherwise use in the Alkek litigation, and Tuckerbrook states that it accepts its right to use the draft Declaration or any of the Documents by signing the "Accepted" line below, then the draft Declaration shall be made into a sworn affidavit ("Affidavit"), and if so signed by Banerjee as truthful and accepted by Tuckerbrook by their signature on the Affidavit as accepted, then the settlement will be deemed effective and releases as set forth in that Supplemental Settlement dated June 29, 2011 shall then be deemed fully effective. Also, Tuckerbrook will declare Margaret Hinkle's Arbitration decision null and void and

3

will forgo any rights under that decision. If this Agreement is consummated, then Tuckerbrook will also withdraw the subpoena previously served on Banerjee and agrees that it will not subpoena Banerjee for a deposition in the pending litigation with Alkek. Tuckerbrook reserves the right to subpoena Banerjee for trial. To the extent Tuckerbrook produces or otherwise uses the documents in the Alkek litigation, it shall designate them as "confidential" in accordance with the confidentiality stipulation in that proceeding.

If Tuckerbrook does not accept the draft Declaration and/or Documents within one (1) day of their production, then the Settlement shall remain null and void, but Tuckerbrook shall be contractually foreclosed from using the draft Declaration or Affidavit or Documents produced by Banerjee in any way in any current and subsequent litigation and these documents will remain confidential and will not be disclosed to any party unless Tuckerbrook is required to do so by law. Provided, however, that Tuckerbrook may be obligated to produce such documents to other parties in the litigation in response to a proper discovery request, and will have no ability to foreclose any other party from using such documents as that other party may see fit. If the Settlement is not consummated, the deposition will be rescheduled.

### 3. Conditions and Nullification

This Agreement and the settlement contemplated herein is conditioned upon, and shall be deemed void if (i) it is found that prior to the date hereof Banerjee has communicated in any way with respect to this Agreement or the Supplemental Settlement, directly or indirectly with any third party with

4

which/whom Tuckerbrook has been in or is currently in litigation, including but not limited to Alkek, its agents or affiliates, or (ii) Banerjee recants or otherwise modifies the plane language interpretation of the draft Declaration or Affidavit. Other than as stated herein, the Parties represent and warrant that no representation, promise, or other inducement has been offered or made to induce any party to enter into this Agreement, and that they are competent to enter into this Agreement. Except as otherwise stated in this Agreement, this Agreement supersedes and replaces all negotiations, agreements, and understandings between the Parties, whether written or oral. This Agreement may not be waived, repealed, altered or amended in whole or in part except by an instrument in writing executed by authorized representatives of each and every party hereto.

### 4. Beneficiaries

This Agreement is for the benefit of both Tuckerbrook and Banerjee. The provisions of this Agreement shall extend to and inure to the benefit of and be binding upon the Parties and their respective agents, affiliates, successors, representatives and legally permissible assigns, just as if they had executed this Agreement.

**THE UNDERSIGNED HAVED CAREFULLY READ AND UNDERSTAND THE CONTENTS OF THIS SUPPLEMENTAL SETTLEMENT AGREEMENT, AND SIGN THE SAME AS THEIR OWN FREE ACT AS OF THE LATEST DATE SET FORTH BELOW.**

IN WITNESS WHEREOF, **Tuckerbrook Alternative Investments LP** has

caused its signature and seal to be affixed hereto this 22st day of July 2012.


**TUCKERBROOK ALTERNATIVE INVESTMENTS LP**

BY: _____

TITLE: _____

_____
Witness

Seal:

IN WITNESS WHEREOF, **Sumanta Banerjee** has caused his signature

and seal to be affixed hereto this 22 day of July 2012.

_____
Sumanta Banerjee

akshita Banerjee 7/22/12

_____
Witness

**Accepted**

_____
John Hassett, President

Tuckerbrook Alternative Investments, LP

6



**Sumanta Banerjee <sbaner@gmail.com>**

---

## Fw: Banerjee proposal formalized
6 messages

---

**jhassett@tuckerbrook.com** <jhassett@tuckerbrook.com>                Sat, Jul 21, 2012 at 12:56 PM
Reply-To: jhassett@tuckerbrook.com
To: sbaner@gmail.com, jhassett@tuckerbrook.com

Out of pocket til 5:00 but can get emails. If OK sign and I will too after round.
Sent via BlackBerry by AT&T

---

**From:** "John Hassett" <JHassett@tuckerbrook.com>
**Date:** Sat, 21 Jul 2012 11:51:28 -0400
**To:** <JHassett@tuckerbrook.com>
**Subject:** Banerjee proposal formalized



John Hassett

Managing Principal


781.639-3000 X101

781.367.9681 (mobile)

---

 **Banerjee Proposal.docx**
27K

---

**sbaner@gmail.com** <sbaner@gmail.com>                Sat, Jul 21, 2012 at 2:49 PM
Reply-To: sbaner@gmail.com
To: jhassett@tuckerbrook.com

John,

Thanks. I have a few minor changes otherwise, captures the concept. I will make the changes and send to you shortly. If ok, let me know and I can execute and you can as well.

Hit em straight!

Best,

Sumanta

Sumanta Banerjee
President and Managing Partner

SREI Infrastructure Advisers Ltd.
Mobile: 203 501 0797
Tel: 203 533 4342
Email: sumanta.banerjee@srei.com Sent from my Verizon Wireless BlackBerry

---

**From:** jhassett@tuckerbrook.com
**Date:** Sat, 21 Jul 2012 16:56:17 +0000
**To:** <sbaner@gmail.com>; <jhassett@tuckerbrook.com>
**ReplyTo:** jhassett@tuckerbrook.com
**Subject:** Fw: Banerjee proposal formalized

Out of pocket til 5:00 but can get emails. If OK sign and I will too after round.
Sent via BlackBerry by AT&T

---

**From:** "John Hassett" <JHassett@tuckerbrook.com>
**Date:** Sat, 21 Jul 2012 11:51:28 -0400
**To:** <JHassett@tuckerbrook.com>
**Subject:** Banerjee proposal formalized

John Hassett

Managing Principal

781.639-3000 X101

781.367.9681 (mobile)

---

**jhassett@tuckerbrook.com** <jhassett@tuckerbrook.com>          Sat, Jul 21, 2012 at 3:03 PM
Reply-To: jhassett@tuckerbrook.com
To: sbaner@gmail.com

Send along and I will look
Sent via BlackBerry by AT&T

---

**From:** <sbaner@gmail.com>
**Date:** Sat, 21 Jul 2012 14:49:37 -0400
**To:** John Hassett<jhassett@tuckerbrook.com>
**ReplyTo:** <sbaner@gmail.com>
**Subject:** Re: Banerjee proposal formalized

John,

Thanks. I have a few minor changes otherwise, captures the concept. I will make the changes and send to you shortly. If ok, let me know and I can execute and you can as well.

Hit em straight!

Best,

Sumanta

Sumanta Banerjee
President and Managing Partner
SREI Infrastructure Advisers Ltd.
Mobile: 203 501 0797
Tel: 203 533 4342
Email: sumanta.banerjee@srei.com Sent from my Verizon Wireless BlackBerry

---

**From:** jhassett@tuckerbrook.com
**Date:** Sat, 21 Jul 2012 16:56:17 +0000
**To:** <sbaner@gmail.com>; <jhassett@tuckerbrook.com>
**ReplyTo:** jhassett@tuckerbrook.com
**Subject:** Fw: Banerjee proposal formalized

Out of pocket til 5:00 but can get emails. If OK sign and I will too after round.
Sent via BlackBerry by AT&T

---

**From:** "John Hassett" <JHassett@tuckerbrook.com>
**Date:** Sat, 21 Jul 2012 11:51:28 -0400
**To:** <JHassett@tuckerbrook.com>
**Subject:** Banerjee proposal formalized

John Hassett

Managing Principal

781.639-3000 X101

781.367.9681 (mobile)

---

**sbaner@gmail.com** <sbaner@gmail.com>                          Sat, Jul 21, 2012 at 7:43 PM
Reply-To: sbaner@gmail.com
To: jhassett@tuckerbrook.com

Did you get the blacklined version?

Sumanta Banerjee
President and Managing Partner
SREI Infrastructure Advisers Ltd.
Mobile: 203 501 0797
Tel: 203 533 4342
Email: sumanta.banerjee@srei.com Sent from my Verizon Wireless BlackBerry

---

**From:** jhassett@tuckerbrook.com
**Date:** Sat, 21 Jul 2012 19:03:50 +0000
**To:** <sbaner@gmail.com>
**ReplyTo:** jhassett@tuckerbrook.com
**Subject:** Re: Banerjee proposal formalized

Send along and I will look
Sent via BlackBerry by AT&T

**From:** <sbaner@gmail.com>
**Date:** Sat, 21 Jul 2012 14:49:37 -0400
**To:** John Hassett<jhassett@tuckerbrook.com>
**ReplyTo:** <sbaner@gmail.com>
**Subject:** Re: Banerjee proposal formalized

John,

Thanks. I have a few minor changes otherwise, captures the concept. I will make the changes and send to you shortly. If ok, let me know and I can execute and you can as well.

Hit em straight!

Best,

Sumanta

Sumanta Banerjee
President and Managing Partner
SREI Infrastructure Advisers Ltd.
Mobile: 203 501 0797
Tel: 203 533 4342
Email: sumanta.banerjee@srei.com Sent from my Verizon Wireless BlackBerry

**From:** jhassett@tuckerbrook.com
**Date:** Sat, 21 Jul 2012 16:56:17 +0000
**To:** <sbaner@gmail.com>; <jhassett@tuckerbrook.com>
**ReplyTo:** jhassett@tuckerbrook.com
**Subject:** Fw: Banerjee proposal formalized

Out of pocket til 5:00 but can get emails. If OK sign and I will too after round.
Sent via BlackBerry by AT&T

**From:** "John Hassett" <JHassett@tuckerbrook.com>
**Date:** Sat, 21 Jul 2012 11:51:28 -0400
**To:** <JHassett@tuckerbrook.com>
**Subject:** Banerjee proposal formalized

John Hassett

Managing Principal

781.639-3000 X101

781.367.9681 (mobile)

**jhassett@tuckerbrook.com** <jhassett@tuckerbrook.com>                    Sun, Jul 22, 2012 at 9:54 AM
Reply-To: jhassett@tuckerbrook.com
To: sbaner@gmail.com

I sent you a final. Accepted all your changes. Confirm you got it please.
Sent via BlackBerry by AT&T

---

**From:** <sbaner@gmail.com>
**Date:** Sat, 21 Jul 2012 19:43:22 -0400
**To:** John Hassett<jhassett@tuckerbrook.com>
**ReplyTo:** <sbaner@gmail.com>
**Subject:** Re: Banerjee proposal formalized

Did you get the blacklined version?

Sumanta Banerjee
President and Managing Partner
SREI Infrastructure Advisers Ltd.
Mobile: 203 501 0797
Tel: 203 533 4342
Email: sumanta.banerjee@srei.com Sent from my Verizon Wireless BlackBerry

---

**From:** jhassett@tuckerbrook.com
**Date:** Sat, 21 Jul 2012 19:03:50 +0000
**To:** <sbaner@gmail.com>
**ReplyTo:** jhassett@tuckerbrook.com
**Subject:** Re: Banerjee proposal formalized

Send along and I will look
Sent via BlackBerry by AT&T

---

**From:** <sbaner@gmail.com>
**Date:** Sat, 21 Jul 2012 14:49:37 -0400
**To:** John Hassett<jhassett@tuckerbrook.com>
**ReplyTo:** <sbaner@gmail.com>
**Subject:** Re: Banerjee proposal formalized

John,

Thanks. I have a few minor changes otherwise, captures the concept. I will make the changes and send to
you shortly. If ok, let me know and I can execute and you can as well.

Hit em straight!

Best,

Sumanta

Sumanta Banerjee
President and Managing Partner
SREI Infrastructure Advisers Ltd.
Mobile: 203 501 0797
Tel: 203 533 4342
Email: sumanta.banerjee@srei.com Sent from my Verizon Wireless BlackBerry

---

**From:** jhassett@tuckerbrook.com
**Date:** Sat, 21 Jul 2012 16:56:17 +0000
**To:** <sbaner@gmail.com>; <jhassett@tuckerbrook.com>
**ReplyTo:** jhassett@tuckerbrook.com
**Subject:** Fw: Banerjee proposal formalized

Out of pocket til 5:00 but can get emails. If OK sign and I will too after round.
Sent via BlackBerry by AT&T

**From:** "John Hassett" <JHassett@tuckerbrook.com>
**Date:** Sat, 21 Jul 2012 11:51:28 -0400
**To:** <JHassett@tuckerbrook.com>
**Subject:** Banerjee proposal formalized

John Hassett

Managing Principal

781.639-3000 X101

781.367.9681 (mobile)

---

**sbaner@gmail.com** <sbaner@gmail.com>                    Sun, Jul 22, 2012 at 11:32 AM
Reply-To: sbaner@gmail.com
To: jhassett@tuckerbrook.com

No attachment. However, I accepted all changes as discussed and faxed back to you. Did you receive it?
Standing by for your executed copy. Thx

Sumanta Banerjee
President and Managing Partner
SREI Infrastructure Advisers Ltd.
Mobile: 203 501 0797
Tel: 203 533 4342
Email: sumanta.banerjee@srei.com Sent from my Verizon Wireless BlackBerry

---

**From:** jhassett@tuckerbrook.com
**Date:** Sun, 22 Jul 2012 13:54:08 +0000
**To:** <sbaner@gmail.com>
**ReplyTo:** jhassett@tuckerbrook.com
**Subject:** Re: Banerjee proposal formalized

I sent you a final. Accepted all your changes. Confirm you got it please.
Sent via BlackBerry by AT&T

---

**From:** <sbaner@gmail.com>
**Date:** Sat, 21 Jul 2012 19:43:22 -0400
**To:** John Hassett<jhassett@tuckerbrook.com>
**ReplyTo:** <sbaner@gmail.com>
**Subject:** Re: Banerjee proposal formalized

Did you get the blacklined version?

Sumanta Banerjee
President and Managing Partner

SREI Infrastructure Advisers Ltd.
Mobile: 203 501 0797
Tel: 203 533 4342
Email: sumanta.banerjee@srei.com Sent from my Verizon Wireless BlackBerry

---

**From:** jhassett@tuckerbrook.com
**Date:** Sat, 21 Jul 2012 19:03:50 +0000
**To:** <sbaner@gmail.com>
**ReplyTo:** jhassett@tuckerbrook.com
**Subject:** Re: Banerjee proposal formalized

Send along and I will look
Sent via BlackBerry by AT&T

---

**From:** <sbaner@gmail.com>
**Date:** Sat, 21 Jul 2012 14:49:37 -0400
**To:** John Hassett<jhassett@tuckerbrook.com>
**ReplyTo:** <sbaner@gmail.com>
**Subject:** Re: Banerjee proposal formalized

John,

Thanks. I have a few minor changes otherwise, captures the concept. I will make the changes and send to
you shortly. If ok, let me know and I can execute and you can as well.

Hit em straight!

Best,

Sumanta

Sumanta Banerjee
President and Managing Partner
SREI Infrastructure Advisers Ltd.
Mobile: 203 501 0797
Tel: 203 533 4342
Email: sumanta.banerjee@srei.com Sent from my Verizon Wireless BlackBerry

---

**From:** jhassett@tuckerbrook.com
**Date:** Sat, 21 Jul 2012 16:56:17 +0000
**To:** <sbaner@gmail.com>; <jhassett@tuckerbrook.com>
**ReplyTo:** jhassett@tuckerbrook.com
**Subject:** Fw: Banerjee proposal formalized

Out of pocket til 5:00 but can get emails. If OK sign and I will too after round.
Sent via BlackBerry by AT&T

---

**From:** "John Hassett" <JHassett@tuckerbrook.com>
**Date:** Sat, 21 Jul 2012 11:51:28 -0400
**To:** <JHassett@tuckerbrook.com>
**Subject:** Banerjee proposal formalized

John Hassett

Managing Principal

781.639-3000 X101

781.367.9681 (mobile)



**Sumanta Banerjee <sbaner@gmail.com>**

## remember two things
4 messages

**John Hassett** <JHassett@tuckerbrook.com>                          Sat, Jul 28, 2012 at 9:53 AM
To: sbaner@gmail.com

1.   Who introduced the idea of Jay Reid?

2.   What was discussed on those three phone calls from Murray/Brar?  That is the most important
information we are after.


Thanks.


John Hassett

Managing Principal


781.639-3000 X101

781.367.9681 (mobile)


**Sumanta Banerjee** <sbaner@gmail.com>                          Sat, Jul 28, 2012 at 4:59 PM
To: John Hassett <JHassett@tuckerbrook.com>

John

I am faxing in 5 minutes, lets discuss.

S

[Quoted text hidden]
--
Sumanta Banerjee
Mobile: 203 501 0797
Tel:    203 533 4342
Email: sbaner@gmail.com


**SB** <sbaner@gmail.com>                                          Sat, Jul 28, 2012 at 6:12 PM
Reply-To: sbaner@gmail.com
To: John Hassett <JHassett@tuckerbrook.com>

John,

Look forward to chatting at 9.30am tomorrow.

Best,

S

Sumanta Banerjee
Mobile: 203 501 0797
Tel: 203 533 4342
---------------------------------------------
Sent from my Verizon Wireless BlackBerry

**From:** Sumanta Banerjee <sbaner@gmail.com>
**Date:** Sat, 28 Jul 2012 16:59:12 -0400
**To:** John Hassett<JHassett@tuckerbrook.com>
**Subject:** Re: remember two things
[Quoted text hidden]

**Sumanta Banerjee** <sbaner@gmail.com>                     Fri, Nov 16, 2012 at 2:04 PM
To: jcannavino@cl-law.com

[Quoted text hidden]
[Quoted text hidden]



**Sumanta Banerjee <sbaner@gmail.com>**

## See Attached
7 messages

**John Hassett** <JHassett@tuckerbrook.com>                    Thu, Jul 26, 2012 at 6:17 PM
To: sbaner@gmail.com

Please find attached a queries memo and some exhibits for you review.  Please take the time to review these items and then let's talk tomorrow for any clarifications.  How would 11:00 AM be for a call?  What number should I call? Have a good night.

John Hassett

Managing Principal

781.639-3000 X101

781.367.9681 (mobile)

**2 attachments**

 **Second Set of Queries.docx**
19K

**Documents for SB 07.2012.pdf**
2195K

**SB** <sbaner@gmail.com>                    Thu, Jul 26, 2012 at 7:59 PM
Reply-To: sbaner@gmail.com
To: John Hassett <JHassett@tuckerbrook.com>

11am is ok. Let's talk then. Best, S

Sumanta Banerjee
Mobile: 203 501 0797
Tel: 203 533 4342
------------------------------------------
Sent from my Verizon Wireless BlackBerry

**From:** "John Hassett" <JHassett@tuckerbrook.com>
**Date:** Thu, 26 Jul 2012 18:17:17 -0400
**To:** <sbaner@gmail.com>
**Subject:** See Attached
[Quoted text hidden]

**SB** <sbaner@gmail.com>                    Fri, Jul 27, 2012 at 9:52 AM

Reply-To: sbaner@gmail.com
To: John Hassett <JHassett@tuckerbrook.com>

John,

We have no power due to the storm in CT and have been without power for 11 hrs. No power (no phones and cell dying) till noon/1pm today as estimated. I went through the material -- no surprises and I can add some more color. I am out in the PM -- so does a call tomorrow around 9.30/10am work? Let me know what works. Thx

Best,

S
Sumanta Banerjee
Mobile: 203 501 0797
Tel: 203 533 4342
-------------------------------------------
Sent from my Verizon Wireless BlackBerry

**From:** "SB" <sbaner@gmail.com>
**Date:** Thu, 26 Jul 2012 23:59:55 +0000
**To:** John Hassett<JHassett@tuckerbrook.com>
**ReplyTo:** sbaner@gmail.com
**Subject:** Re: See Attached
[Quoted text hidden]

---

**John Hassett** <JHassett@tuckerbrook.com>                    Fri, Jul 27, 2012 at 9:54 AM
To: sbaner@gmail.com

That's fine.  What number should I call, when.  Best of luck with the power.


John Hassett

Managing Principal


781.639-3000 X101

781.367.9681 (mobile)

---

**From:** SB [mailto:sbaner@gmail.com]
**Sent:** Friday, July 27, 2012 9:53 AM
**To:** John Hassett
**Subject:** Re: See Attached

[Quoted text hidden]

---

**SB** <sbaner@gmail.com>                    Fri, Jul 27, 2012 at 10:34 AM
Reply-To: sbaner@gmail.com
To: John Hassett <JHassett@tuckerbrook.com>

9.30am on Saturday should work. 203 533 4342. Talk then.

Sumanta Banerjee
Mobile: 203 501 0797
Tel: 203 533 4342
---------------------------------------------
Sent from my Verizon Wireless BlackBerry

**From:** "John Hassett" <JHassett@tuckerbrook.com>
**Date:** Fri, 27 Jul 2012 09:54:53 -0400
**To:** <sbaner@gmail.com>
**Subject:** RE: See Attached
[Quoted text hidden]

**John Hassett** <JHassett@tuckerbrook.com>                    Fri, Jul 27, 2012 at 10:42 AM
To: sbaner@gmail.com

yup


John Hassett

Managing Principal


781.639-3000 X101

781.367.9681 (mobile)


**From:** SB [mailto:sbaner@gmail.com]
**Sent:** Friday, July 27, 2012 10:34 AM

[Quoted text hidden]

[Quoted text hidden]

**Sumanta Banerjee** <sbaner@gmail.com>                    Fri, Nov 16, 2012 at 2:02 PM
To: jcannavino@cl-law.com


---------- Forwarded message ----------
From: **John Hassett** <JHassett@tuckerbrook.com>
[Quoted text hidden]


--
Sumanta Banerjee
Mobile: 203 501 0797
Tel:    203 533 4342
Email: sbaner@gmail.com

**2 attachments**



**Second Set of Queries.docx**
19K

**Documents for SB 07.2012.pdf**
2195K



**Sumanta Banerjee <sbaner@gmail.com>**

---

## signed Settlement Agreement
9 messages

---

**Sumanta Banerjee <sbaner@gmail.com>**
To: John Hassett <jhassett@tuckerbrook.com>

Sun, Jul 22, 2012 at 11:46 AM

John,

Please see signed pages of the Agreement.

Sumanta

--
Sumanta Banerjee
Mobile: 203 501 0797
Tel:   203 533 4342
Email: sbaner@gmail.com

---

**6 attachments**

**bp2 001.jpg**
485K

**bp1 005.jpg**
287K

bp1 004.jpg
480K

bp1 003.jpg
516K

bp1 002.jpg
529K

bp1 001.jpg
476K

---

**John Hassett** <JHassett@tuckerbrook.com>                                    Sun, Jul 22, 2012 at 12:00 PM
To: Sumanta Banerjee <sbaner@gmail.com>

I am faxing you the signed agreement.  Please confirm when you have it.  I will be sending a list of queries
to be addresses in the declaration within a half hour or so.  Please confirm also the receipt of it.  It is very
unlikely that we will accept the declaration without further supporting evidence of the veracity of statements
in the declaration.  Thanks.

John Hassett
(781) 476-6001 X101
(781) 367-9681 (mobile)

[Quoted text hidden]

---

**Sumanta Banerjee** <sbaner@gmail.com>                              Sun, Jul 22, 2012 at 12:10 PM
To: John Hassett <JHassett@tuckerbrook.com>

I have received the fax and await the queries to be addressed.

Thanks.

[Quoted text hidden]

---

**John Hassett** <JHassett@tuckerbrook.com>                         Sun, Jul 22, 2012 at 12:11 PM
To: Sumanta Banerjee <sbaner@gmail.com>


We are interested in testimony with respect to three periods: (i) the first six months between Sumanta's termination and settlement with Tuckerbrook, (ii) the June/July period during which Murray/Alkek sought to have you sign the declaration they sent you, and (iii) late December with respect to the multiple phone calls from Murray and Bar.  We will need supporting evidence for the statements made in the Declaration an will agree that anything produced between Sumanta and Sadis will not waive privilege, but all communications between Sadis and Debevoise and/or Murray's firm should be produced in any event as they are not privileged.  Thanks and do stand by.

John Hassett
(781) 476-6001 X101
(781) 367-9681 (mobile)


-----Original Message-----
From: Sumanta Banerjee [mailto:sbaner@gmail.com]
Sent: Sun 7/22/2012 11:46 AM
To: John Hassett
Subject: signed Settlement Agreement


[Quoted text hidden]

---

**Sumanta Banerjee** <sbaner@gmail.com>                              Sun, Jul 22, 2012 at 12:12 PM
To: John Hassett <JHassett@tuckerbrook.com>

I still await the queries
[Quoted text hidden]

---

**John Hassett** <JHassett@tuckerbrook.com>                         Sun, Jul 22, 2012 at 12:47 PM
To: Sumanta Banerjee <sbaner@gmail.com>

21 Queries. "you" means Sumanta or Akshita, but id which per statement. Lawyer to lawyer emails are a must, we will not claim privilege waived if emails between lawyer and you are provided. Please confirm you got this.

First Six Months

1.  Basic facts:  what was your position, was there one employment agreement, were you a 50/50 GP partner in both GDF and GSS (we have supporting evidence of all this)
2.  Did you assert your 50% active role in both GPs and communicate this to the LPs (we have supporting evidence of this)
3.  Did Alkek and NCR help support you in any way with respect to sustaining you as an active GP and recognize you as such (have much, but need any communications between Sadis and Debevoise and/or Murray's firm and or NCRs lawyer)
4.  Did Alkek and/or NCR introduce you to and support efforts to replace Tuckerbrook as the IM.  Provide list of names.  (we have evidence of much of this but need a listing of all names introduced and who introduced them)
5.  Was it the plan during this period to have GSS survive and grow (we have evidence of this, but anything between the law firms/lawyers needs to be produced)
6.  Did Alkek or NCR talk to any reporters during this period. Who did they talk to.  (we will confirm any of this with the reporter)
7.  Who provided the Debevoise letter to the press. (we will confirm with the reporter).
8.  Approximately how often did you or Sadis communicate with NCR or Alkek or their lawyers.  More or less than 100 times during the six month period, if less how many approximately.
9.  When was the last time you communicated, directly or indirectly with Alkek or NCR.

June/July 2009

1.  Did Murray send you the original copy of the so called declaration (we have evidence of this already). When... the date first sent.
2.  Did Sadis communicate with Murray's firm at all in this regard (emails from Sadis to you and Sadis and Murray's firm)
3.  What elements in the proposed declaration were true and which were untrue
4.  Did you or Sadis talk to Murray or anyone else about the declaration/ what was said.
5.  Did they state why they wanted the declaration (all communications between lawyers)

December

1. Who initiated contact in December/ You or Murray/Bar.
2. Did you ask for Seaman's deposition or did they volunteer that.(have evidence they sent it to you but did you ask for it)
3. would you describe the calls for the purpose of deposition preparation/  If not then what were they for? (we have the phone records indicating multiple long-duration calls)
4. How many calls were there.  More than the two we know about.
5. Did you get counsel involved.  Who was your counsel at that time. (attach all communications between your counsel and Murray's firm or your counsel and you)
6.  Were you asked, directly or masked, not to show for your deposition
7.  What did they ask you to say, not say in your deposition?

Standing by for draft declaration.  Thanks.

John Hassett
(781) 476-6001 X101
(781) 367-9681 (mobile)


-----Original Message-----
From: Sumanta Banerjee [mailto:sbaner@gmail.com]
Sent: Sun 7/22/2012 12:10 PM
To: John Hassett

Subject: Re: signed Settlement Agreement

I have received the fax and await the queries to be addressed.

Thanks.


On Sun, Jul 22, 2012 at 12:00 PM, John Hassett <JHassett@tuckerbrook.com> wrote:


I am faxing you the signed agreement.  Please confirm when you have it.  I will be sending a list of queries to be addresses in the declaration within a half hour or so.  Please confirm also the receipt of it.  It is very unlikely that we will accept the declaration without further supporting evidence of the veracity of statements in the declaration.  Thanks.


John Hassett
(781) 476-6001 X101 <tel:%28781%29%20476-6001%20X101>
(781) 367-9681 <tel:%28781%29%20367-9681>  (mobile)




-----Original Message-----
From: Sumanta Banerjee [mailto:sbaner@gmail.com]
Sent: Sun 7/22/2012 11:46 AM
To: John Hassett
Subject: signed Settlement Agreement


John,

Please see signed pages of the Agreement.

Sumanta
--

Sumanta Banerjee
Mobile: 203 501 0797 <tel:203%20501%200797>
Tel:    203 533 4342 <tel:203%20533%204342>
Email: sbaner@gmail.com




--

Sumanta Banerjee
Mobile: 203 501 0797
Tel:    203 533 4342
Email: sbaner@gmail.com

**Sumanta Banerjee** <sbaner@gmail.com>
To: John Hassett <JHassett@tuckerbrook.com>

Sun, Jul 22, 2012 at 1:15 PM

Got the queries. Will work and send over.
[Quoted text hidden]

Second Set of Queries

Attached are a number of items for your review relating to the periods of:

- March 2008 thru April 2009, particularly with respect to June/July 2008 when upon (i) Tuckerbrook was in discussions with you and the Steering Committee, respectively, for settlement purposes and (ii) Alkek was meeting with Turner ("Hassett's neutered dog") in Chicago, and (iii) you were also simultaneously working with Seaman and Reid to procure a relationship with Telemus to replace Tuckerbrook as IM for GSS.
- June 2009 around the period Alkek sought to have you sign a "Declaration" with respect to your involvement in GSS.
- December 2010, in advance of a scheduled deposition before Tuckerbrook, when upon you received a copy Seaman's deposition and a series of calls from Murray and/or Brar.

. After review, please provide a detailed response to the following queries, clarifications.

1. You state in paragraph 5 of your recent Declaration that you remained a 50% owner of the GP of GDF and GSS. Did this mean that the GP could not act without your approval? Did Liccar agree and seek your approval? Did the Court, in its first order declare that you were to be given the books and records as a 50/50 member of the GP and did the court and you cite your authority under Delaware law? Was the Steering committee aware that Liccar was seeking your approval for actions by the GP of both funds, e.g.: write-down of Peloton and quarterly cap statements.
2. You state in paragraph 7 of the Declaration that the steering committee members asked you to find a new IM. Have you any written evidence that they asked this?
3. You state in paragraph 7 that certain investment management firms were referred by NCR and/or Alkek? Were there others, such as EIM? If others, list please.
4. Also you state in paragraph 7 that the steering committee wanted to replace Tuckerbrook as IM for GDF and GSS…plenty of evidence there, but who was proposed/discussed to be the replacement the GSS GP? Was Distressed GP proposed as the new GP of GSS?
5. Was there coordination, exchange of emails, conference calls between your attorney, NCR's attorney, and Alkek's attorneys during the time period between March 2008 and September 2008? How regularly?
6. Was Liccar willing to process the write-down of Peloton without your agreement?
7. Did NCR, Alkek, Public Welfare and others seek your advice with respect to redemptions by MKP and Paulson in the summer of 2008? Did you provide that advice?
8. Going to the period June/July
   a. was there coordination between Reid, you and Alkek with respect to Telemus' involvement, e.g.: meetings/discussions between Reid and Seaman, emails between the parties etc.?
   b. did you keep Seaman and Reid apprised of discussions with each other?
   c. You state in one email that Seaman's was pleased we "got out GSS"? Did Seaman express this to you?

    d.   Did you advise Seaman and NCR with respect to negotiating tactics with Tuckerbrook?

    e.   Did you advise Alkek and Seaman's and/or NCR with respect to any terms and conditions of any settlement they might pursue.

    f.   You infer in paragraph 8 that the press was not encouraged or that material was not sent to them but that they simply went to the records. With respect to the Debevoise letter of September 2, 2008 directed exclusively to Tuckerbrook by Debevoise, have you any information as to who would have forwarded that letter to Alternative Investment News?

    g.   Was there ever a discussion with Seaman about what pressure points might be used to get tuckerbrook to give up GSS and settle?

9.   With respect to the June 2009 period:

    a.   You state that Sadis advised you not to sign the declaration.  Do you have any evidence that this is the case?

    b.   Did you request that a Declaration be prepared or was it volunteered by Murray?

    c.   Did you have any discussions with Murray or Brar in June, 2009 for any reason? What was discussed?

    d.   Do you know of or possess any emails between Sadis and either NCR or their counsel or between Sadis and Murray or Brar? Please provide them if you have any?

10. With respect to the December period:

    a.   You state in paragraph 10 that your wife communicated with Distressed GP regarding your capital account.  Do you have any email or other evidence to support this statement?

    b.   On November 25, 2009 Jas Brar forwarded to you a copy of Seaman's deposition. Did you request this?

    c.   On November 27, 2009 you provided Jas Brar with your personal mobile number and with your home number and received three subsequent calls, each lasting more than one half hour long on: November 28th, December 1, 2009 and January 2, 2010.   In your deposition for the earlier settlement you testified that you had in fact talked to both Murray and Brar. What was discussed in these three calls?



Sumanta Banerjee <sbaner@gmail.com>

## Re: Confidential -- Discussion for Settlement Purposes
3 messages

**SB** <sbaner@gmail.com>                                          Sat, Jul 28, 2012 at 7:20 PM
Reply-To: sbaner@gmail.com
To: John Hassett <JHassett@tuckerbrook.com>

John,

I would strongly urge you to discuss and figure out an arrangement that we are both comfortable with at
this point. It would not be pretty if we go at it again and I think we can put it behind us and move on. I can
provide all the answers to the questions and that is what we were going to discuss tomorrow.

Please let me know. Thx

Sumanta

Sumanta Banerjee
Mobile: 203 501 0797
Tel: 203 533 4342
---------------------------------------------
Sent from my Verizon Wireless BlackBerry

**From:** "John Hassett" <JHassett@tuckerbrook.com>
**Date:** Sat, 28 Jul 2012 18:59:52 -0400
**To:** <sbaner@gmail.com>
**Subject:**

I have to agree with the arbitrator at this point.  And, can only conclude that the singular means of seeking
the truth  from you is under oath, where the criminal penalties for perjury may compel honest testimony.  I
will direct our attorneys to refile the lawsuit against you early next week, and given your four years of
evasion from testimony, will also seek to enforce your obligation to show for your deposition as scheduled
and will also seek expedited discovery in our case against you.  There is therefore no reason for a call
tomorrow morning, and do not call my home or office again.

Most sincerely,

John Hassett
Tuckerbrook Alternative Investments LP
(781) 476-6001 X101
(781) 367-9681 (mobile)

**jhassett@tuckerbrook.com** <jhassett@tuckerbrook.com>           Sat, Jul 28, 2012 at 11:00 PM
Reply-To: jhassett@tuckerbrook.com
To: sbaner@gmail.com

Over. See you under oath.
Sent via BlackBerry by AT&T

**From:** "SB" <sbaner@gmail.com>
**Date:** Sat, 28 Jul 2012 19:20:29 -0400
**To:** John Hassett<JHassett@tuckerbrook.com>
**ReplyTo:** <sbaner@gmail.com>

**Subject:** Re: Confidential -- Discussion for Settlement Purposes
[Quoted text hidden]

---

**Sumanta Banerjee** <sbaner@gmail.com>                    Fri, Nov 16, 2012 at 2:04 PM
To: jcannavino@cl-law.com


---------- Forwarded message ----------
From: **SB** <sbaner@gmail.com>
Date: Sat, Jul 28, 2012 at 7:20 PM
Subject: Re: Confidential -- Discussion for Settlement Purposes
[Quoted text hidden]


--
Sumanta Banerjee
Mobile: 203 501 0797
Tel:    203 533 4342
Email: sbaner@gmail.com

## Scott B. Seaman

| | |
|---|---|
| **From:** | sbaner@gmail.com |
| **Sent:** | Monday, July 07, 2008 10:35 AM |
| **To:** | scott b seaman |
| **Subject:** | SPAM: MED Fw: VERY IMPORTANT Letter To LPs (please check for disparagement/defamation and all other edits). Thx |

Hi Scott,

Pls see below. I wanted your thoughts. My counsel has advised to remove all the "litigation issues", etc. Maybe you can take a quick peek and see if I should send something today or wait till tomorrow. The lawyers will go through it but I wanted your feedback on general framework and content.

Greg will be calling you shortly. I think we have the framework and he wanted to run it by you.

I will call you shortly to discuss. Thanks.

Best,

Sam

Sumanta Banerjee, CAIA
Co-Managing Member of GDF I & GSS
sbaner@gmail.com
(203) 550 5683 (M)
(203) 293 4165 (O)

-----Original Message-----
From: sbaner@gmail.com

Date: Sun, 6 Jul 2008 18:34:44
To: Douglas Hirsch<dhirsch@sglawyers.com>; Tom G<tgallitano@ckrpf.com>; Francis
Bigelow<fbigelow@sglawyers.com>; Michael R. Bernardo<mbernardo@ckrpf.com>
Subject: VERY IMPORTANT Letter To LPs (please check for disparagement/defamation and all other edits). Thx

Dear Partners and Friends,

In a continuing effort to keep you all informed, I have been communicating with careful guidance from my counsel due to certain restrictions. Also, over this period I have not been able to communicate with most of you directly for your own safety. Now the restrictions are over and the non-compete has ended recently. I will be talking directly with all of you soon.

Also, it is important for you to know, that I engaged in this "battle for control", as the press has called it, for you. The "battle" was not for me but for you --so I could buy the the time you needed got organized and take control of your Fund. I had to fight them in court and also couter-sue them for all their infractions, such as the "hijack attempt" in breach of Fiduciary duties, contractual breaches and regulatory violations, all charges that I am determined to prove while we go through trial. It is also important for you to know that as a Co-managing member of the GP (who has a fiduciary obligation and responsibility to you), I was searching for a partner (as was Jay Yoder, Co-Founder of Tuckerbrook) so a "buyout" (which has to be agreed upon by both parties, by definition) of Tuckerbrook could be effectuated. The reasons for that are laid out in my counter-suit filings with the Court. Also, I understand, from press reports, that Jay Yoder has also filed arbitration proceedings against Tuckerbrook after his departure from Tuckerbrook shortly after mine.

1

A002068

EXHIBIT

61

Seaman 9/21/09

*In my opinion*

If you recall, I had urged you repeatedly, to get organized and retain counsel while Tuckerbrook was trying to "divide and conquer". The Steering Committee has done a tremendous job for you and have withstood slanderous attacks from Tuckerbrook and have secured the necessary votes to remove the General Partner.  What happens from here with me does not matter ---what matters is that YOU are in control of YOUR Fund.  I had to fight for you, otherwise, I would have betrayed your trust and faith in me as many of you "invested with me" while Tuckerbrook was always supposed to provide the backoffice and pay for some investment support.  But they are still trying to divide and conquer and hence I am attaching the letter that was sent to Tuckerbrook's counsel and mine on June 27th.  Incidentally, as many of you know, Debevoise is retained by clients well in excess of 80 percent in interest of the votes and are also supported by other key groups (including clients of all consultants) which took the percentage well in excess of 90 percent, based on communication amongst counsel (Debevoise and mine).  This letter has stated " if Tuckerbrook and Mr. Banerjee can agree by the close of business on Tuesday, July 1, on a detailed term sheet under which the GP would continue as a general partner of the Fund, or would be succeeded by another entity, and under which Tuckerbrook and its affiliates would have no coninuing role in the management or administration of the Fund, the Voting LPs (in excess of 75 percent as per section 7.03 of the LPA) will consider whether those terms provide the basis of an acceptable resolution before proceeding with the removal of the GP".

Despite this letter, they have refused to engage in a good faith Settlement dialogue and are now trying to "extract" compensation from you for purported services that is really not required by the Distressed GP (New GP).  It is very important to "cut the cord" otherwise, Tuckerbrook will continue to disrupt the smooth running of the Funds by the NEW GP (Distressed GP) that you have created.  Besides, I am available to provide any help or support you need since I have complete access to all "books and records" as the Court has ordered them to provide me with that access.  Besides, Liccar maintains all books and records and can perform every function that Tuckerbrook claims it performs.  It is in reality performed by Liccar and then "verified" by Tuckerbrook and not the other way around.  Now that you have taken control of your Fund, I would urge you not to "fall into the trap" of retaining their services in any way or use them on a conitnuing basis in any way.  Please "take control" immediately, otherwise, all your efforts maybe in vain.

The Funds are in good shape ........ however, rebalancing needs to happen in these tricky markets.  Fortunately, Tuckerbrook cannot touch GDF other than GSS (in which GDF invests in for its hedge funds exposure in order to tactically play the market is still in "disputed" territory). Also, the Sun Capital Side Fund needs to be recued from their back-office control.

GDF needs rebalancing and tactical re-positioning through GSS. Incidentally, since inception in November 2007, and in a very difficult period in the credit markets, GSS has delivered a gross return well in excess of 15 percent in (8 months).  This performance has, of course, accrued to GDF I's benefit.  YTD through June 30, 2008 in 2008, GSS has delivered a gross return in the double digits, when the distressed index in negative 5 percent YTD.  This tactical positioning and re-balancing is needed in order to take advantage of "pockets"
of opportunities in this very difficult market.  A wind-down could hurt the Funds since I never set them up in that fashion.  Also, the PE bucket is not fully invested and needs to be invested to fully take advantage of one of the best global distressed opportunities that is upon us now.  Lastly, the certain Funds need to be monetized in the Secondary Market so as to lock in the alpha and the returns --a strategy that had paid handsome dividends in returning limited partner's money quickly and lock in their returns in Commonfund Distressed Partners I.  Of course, it is your Fund (or about to be in your control shortly), and no matter what happens, I will always be available for you to assist or advise in any way.

Lastly, I wanted to let you know that I am in the "final stages" of discussions with a potential partner.  I will be able to report, hopefully, on that partnership very soon. This is an RIA with solid infrastructure,  and with deep pockets.  Since the non-compete is over, as soon as I finalize the agreements with them, I will be in a position to introduce them to you all.  Once you see them, you will agree that the backoffice would undergo a significant step-up in quality for GDF I.  They stand ready to support me so I can continue to look after your interests in GDF I and hopefully continue to deliver performance and alpha on your behalf.

Best regards,

2

CONFIDENTIAL

A002069

Sam

Sumanta Banerjee, CAIA
Co-Managing Member of GDF I & GSS
sbaner@gmail.com
(203) 550 5683 (M)
(203) 293 4165 (O)

CONFIDENTIAL                    A002070

| | |
|---|---|
| **From:** | sumanta.banerjee [sbaner@gmail.com] |
| **Sent:** | Sunday, April 06, 2008 10:34 PM |
| **To:** | iy185005@ncr.com |
| **Cc:** | Douglas Hirsch; Scott B. Seaman; be185014@ncr.com; Kimberly Villa |
| **Subject:** | SPAM: MED requested proposal and response |
| **Attachments:** | Proposal To Hassett 4-03-08 (00114924).PDF |

Issa,
As per your request, I have attached my proposal to JJH and his response (below).  In this
response he claims that he is the Investment Manager despite the lack of an IMA. If you have
any questions, call me.

Best,
Sam

P.S. My discussions with potential partners continue and are going well and I should have a
solution for the new GP shortly.

---------- Forwarded message ----------
From: John Hassett <jhassett@tuckerbrook.com>
Date: Apr 4, 2008 1:24 PM
Subject: From JJH
To: sbaner@gmail.com


Sam,

We received your proposal and have had time to digest it and conclude that it is not an offer
at all.  In the first case, the Limited Partners are most certainly going to replace the GP
within the next 90 days.
They have no choice.  This does not effect Tuckerbrook as the Investment Manager regardless
of the identity of the GP.  The new GP will have the same obligations under the LPA to
name/retain Tuckerbrook as the Investment Manager and it must pay the fees accordingly.  This
is actually a good thing for you, in that you too will be paid when we get paid, regardless
of who the GP is.

In the second case, we already have a "waterfall"...our portion of the fees, so that idea is
just silly.

I'm sorry we are not able to come to an agreement in this regard and urge you to reconsider
our proposal.


John J. Hassett
Managing Principal
Tuckerbrook Alternative Investments, LP
America's Cup Building, Little Harbor
Marblehead, Mass 01945

(617) 946-5800 (X101)
(781) 367-9681 (cell)

jhassett@tuckerbrook.com (will forward to Blackberry when out of office) The information
contained in this message (including any attachments) is confidential and may be legally

EXHIBIT
54
Seaman  9/21/

1

A004445

privileged or otherwise protected from disclosure. This message is intended solely for the named addressee(s) and may be accessed, read, printed, retained, copied or disseminated solely by such addressee(s) and its/ their designates. If you have received this e-mail in error, please notify the sender immediately, destroy any print-outs and delete all electronic files of this e-mail.
Any unauthorized use, reproduction, or dissemination of this message is strictly prohibited. Internet communications are not secure and therefore Tuckerbrook Alternative Investments does not accept legal responsibility for the contents of this message, nor shall it be liable for any delay in its receipt. Any views or opinions presented are solely those of the author and do not necessarily represent those of Tuckerbrook Alternative Investments.

--
Please note change below

Sumanta Banerjee
Chartered Alternative Investment Analyst Managing Partner, Tuckerbrook | SB Global Distressed & SB Global Special Situations, TAI-SB Sun Capital Side Fund, GP
(203) 550 5683 (cell)
(203) 293 4165 (home/fax)
sbaner@gmail.com
---

2

A004446

## CONFIDENTIAL SETTLEMENT COMMUNICATION MADE WITHOUT PREJUDICE

John,

I am responding to your oral proposal of April 1, 2008. My only request is, as we work out our differences in this difficult situation, that we figure out a solution that is acceptable to both of us and the LPs. I propose and strongly recommend that for all capital calls you ask David Hausler to send me an email outlining the reason, the cash in the bank, the underlying manager capital call documentation, and the amount of the capital call. This way, the two managing members of the G.P. can ensure proper functioning of GDF I without further dragging the LPs into this mess, while still protecting the interests of the LPs.

Your proposal as we understood it was as follows:

1. Mutual releases
2. Continuance of all economic distribution
3. No non-compete and non-solicitation clauses.
4. Be a Special Financial Advisor to the Fund and manage the Portfolio
5. Resign from the title of Managing Member of the General Partner.

As my counsel told you on the phone, I have no interest in entering into any contractual obligations with you going forward, for reasons that you can well appreciate (based on events that occurred on 3/25/08). Consequently, I think the fairest and quickest solutions are as follows:

Proposal A:

1. Within the next two weeks, you and I each send to the LPs a pitch package detailing why they should vote for Tuckerbrook ("Team John") to be the GP as opposed to why a team put together by me ("Team Sam") should be the GP.
2. The LPs will then have a week to vote on one of the teams to be the future GP.
3. The losing team will receive a waterfall buyout payment from Sam or John as each receives payment from the GP over years 1-3.
4. Each side releases the other from any and all claims of any kind or nature, except each side shall agree to indemnify the other for claims by third parties, where the claim is in part or in whole, the result of the other party's conduct.

Proposal B: Alternatively, I will buy you out on a waterfall payment basis.

John, I think these are both fair solutions, since if you and I don't agree on something in the next week or so, the LPs are going to probably vote in a third party GP and we will both have nothing. Both my proposals ensure that each of us get economics for 1-3 years. If a third party is voted in, you and I will have nothing to offer each other. Let me know by Monday if you at least agree in "principle" to my solution and then we can begin "papering" it up. In the meantime, we should keep active dialogue between us that is in the best interest of all the LPs.

{00114923.DOC} Sumanta Banerjee, Co-Managing Member of Tuckerbrook | SB Global Distressed Fund I, Tuckerbrook | SB Global Special Situations, TAI-SB Sun Capital Side Fund.

CONFIDENTIAL

A004447

| | |
|---|---|
| From: | sbaner@gmail.com |
| Sent: | Monday, July 7, 2008 11:47 AM |
| To: | Greg Reid <greg.reid@telemuscapital.com> |
| Subject: | Re: Letter from Tuckerbrook |

Greg,

You may also emphasize to him that "we" will be in a position to take over by next week and that you and I will have something "hammered" out by COB this week.

I am not sure how open he will be under the circumstances --but important to lay it out for him --with a presentation to Steering Committee first thing next week. We can still keep it as if we are working out the details (but for Scott --he needs to know exactly how it is for his negotiations with TB tomorrow--he needs to feel comfortable that we are "partnered up" (he keeps it confidential and he will).

Also, it is important for him to know the support you will provide:

-Back office/CFO
-Risk
-Investment Support
-Office in Stamford
-Client Service

Best,

Sam

PS- Scott just called me and said the two of you chatted.

Sumanta Banerjee, CAIA
Co-Managing Member of GDF I & GSS
sbaner@gmail.com
(203) 550 5683 (M)
(203) 293 4165 (O)

From: "Greg Reid" <greg.reid@telemuscapital.com>
Date: Mon, 7 Jul 2008 11:45:04 -0400
To: <sbaner@gmail.com>
Subject: RE: Letter from Tuckerbrook

Interesting letter so thanks. Left message for Scott to call me back. Will let you know when he calls me back.

Greg

From: sbaner@gmail.com [mailto:sbaner@gmail.com]
Sent: Monday, July 07, 2008 10:21 AM
To: Greg Reid
Subject: Fw: Letter from Tuckerbrook

Fyi

CONFIDENTIAL

REID \ TUCKERBROOK 0069



**Scott B. Seaman**

From:      sbaner@gmail.com
Sent:      Monday, July 07, 2008 2:04 PM
To:        scott b seaman
Subject:   SPAM: MED Fw: Fwd: Thinking Points

Scott,

I am not sure whether you received this in the AM. Please see below.

Also, another important thing to keep at the back of your mind as you negotiate -- they have wanted releases from the LPs with respect to their Carried Interest. Of course, they think that you may sue them (fiduciary breach, 40 act violations, etc) on it and they may never see a dime of it (despite the LPA protecting it). You should use that to negotiate as well -- release on the Carried Interest in return for GSS, Side Fund and everyrhing else you need on GDF.

Best,

Sam

Sumanta Banerjee, CAIA
Co-Managing Member of GDF I & GSS
sbaner@gmail.com
(203) 550 5683 (M)
(203) 293 4165 (O)

---

From: "sumanta banerjee" <sumanta.banerjee1@gmail.com>
Date: Mon, 7 Jul 2008 14:57:32 -0400
To: sumanta banerjee<sbaner@gmail.com>
Subject: Fwd: Thinking Points


---------- Forwarded message ----------
From: **sumanta banerjee** <sbaner@gmail.com>
Date: Mon, Jul 7, 2008 at 10:11 AM
Subject: Thinking Points
To: "Scott B. Seaman" <sbs@alkek.org>


Scott


I have jotted some issues that I thought were important for your negotiations --having fought them now for 6 months.

?       I think that keeping them involved in any way (as a Transition Manager) has BIG RISKS (it should be in NAME ONLY and NO ROLE). The judge mentioned during the first appearance that

7/7/2008

A002071

an implicit contract was implied as they had acted as an IMA even though there was no agreement signed. Six months of the same role would then give them 3 years of that role.

? The minute they have the TITLE of TRANSITION MGR -- they are advertising they are not gone and will try to "muddy the waters" against you/NCR, etc. It is important to get them out ASAP. They are crooks and dangerous ---- you should take control immediately; there is no reason for them to be around for more than 1 month at most; Besides --the Court Order gives me "access to all books and records" and you should not be paying them for that □ only to release the DISTRESSED GP. They would still claim the assets under management as an RIA and would continue their "disruptive tactics"; so paying them off and getting it out of their hands is optimal. If they have the Transition Manager title, they can launch another Fund, get another portfolio manager, etc, etc.

? If they somehow HANG AROUND --they will make your life miserable. You need to "cut the cord" and take control immediately. They will drag it on and not give you control and frustrate you and lobby the LPs that the Steering Committee does not know what they are doing -- and hurting the Funds --and they need TB to "be around". That will be their strategy --this is all John's Master Plan. I know you know all this (he is out for you and NCR) --but that will be their strategy; Cutting the cord with a payoff is the only way you can truly get rid of them and THAT IS THE SAFEST THING FOR THE LPs.

? Maybe even a clause that says "all control handed over simultaneously (or close to it) as the money is being transferred."

? As you know, it's important to make GSS + Side Fund to come out in exchange for the payment (important for GDF). For payment of "extortion money" they should give up right to the GDF, Side Fund and GSS in any way, shape or form (VERY IMPORTANT), and also release the New GP.

? The very fact that you are "at the table" --they might interpret it as a sign of weakness on IMA -- I think you may need to make it clear to them that "you are there at the table not for employing them as "transition manager/extortion artists" but because you have a position on the IMA --but you would like GSS/side fund out as well." And if they do not comply --it will be all leaked to the press --including your letter (there is a requirement to update the Judge on status with LPs);

? Bottom line -- Turner is John's "neutered" dog --but still dangerous behind the fa□ade. If they sense any weakness on the "IMA issue", they will try and negotiate hard.

? Please get GSS out (very important for GSS LPs and GDF LPs for alpha generation) and they will give it --if you threaten to leak the "Debevoise" letter to the Press.

? ALSO Judge has ordered NO value destruction ---you need to take control of the Funds -- otherwise value could be destroyed with redemptions, etc.


ALL THE BEST! I will call you later to discuss. I have not sent it to Brandon, I will send to both of you together, once I get your input.

7/7/2008

A002072

| | |
|---|---|
| **From:** | Evans, Brandon [be185014@ncr.com] |
| **Sent:** | Monday, July 07, 2008 1:43 PM |
| **To:** | Scott B. Seaman; Yesufu, Issa |
| **Subject:** | SPAM: MED Tuckerbrook related negotiation items |

**Importance:**     High


1.    Agreement to facilitate and cooperate in the installation of Distressed Investors LLC as the new GP

2.    Turnover all documents related to GDF, GSS and the Side Car.

3.    Agreement to turnover any documents in the future related to GDF, GSS and the Side Car.

4.    Agreement to pay for, cooperate and provide all necessary documents for the audit of the funds – GDF, GSS and side car if necessary

5.    Agreement to not file any legal actions against the new GP, LP investors  or representatives of any of the LP investor companies or as individuals

6.    Completion of 12/31 audited valuation

7.    Completion of 12/31 audited financials

8.    Assuming the IMA is valid, an agreement to terminate the IMA or other contract or contracts with the Partnerships, abandon their current authority and compensation rights under the LPA's.

9.    They agree to take the same actions related to GSS and the Side Car and resign as the GP for GSS and the Side Car

10.    Agreement to cover LP's legal fees related to this matter sine legal counsel was retained by the Steering Committee.

11.    Reimbursement of all travel related expenses related to the negotiation of this settlement

12.    For the avoidance of doubt, all the agreements and terms specified above shall apply to GDF, GSS and the Side Car.

13.    What ever terms have been agreed to are subject to comments and further review by counsel.


1.    We agree to include them among the firms making the pitch to become the new Investment Manager once they hire their new PM and take a vote for approval from the LP's

2.    We agree to pay them 45 bps annualized for the role of interim Investment Manager for the period of 2 quarters

.    we need to understand what they will be doing related to the investment manager portion of their duties during this time.


Brandon Evans
NCR Corporation
1700 S. Patterson Blvd
Treasury Dept., WHQ-3
Dayton, OH 45479
(P) 937-445-3143
(F) 513-719-6924
Brandon.Evans@NCR.com

1

A003923

are not an intended recipient, please do not read, copy, use or disclose the contents of this communication to others. Please notify the sender that you have received this e-mail in error by replying to the e-mail or by telephoning 212.947.3793. Please then delete the e-mail and any copies of it. Thank you. Nothing contained in this disclaimer shall be construed in any way to grant permission to transmit confidential information via this firm's e-mail system.

From: Sumanta Banerjee [mailto:sbaner@gmail.com]
Sent: Tuesday, July 15, 2008 4:30 PM
To: Douglas Hirsch
Cc: Tom G
Subject: Re: Setlement Discussions

Doug,

Please see my prior email. I think the "escrow" representation is recipe for disaster (trust mell). I had told you the "press stuff" is the only weapon we have. So let's put a time fram on it --say it needs to settle by tomorrow (signed term sheets) and we will wire the money or we file everything with the Court on Friday.

My partner is ready to wire -- but you DO NOT HAVE MY AUTHORIZATION TO REPRESENT THAT TO THEM. They are trying to figure out if they should continue their litigation against John Doe or drop it (since there may not be a John Doe).

Pls call so we can discuss. I just got back home.

Thx

Sam


Sumanta Banerjee, CAIA
Co-Managing Member of GSS
sbaner@gmail.com
(203) 550 5683 (M)
(203) 293 4165 (O)


From: "Douglas Hirsch" <dhirsch@sglawyers.com>
Date: Tue, 15 Jul 2008 16:01:52 -0400
To: <sbaner@gmail.com>
CC: Tom G<tgallitano@ckrpf.com>
Subject: FW: Setlement Discussions


Sam, read below. I think we should come up with two offers for them.

One, we should offer them a buy -out and put the money into escrow so

2

A004305

| | |
|---|---|
| From: | Sumanta Banerjee [sbaner@gmail.com] |
| Sent: | Tuesday, July 15, 2008 4:33 PM |
| To: | scott b seaman |
| Subject: | SPAM:LOW Fw: Setlement Discussions |

Pls see below. Let's discuss at your convenience. They seem serious on selling GSS and GDF
back end (based on price). They are worried that they may never see a dime from the NEW GP.
They even said to my counsel
-- "could we rep, as part of settlement, that old GP interest is protected". My counsel
laughed at them -- that is a rep from NEW GP -is what he reminded them.

Greg is working to get there --I believe he chatted with you.

I will call shortly. I wish all this happened a week ago.......


Sumanta Banerjee, CAIA
Co-Managing Member of GSS
sbaner@gmail.com
(203) 550 5683 (M)
(203) 293 4165 (O)


_____

From: "Douglas Hirsch" <dhirsch@sglawyers.com>
Date: Tue, 15 Jul 2008 16:38:51 -0400
To: <sbaner@gmail.com>
CC: Tom G<tgallitano@ckrpf.com>
Subject: RE: Setlement Discussions


Sam: confirm with your partner as follows:

1. We offer $250K for the following:

A. GSS Membership Interest
B. Rep that IMAs are terminated or not valid C. Mutual General Releases D. Joint Press
Release E. There is already 200K of fees sitting in escrow.


Douglas R. Hirsch| Sadis & Goldberg LLP | Email: dhirsch@sglawyers.com |
www.hedgefundworld.com <blocked::file:///C:/Documents and Settings/ddlaboha/Application
Data/Microsoft/Signatures/www.hedgefundworld.com> |

551 Fifth Avenue, 21st Floor, New York, New York 10176 | Tel: (212 )573-6670 | Fax: (212)
573-8150 |

50 California Street, Suite 2320, San Francisco, California 94111

This e-mail communication is confidential and is intended only for the individuals or
entities named above and others who have been specifically authorized to receive it. If you

1

CONFIDENTIAL                    A004304

**From:**      Greg Reid <greg.reid@telemuscapital.com>
**Sent:**      Tuesday, July 15, 2008 3:39 PM
**To:**        sbaner@gmail.com
**Subject:**   RE: TB Settlement/Good news

Ok will do and working on call with our attorney now.

-----Original Message-----
From: "Sumanta Banerjee" <sbaner@gmail.com>
To: "Greg Reid" <greg.reid@telemuscapital.com>
Sent: 7/15/2008 1:00 PM
Subject: Re: TB Settlement/Good news

Pls put the max you are willing to pay in an email to me (and be ready to escrow with my counsel). Of course, all releases will be place.  You will be buying their 50 percent of GSS and 50 percent of GP interest of GDF I (protected even if GP is removed). Also, Sun Side Fund(no econmics).  The GSS GP interest will be worth more than 100k for a year.

Let's see --this is all good developments. Keep fingers crossed.  300-350K is a good price.


Sumanta Banerjee, CAIA
Co-Managing Member of GSS
sbaner@gmail.com
(203) 550 5683 (M)
(203) 293 4165 (O)


-----Original Message-----
From: "Sumanta Banerjee" <sbaner@gmail.com>

Date: Tue, 15 Jul 2008 19:46:19
To: Greg Reid<greg.reid@telemuscapital.com>
Subject: TB Settlement/Good news


They seem serious-- want to know what we are willing to pay for GSS, GDF backend and side Fund and all releases in exchange. They will asign their backend to you/me -- you can still stay in the background.  They want my counsel to confirm that our offer is with him in escrow.  Please call me ASAP.

Sumanta Banerjee, CAIA
Co-Managing Member of GSS
sbaner@gmail.com
(203) 550 5683 (M)
(203) 293 4165 (


# CONFIDENTIAL



| | |
|---|---|
| From: | Greg Reid <greg.reid@telemuscapital.com> |
| Sent: | Tuesday, July 15, 2008 3:39 PM |
| To: | sbaner@gmail.com |
| Subject: | RE: TB Settlement/Good news |

Ok will do and working on call with our attorney now.

-----Original Message-----
From: "Sumanta Banerjee" <sbaner@gmail.com>
To: "Greg Reid" <greg.reid@telemuscapital.com>
Sent: 7/15/2008 1:00 PM
Subject: Re: TB Settlement/Good news

Pls put the max you are willing to pay in an email to me (and be ready to escrow with my counsel). Of course, all releases will be place.  You will be buying their 50 percent of GSS and 50 percent of GP interest of GDF I (protected even if GP is removed). Also, Sun Side Fund(no econmics).  The GSS GP interest will be worth more than 100k for a year.

Let's see --this is all good developments. Keep fingers crossed.  300-350K is a good price.

Sumanta Banerjee, CAIA
Co-Managing Member of GSS
sbaner@gmail.com
(203) 550 5683 (M)
(203) 293 4165 (O)

-----Original Message-----
From: "Sumanta Banerjee" <sbaner@gmail.com>

Date: Tue, 15 Jul 2008 19:46:19
To: Greg Reid<greg.reid@telemuscapital.com>
Subject: TB Settlement/Good news

They seem serious-- want to know what we are willing to pay for GSS, GDF backend and side Fund and all releases in exchange.  They will asign their backend to you/me -- you can still stay in the background.  They want my counsel to confirm that our offer is with him in escrow.  Please call me ASAP.

Sumanta Banerjee, CAIA
Co-Managing Member of GSS
sbaner@gmail.com
(203) 550 5683 (M)
(203) 293 4165 (



CONFIDENTIAL



**From:**      Sumanta Banerjee <sbaner@gmail.com>
**Sent:**      Tuesday, July 15, 2008 4:06 PM
**To:**        Greg Reid <greg.reid@telemuscapital.com>
**Subject:**   Re: Setlement Discussions

Anyway, I will wait to hear back from you definitively. Please keep in mind that legal expenses are also 300k.

So let's keep it at 250k/300k on GSS. We will get GDF together -- so anything we go up from here -- is for that.

Let me know in an email please. Thx

Sumanta Banerjee, CAIA.
Co-Managing Member of GSS
sbaner@gmail.com
(203) 550 5683 (M)
(203) 293 4165 (O)

-----Original Message-----
From: "Greg Reid" <greg.reid@telemuscapital.com>

Date: Tue, 15 Jul 2008 13:53:49
To: <sbaner@gmail.com>
Subject: RE: Setlement Discussions

Ok makes sense to me

-----Original Message-----
From: "Sumanta Banerjee" <sbaner@gmail.com>
To: "Greg Reid" <greg.reid@telemuscapital.com>
Sent: 7/15/2008 1:45 PM
Subject: Fw: Setlement Discussions

Pls see below.

Another 50-100k may need to be in escrow based on our offer. GDF I (back end) may be difficult to buy-- since their view is it may be protected. However, they still asked for a bid. Maybe that is what we use to increase our price from 250/300k --that is my counsel's advice.

Pls let me know asap. Thx

Sumanta Banerjee, CAIA
Co-Managing Member of GSS
sbaner@gmail.com
(203) 550 5683 (M)
(203) 293 4165 (O)

-----Original Message-----
From: "Douglas Hirsch" <dhirsch@sglawyers.com>

Date: Tue, 15 Jul 2008 16:38:51
To: <sbaner@gmail.com>
Cc: Tom G<tgallitano@ckrpf.com>
Subject: RE: Setlement Discussions

# CONFIDENTIAL

REID \ TUCKERBROOK  0099

Sam: confirm with your partner as follows:

1. We offer $250K for the following:

A. GSS Membership Interest
B. Rep that IMAs are terminated or not valid
C. Mutual General Releases
D. Joint Press Release
E. There is already 200K of fees sitting in escrow.


Douglas R. Hirsch| Sadis & Goldberg LLP | Email: dhirsch@sglawyers.com |
www.hedgefundworld.com, <blocked::file:///C:/Documents and
Settings/ddlaboha/Application
Data/Microsoft/Signatures/www.hedgefundworld.com> |

551 Fifth Avenue, 21st Floor, New York, New York 10176 | Tel: (212
)573-6670 | Fax: (212) 573-8150 |

50 California Street, Suite 2320, San Francisco, California 94111

This e-mail communication is confidential and is intended only for the
individuals or entities named above and others who have been
specifically authorized to receive it. If you are not an intended
recipient, please do not read, copy, use or disclose the contents of
this communication to others. Please notify the sender that you have
received this e-mail in error by replying to the e-mail or by
telephoning 212.947.3793. Please then delete the e-mail and any copies
of it. Thank you. Nothing contained in this disclaimer shall be
construed in any way to grant permission to transmit confidential
information via this firm's e-mail system.

---

From: Sumanta Banerjee [mailto:sbaner@gmail.com]
Sent: Tuesday, July 15, 2008 4:30 PM
To: Douglas Hirsch
Cc: Tom G
Subject: Re: Setlement Discussions


Doug,

Please see my prior email. I think the "escrow" representation is recipe
for disaster (trust me!!). I had told you the "press stuff" is the only
weapon we have. So let's put a time fram on it --say it needs to settle
by tomorrow (signed term sheets) and we will wire the money or we file
everything with the Court on Friday.

My partner is ready to wire -- but you DO NOT HAVE MY AUTHORIZATION TO
REPRESENT THAT TO THEM. They are trying to figure out if they should
continue their litigation against John Doe or drop it (since there may
not be a John Doe).

Pls call so we can discuss. I just got back home.

Thx

Sam

# CONFIDENTIAL

REID \ TUCKERBROOK 0100

Sumanta Banerjee, CAIA
Co-Managing Member of GSS
sbaner@gmail.com
(203) 550 5683 (M)
(203) 293 4165 (O)

From: "Douglas Hirsch" <dhirsch@sglawyers.com>
Date: Tue, 15 Jul 2008 16:01:52 -0400
To: <sbaner@gmail.com>
CC: Tom G <tgallitano@ckrpf.com>
Subject: FW: Setlement Discussions

Sam, read below. I think we should come up with two offers for them.

One, we should offer them a buy -out and put the money into escrow so
that it is in my account when we send them the letter and I can represent
that I have the money in my account.

The other offer should be we will agree to an 18 month restriction on
GDF for $1million, but they sell us GSS and you can manage GSS.

Douglas R. Hirsch| Sadis & Goldberg LLP | Email: dhirsch@sglawyers.com |
www.hedgefundworld.com <blocked::file:///C:/Documents and
Settings/ddlaboha/Application
Data/Microsoft/Signatures/www.hedgefundworld.com> |

551 Fifth Avenue, 21st Floor, New York, New York 10176 | Tel: (212
)573-6670 | Fax: (212) 573-8150 |

50 California Street, Suite 2320, San Francisco, California 94111

This e-mail communication is confidential and is intended only for the
individuals or entities named above and others who have been
specifically authorized to receive it. If you are not an intended
recipient, please do not read, copy, use or disclose the contents of
this communication to others. Please notify the sender that you have
received this e-mail in error by replying to the e-mail or by
telephoning 212.947.3793. Please then delete the e-mail and any copies
of it. Thank you. Nothing contained in this disclaimer shall be
construed in any way to grant permission to transmit confidential
information via this firm's e-mail system.

From: Blanchard, Michael D. [mailto:michael.blanchard@bingham.com]
Sent: Tuesday, July 15, 2008 3:40 PM
To: Douglas Hirsch
Subject: RE: Setlement Discussions

Doug:

We made an offer, it is on the table until Friday at 5:00 PM or sooner
if you wish. We are not interested in negotiating anything other then
what we have already proposed. In the end, your client simply has no
credibility with my client.

CONFIDENTIAL

REID \ TUCKERBROOK 0101

that it is in my acount when we send them the letter and I can represent that I have the money in my account.

The other offer should be we will agree to an 18 month restriction on GDF for $1million, but they sell us GSS and you can manage GSS.

Douglas R. Hirsch| Sadis & Goldberg LLP | Email: dhirsch@sglawyers.com | www.hedgefundworld.com <blocked::file:///C:/Documents and Settings/ddlaboha/Application Data/Microsoft/Signatures/www.hedgefundworld.com>   |

551 Fifth Avenue, 21st Floor, New York, New York 10176 | Tel: (212 )573-6670 | Fax: (212) 573-8150 |

50 California Street, Suite 2320, San Francisco, California 94111

This e-mail communication is confidential and is intended only for the individuals or entities named above and others who have been specifically authorized to receive it. If you are not an intended recipient, please do not read, copy, use or disclose the contents of this communication to others. Please notify the sender that you have received this e-mail in error by replying to the e-mail or by telephoning 212.947.3793. Please then delete the e-mail and any copies of it. Thank you. Nothing contained in this disclaimer shall be construed in any way to grant permission to transmit confidential information via this firm's e-mail system.

From: Blanchard, Michael D. [mailto:michael.blanchard@bingham.com]
Sent: Tuesday, July 15, 2008 3:40 PM
To: Douglas Hirsch
Subject: RE: Setlement Discussions

Doug:

We made an offer, it is on the table until Friday at 5:00 PM or sooner if you wish.  We are not interested in negotiating anything other then what we have already proposed. In the end, your client simply has no credibility with my client.

Mike

From: Douglas Hirsch [mailto:dhirsch@sglawyers.com]
Sent: Tuesday, July 15, 2008 1:44 PM
To: Blanchard, Michael D.
Subject: RE: Setlement Discussions

CONFIDENTIAL SETTLEMENT COMMUNICATION

3

| | |
|---|---|
| **From:** | Greg Reid <greg.reid@telemuscapital.com> |
| **Sent:** | Tuesday, July 15, 2008 3:39 PM |
| **To:** | sbaner@gmail.com |
| **Subject:** | RE: TB Settlement/Good news |

Ok will do and working on call with our attorney now.

-----Original Message-----
From: "Sumanta Banerjee" <sbaner@gmail.com>
To: "Greg Reid" <greg.reid@telemuscapital.com>
Sent: 7/15/2008 1:00 PM
Subject: Re: TB Settlement/Good news

Pls put the max you are willing to pay in an email to me (and be ready to escrow with my counsel). Of course, all releases will be place. You will be buying their 50 percent of GSS and 50 percent of GP interest of GDF I (protected even if GP is removed). Also, Sun Side Fund(no econmics). The GSS GP interest will be worth more than 100k for a year.

Let's see --this is all good developments. Keep fingers crossed. 300-350K is a good price.

Sumanta Banerjee, CAIA
Co-Managing Member of GSS
sbaner@gmail.com
(203) 550 5683 (M)
(203) 293 4165 (O)

-----Original Message-----
From: "Sumanta Banerjee" <sbaner@gmail.com>

Date: Tue, 15 Jul 2008 19:46:19
To: Greg Reid<greg.reid@telemuscapital.com>
Subject: TB Settlement/Good news

They seem serious-- want to know what we are willing to pay for GSS, GDF backend and side Fund and all releases in exchange. They will asign their backend to you/me -- you can still stay in the background. They want my counsel to confirm that our offer is with him in escrow. Please call me ASAP.

Sumanta Banerjee, CAIA
Co-Managing Member of GSS
sbaner@gmail.com
(203) 550 5683 (M)
(203) 293 4165 (

# CONFIDENTIAL

Δ π EXHIBIT 78
Deponent _Karg_
Date 11/2/07 Rptr
WWW.DEPOBOOK.COM

**From:** Scott B. Seaman [sbs@alkek.org]
**Sent:** Tuesday, July 29, 2008 9:11 AM
**To:** sbaner@gmail.com
**Subject:** RE: SPAM:LOW Fw: Sun Capital Partners V, L.P. Drawdown Notice # 9 Due August 11, 2008

Sam,

I think the meeting went well and Greg has much more clarity what will be needed from the LP standpoint for GDF.

Of course GSS still up in the air and we will have to see what progress we make this week.

Will you be wiring your funds today for your past due capital calls?

Thanks.

Scott

---

From: Sumanta Banerjee [mailto:sbaner@gmail.com]
Sent: Monday, July 28, 2008 5:51 PM
To: scott b seaman; sumanta.banerjee1@gmail.com
Subject: Re: SPAM:LOW Fw: Sun Capital Partners V, L.P. Drawdown Notice # 9 Due August 11, 2008

I spoke to him before he went into the meeting with you. Hope it went well!

Sumanta Banerjee, CAIA
Co-Managing Member of GSS
sbaner@gmail.com
(203) 550 5683 (M)
(203) 293 4165 (O)

---

From: "Scott B. Seaman" <sbs@alkek.org>
Date: Mon, 28 Jul 2008 17:45:22 -0500
To: <sumanta.banerjee1@gmail.com>
Subject: RE: SPAM:LOW Fw: Sun Capital Partners V, L.P. Drawdown Notice # 9 Due August 11, 2008

Sam,

Just finished a long meeting with Greg.

Having a few bumps with the bank situation.

1

CONFIDENTIAL

A005844

Handling first things first so have not contacted managers yet.

Below is the amount of your outstanding capital calls.

Need this paid immediately or we will not be able to make an underlying manager call.

Tuckerbrook|SB Global Distressed Fund I, LP

Outstanding Capital Calls

2

A005845



# alternative investment news

Your daily news source for hedge funds, private equity and other alternatives.

www.iialternatives.com

A PUBLICATION OF INSTITUTIONAL INVESTOR, INC.

**SEPTEMBER 8, 2008**
VOL. IX, NO. 36

### Web Exclusive
**Bank of America** has tapped **Dean Murray** to manage its hedge fund sales team.

*Visit www.totalalternatives.com*

### At Press Time
Ilex Readies Energy Credit Fund          2

### Americas
Weich Touts Healthcare Offering          3
D.E. Shaw To Expand ABS                  3
Brockton Eyes FoFs                       4
Juno Commodity Strat Gains               4
Glazer Taps Ex-Citi Pro                  6
DDX Delays Offshore Launch               6

### Europe
Horizon21 Seeks Analysts                 7
FRM Hires Citi Pro                       7
Corazon Adds Currency Tranches           8
CQS Unveils Volatility Strat             8

### Asia Pacific
Bronte Rolls Out Asia L/S Fund           9
Bridge Partners Fund Dips In July       10
TriAlpha Enters Singapore               11

### Departments
Data Zone                               12
Mandate Scoreboard                      13
Alternatives Manager
   Search Directory                     15

COPYRIGHT NOTICE: No part of this publication may be copied, photocopied or duplicated in any form or by any means without Institutional Investor's prior written consent. Copying of this publication is in violation of the Federal Copyright Law (17 USC 101 et seq.). Violators may be subject to criminal penalties as well as liability for substantial monetary damages, including statutory damages up to $100,000 per infringement, costs and attorney's fees. Copyright 2008 Institutional Investor, Inc. All rights reserved. ISSN# 1544

For information regarding subscription rates and electronic licenses, please contact Dan Lalor at (212) 224-3045.

## HASSETT FORMS JV, ATTRACTS LEGAL CHALLENGE

John Hassett, co-founder and managing principal at Tuckerbrook Alternative Investments, has founded HT Capital, a joint venture between Tuckerbrook and the $1.2 billion Hardt Group. But concerns have been raised by Distressed GP, the newly appointed general partner of *Tuckerbrook | SB Global Distressed Fund* comprised of investors in the fund, about HT's disclosure forms submitted to the Securities and Exchange Commission.



(continued on page 16)

## EU PRIVACY LAW MAY VEX U.S. FUNDS

A growing number of U.S. hedge fund firms are finding themselves in an awkward spot over investor privacy as they look to do business in Europe. Tightened liquidity following the subprime mortgage crisis has in recent months prompted many firms to look for new opportunities. Europe's capital flows are an enticing prospect, but firms are often unaware that to access them they must cough up information that they have typically kept under wraps and which many investors would rather keep that way.

At issue is the EU's Third Money Laundering Directive. Although the Directive was introduced into law late last year, it is only in recent months that many U.S. firms are

(continued on page 2)

## ADVENT TO LAUNCH GLOBAL MULTI-STRAT

Advent Capital Management, the $4.2 billion hedge and long-only firm, will launch a global multi-strategy hedge fund later this month. The roll-out comes as the firm seeks to more than quadruple hedge fund assets, to $4 billion. Odell Lambroza and Daniel Frommer will run the *Advent Global Opportunities Fund*, set to begin trading with $100 million. The fund will invest in debt, equities, bank loans, convertibles, options, total return swaps and volatility trades. Frommer joined in June from Bear Stearns.

The fund will take exposure to the technology and retail sectors, among others, and will also invest in REITs. "We can play in a lot of different spaces," Frommer said. "[We] think

(continued on page 16)

## GRENFELL EYES MERGERS, TARGETS $1B



Grenfell PAI is seeking to join forces with another investment firm to grow its business. "People are suffering from not having scale," CEO Kirsten English told *AIN*. The $400 million firm is considering mergers, acquisitions or partnerships in order to reach its target size of $1 billion in the next year.

Grenfell PAI is itself the result of the merger in July between P-Solve Alternative Investments (PAI), the fund of hedge funds arm of the Punter Southall Group, and Grenfell Fund Managers, part of fund of

*Kirsten English*

(continued on page 16)

**Check www.totalalternatives.com during the week for breaking news and updates.**

Alternative Investment News        www.totalalternatives.com        September 8, 2008

# ADVENT TO LAUNCH

*(continued from page 1)*

that's really important in this market right now." Fees will be 2/20 with a $3 million investment minimum. Citigroup and Goldman Sachs are the prime brokers and the firm has identified a bank that will seed the fund. Lambroza declined to name the bank or quantify the seed investment.

Advent sees opportunities in financials as de-leveraging by investment banks and hedge funds is putting pressure on financial stock prices and companies' capital structures. The chaos surrounding Fannie Mae, Freddie Mac and Lehman Brothers is creating inefficiency in the pricing structures, and financials are under pressure now as they are facing incredible scrutiny, Lambroza pointed out. "When everyone runs to the door at the same time, they usually leave some coins on the table," he quipped.

Advent also manages the *Advent Convertible Arbitrage Strategy* and the *Enhanced Phoenix Strategy*. These funds, plus the firm's latest rollout, will hold a combined $800 million. The firm plans to grow hedge fund assets to $4 billion in the next 12-18 months. Advent is approaching insurance banks, funds of hedge funds, pensions, foundations and endowments.

Before joining Advent in June, Frommer was a senior managing director and co-head of the high-yield credit trading desk at Bear Stearns. Lambroza joined Advent in January 2001. Previously he held senior positions at SG Cowen Securities, HSBC and Merrill Lynch.

—*Suzy Kenly*

# HASSETT FORMS

*(continued from page 1)*

Tuckerbrook has been involved in a legal battle with Sumanta Banerjee, former co-manager of the fund along with Tuckerbrook, since April (*totalalternatives.com*, April 30). The dispute led to termination of the general partnership, which consisted of Banerjee and Tuckerbrook, and to the appointment of Distressed GP.

Distressed GP sent a letter to Hassett on August 1 "direct[ing] Tuckerbrook to cease and desist from exercising whatever authority Tuckerbrook believed it had under any investment management agreement, including the authority to execute changes to the Fund's portfolio." Both Hassett and Banerjee retain a carried interest in the fund in addition to their own capital investments.

In a letter dated August 12 to Hassett and Banerjee, Distressed GP wrote that they believe the forms filed with the SEC regarding the formation of HT Capital "contain false and misleading disclosures about Tuckerbrook's business, in that Tuckerbrook does not have under management the assets related to the Fund, and there is no disclosure that Tuckerbrook's relationship with the Fund has been terminated or that the Old GP, an affiliate of Tuckerbrook, was removed as the general Partner of the Fund by a vote of limited partners."

The letter was sent in conjunction with a request that Tuckerbrook hand over all relevant documents about the Tuckerbrook | SB Global Distressed Fund to Distressed GP. As of press time, the original N-2 forms dated July 31 were the only ones posted on the SEC's website. Steven Klugman, attorney for Distressed GP, declined to comment. Scott Seaman, a member of Distressed GP, did not return calls by press time.

Hassett declined to comment because HT is currently in the registration process with the SEC. Tuckerbrook hired John Griff last week as the new head of its distressed program to replace Banerjee. Calls to Griff were not returned and Banerjee declined to comment.

Hassett is no stranger to litigation. He was involved in a case in 2002 with Jan-Dirk Paarlberg, an investor in Little Harbor Capital and Radius Capital, where Hassett was a manager and director.

—*Sarah Ilene Klein*

# GRENFELL EYES

*(continued from page 1)*

hedge funds manager Octane Holdings Group. Punter Southall now owns 78% of the business, and Octane the remaining 22%.

In terms of a possible partnership, a European-focused venture would be the logical fit, as the firm is keen to grow into Europe, said English. Grenfell's historical investor base is in South Africa and the bulk of PAI's investors were corporate pension funds in the U.K. The firm is also seeking to add two sales and distribution staffers to the nine-strong team in London. One hire will focus on targeting pension funds and the other will tap into the high-net-worth market via wealth managers.

Grenfell PAI has combined the fund of funds offerings of Grenfell and PAI to create larger, more focused offerings, said CIO Jabir Sardharwalla. The seven funds are being merged into three—the *Low Volatility Fund*, the *Defensive Equity Fund* and *Graduate*.

—*Harriet Agnew*

## Quote Of The Week

"When everyone runs to the door at the same time, they usually leave some coins on the table." —**Odell Lambroza**, portfolio manager at **Advent Capital Management**, on the opportunities emerging as de-leveraging puts pressure on financial stock prices (see story, page 1).

## One Year Ago In Alternative Investment News

The Connecticut Retirement Plans & Trust Funds established an alternative investment bucket, worth up to 10% of its $26 billion assets... Stockholm-based Informed Portfolio Management was considering a merger with Global Advisors, the London- and New York-based hedge fund firm... Martin Currie Investment Management was gearing up to launch a series of sector-focused hedge funds.

©Institutional Investor News 2008. Reproduction requires publisher's prior permission.

CONFIDENTIAL                    A004210

82

1       Q.    And the -- the text of the e-mail from

2   Mr. Banerjee to you that's on page 119, contains,

3   again, additional details on -- on the terms of the

4   settlement negotiation -- strike that.

5           Terms of the settlement structure that

6   apparently he had been having with TB.  But I want to

7   focus on the PS that's set forth --

8       A.    Okay.

9       Q.    -- on page 120.

10      A.    Right.

11      Q.    Where it says, "PS- I spoke to Scott -- his

12  advice for me to," open quote, "get the show on the

13  road for GDF sooner than later," close quote "but he

14  is very happy that we got GSS out/also Sun Side Fund,

15  etc."

16          Did -- did you have any conversations with

17  Mr. Banerjee about the substance of his conversation

18  with Mr. Seaman about getting the show on the road for

19  GDF?

20      A.    Not that I can remember.

21      Q.    Did you have any conversations with

22  Mr. Seaman about his purported interest in getting the

23  show on the road for GDF sooner --

24      A.    Not that I can remember.

25      Q.    -- than later?