EXHIBIT 5

## 14. CONVENTION ON THE SERVICE ABROAD OF JUDICIAL AND EXTRAJUDICIAL DOCUMENTS IN CIVIL OR COMMERCIAL MATTERS

*(Concluded 15 November 1965)*

The States signatory to the present Convention,

Desiring to create appropriate means to ensure that judicial and extrajudicial documents to be served abroad shall be brought to the notice of the addressee in sufficient time,

Desiring to improve the organisation of mutual judicial assistance for that purpose by simplifying and expediting the procedure,

Have resolved to conclude a Convention to this effect and have agreed upon the following provisions:

### Article 1

The present Convention shall apply in all cases, in civil or commercial matters, where there is occasion to transmit a judicial or extrajudicial document for service abroad.

This Convention shall not apply where the address of the person to be served with the document is not known.

CHAPTER I – JUDICIAL DOCUMENTS

### Article 2

Each Contracting State shall designate a Central Authority which will undertake to receive requests for service coming from other Contracting States and to proceed in conformity with the provisions of Articles 3 to 6.

Each State shall organise the Central Authority in conformity with its own law.

### Article 3

The authority or judicial officer competent under the law of the State in which the documents originate shall forward to the Central Authority of the State addressed a request conforming to the model annexed to the present Convention, without any requirement of legalisation or other equivalent formality.

The document to be served or a copy thereof shall be annexed to the request. The request and the document shall both be furnished in duplicate.

### Article 4

If the Central Authority considers that the request does not comply with the provisions of the present Convention it shall promptly inform the applicant and specify its objections to the request.

### Article 5

The Central Authority of the State addressed shall itself serve the document or shall arrange to have it served by an appropriate agency, either –

a)    by a method prescribed by its internal law for the service of documents in domestic actions upon persons who are within its territory, or

b)    by a particular method requested by the applicant, unless such a method is incompatible with the law of the State addressed.

Subject to sub-paragraph *(b)* of the first paragraph of this Article, the document may always be served by delivery to an addressee who accepts it voluntarily.

If the document is to be served under the first paragraph above, the Central Authority may require the document to be written in, or translated into, the official language or one of the official languages of the State addressed.

That part of the request, in the form attached to the present Convention, which contains a summary of the document to be served, shall be served with the document.

## Article 6

The Central Authority of the State addressed or any authority which it may have designated for that purpose, shall complete a certificate in the form of the model annexed to the present Convention.

The certificate shall state that the document has been served and shall include the method, the place and the date of service and the person to whom the document was delivered. If the document has not been served, the certificate shall set out the reasons which have prevented service.

The applicant may require that a certificate not completed by a Central Authority or by a judicial authority shall be countersigned by one of these authorities.

The certificate shall be forwarded directly to the applicant.

## Article 7

The standard terms in the model annexed to the present Convention shall in all cases be written either in French or in English. They may also be written in the official language, or in one of the official languages, of the State in which the documents originate.

The corresponding blanks shall be completed either in the language of the State addressed or in French or in English.

## Article 8

Each Contracting State shall be free to effect service of judicial documents upon persons abroad, without application of any compulsion, directly through its diplomatic or consular agents.

Any State may declare that it is opposed to such service within its territory, unless the document is to be served upon a national of the State in which the documents originate.

## Article 9

Each Contracting State shall be free, in addition, to use consular channels to forward documents, for the purpose of service, to those authorities of another Contracting State which are designated by the latter for this purpose.

Each Contracting State may, if exceptional circumstances so require, use diplomatic channels for the same purpose.

## Article 10

Provided the State of destination does not object, the present Convention shall not interfere with –

a)    the freedom to send judicial documents, by postal channels, directly to persons abroad,

b)    the freedom of judicial officers, officials or other competent persons of the State of origin to effect service of judicial documents directly through the judicial officers, officials or other competent persons of the State of destination,

c)    the freedom of any person interested in a judicial proceeding to effect service of judicial documents directly through the judicial officers, officials or other competent persons of the State of destination.

## Article 11

The present Convention shall not prevent two or more Contracting States from agreeing to permit, for the purpose of service of judicial documents, channels of transmission other than those provided for in the preceding Articles and, in particular, direct communication between their respective authorities.

### Article 12

The service of judicial documents coming from a Contracting State shall not give rise to any payment or reimbursement of taxes or costs for the services rendered by the State addressed.
The applicant shall pay or reimburse the costs occasioned by —
a)      the employment of a judicial officer or of a person competent under the law of the State of destination,
b)      the use of a particular method of service.

### Article 13

Where a request for service complies with the terms of the present Convention, the State addressed may refuse to comply therewith only if it deems that compliance would infringe its sovereignty or security.
It may not refuse to comply solely on the ground that, under its internal law, it claims exclusive jurisdiction over the subject-matter of the action or that its internal law would not permit the action upon which the application is based.
The Central Authority shall, in case of refusal, promptly inform the applicant and state the reasons for the refusal.

### Article 14

Difficulties which may arise in connection with the transmission of judicial documents for service shall be settled through diplomatic channels.

### Article 15

Where a writ of summons or an equivalent document had to be transmitted abroad for the purpose of service, under the provisions of the present Convention, and the defendant has not appeared, judgment shall not be given until it is established that –
a)      the document was served by a method prescribed by the internal law of the State addressed for the service of documents in domestic actions upon persons who are within its territory, or
b)      the document was actually delivered to the defendant or to his residence by another method provided for by this Convention,
        and that in either of these cases the service or the delivery was effected in sufficient time to enable the defendant to defend.

Each Contracting State shall be free to declare that the judge, notwithstanding the provisions of the first paragraph of this Article, may give judgment even if no certificate of service or delivery has been received, if all the following conditions are fulfilled –
a)      the document was transmitted by one of the methods provided for in this Convention,
b)      a period of time of not less than six months, considered adequate by the judge in the particular case, has elapsed since the date of the transmission of the document,
c)      no certificate of any kind has been received, even though every reasonable effort has been made to obtain it through the competent authorities of the State addressed.

Notwithstanding the provisions of the preceding paragraphs the judge may order, in case of urgency, any provisional or protective measures.

### Article 16

When a writ of summons or an equivalent document had to be transmitted abroad for the purpose of service, under the provisions of the present Convention, and a judgment has been entered against a defendant who has not appeared, the judge shall have the power to relieve the defendant from the effects of the expiration of the time for appeal from the judgment if the following conditions are fulfilled –

a)      the defendant, without any fault on his part, did not have knowledge of the document in sufficient time to defend, or knowledge of the judgment in sufficient time to appeal, and

b)      the defendant has disclosed a *prima facie* defence to the action on the merits.

An application for relief may be filed only within a reasonable time after the defendant has knowledge of the judgment.

Each Contracting State may declare that the application will not be entertained if it is filed after the expiration of a time to be stated in the declaration, but which shall in no case be less than one year following the date of the judgment.

This Article shall not apply to judgments concerning status or capacity of persons.

CHAPTER II – EXTRAJUDICIAL DOCUMENTS

## Article 17

Extrajudicial documents emanating from authorities and judicial officers of a Contracting State may be transmitted for the purpose of service in another Contracting State by the methods and under the provisions of the present Convention.

CHAPTER III – GENERAL CLAUSES

## Article 18

Each Contracting State may designate other authorities in addition to the Central Authority and shall determine the extent of their competence.

The applicant shall, however, in all cases, have the right to address a request directly to the Central Authority.

Federal States shall be free to designate more than one Central Authority.

## Article 19

To the extent that the internal law of a Contracting State permits methods of transmission, other than those provided for in the preceding Articles, of documents coming from abroad, for service within its territory, the present Convention shall not affect such provisions.

## Article 20

The present Convention shall not prevent an agreement between any two or more Contracting States to dispense with –

a)      the necessity for duplicate copies of transmitted documents as required by the second paragraph of Article 3,

b)      the language requirements of the third paragraph of Article 5 and Article 7,

c)      the provisions of the fourth paragraph of Article 5,

d)      the provisions of the second paragraph of Article 12.

## Article 21

Each Contracting State shall, at the time of the deposit of its instrument of ratification or accession, or at a later date, inform the Ministry of Foreign Affairs of the Netherlands of the following –
a)   the designation of authorities, pursuant to Articles 2 and 18,
b)   the designation of the authority competent to complete the certificate pursuant to Article 6,
c)   the designation of the authority competent to receive documents transmitted by consular channels, pursuant to Article 9.

Each Contracting State shall similarly inform the Ministry, where appropriate, of –
a)   opposition to the use of methods of transmission pursuant to Articles 8 and 10,
b)   declarations pursuant to the second paragraph of Article 15 and the third paragraph of Article 16,
c)   all modifications of the above designations, oppositions and declarations.


## Article 22

Where Parties to the present Convention are also Parties to one or both of the Conventions on civil procedure signed at The Hague on 17th July 1905, and on 1st March 1954, this Convention shall replace as between them Articles 1 to 7 of the earlier Conventions.


## Article 23

The present Convention shall not affect the application of Article 23 of the Convention on civil procedure signed at The Hague on 17th July 1905, or of Article 24 of the Convention on civil procedure signed at The Hague on 1st March 1954.
These Articles shall, however, apply only if methods of communication, identical to those provided for in these Conventions, are used.


## Article 24

Supplementary agreements between Parties to the Conventions of 1905 and 1954 shall be considered as equally applicable to the present Convention, unless the Parties have otherwise agreed.


## Article 25

Without prejudice to the provisions of Articles 22 and 24, the present Convention shall not derogate from Conventions containing provisions on the matters governed by this Convention to which the Contracting States are, or shall become, Parties.


## Article 26

The present Convention shall be open for signature by the States represented at the Tenth Session of the Hague Conference on Private International Law.
It shall be ratified, and the instruments of ratification shall be deposited with the Ministry of Foreign Affairs of the Netherlands.


## Article 27

The present Convention shall enter into force on the sixtieth day after the deposit of the third instrument of ratification referred to in the second paragraph of Article 26.
The Convention shall enter into force for each signatory State which ratifies subsequently on the sixtieth day after the deposit of its instrument of ratification.

Article 28

Any State not represented at the Tenth Session of the Hague Conference on Private International Law may accede to the present Convention after it has entered into force in accordance with the first paragraph of Article 27. The instrument of accession shall be deposited with the Ministry of Foreign Affairs of the Netherlands.

The Convention shall enter into force for such a State in the absence of any objection from a State, which has ratified the Convention before such deposit, notified to the Ministry of Foreign Affairs of the Netherlands within a period of six months after the date on which the said Ministry has notified it of such accession.

In the absence of any such objection, the Convention shall enter into force for the acceding State on the first day of the month following the expiration of the last of the periods referred to in the preceding paragraph.

Article 29

Any State may, at the time of signature, ratification or accession, declare that the present Convention shall extend to all the territories for the international relations of which it is responsible, or to one or more of them. Such a declaration shall take effect on the date of entry into force of the Convention for the State concerned.

At any time thereafter, such extensions shall be notified to the Ministry of Foreign Affairs of the Netherlands.

The Convention shall enter into force for the territories mentioned in such an extension on the sixtieth day after the notification referred to in the preceding paragraph.

Article 30

The present Convention shall remain in force for five years from the date of its entry into force in accordance with the first paragraph of Article 27, even for States which have ratified it or acceded to it subsequently.

If there has been no denunciation, it shall be renewed tacitly every five years.

Any denunciation shall be notified to the Ministry of Foreign Affairs of the Netherlands at least six months before the end of the five year period.

It may be limited to certain of the territories to which the Convention applies.

The denunciation shall have effect only as regards the State which has notified it. The Convention shall remain in force for the other Contracting States.

Article 31

The Ministry of Foreign Affairs of the Netherlands shall give notice to the States referred to in Article 26, and to the States which have acceded in accordance with Article 28, of the following –

a)    the signatures and ratifications referred to in Article 26;
b)    the date on which the present Convention enters into force in accordance with the first paragraph of Article 27;
c)    the accessions referred to in Article 28 and the dates on which they take effect;
d)    the extensions referred to in Article 29 and the dates on which they take effect;
e)    the designations, oppositions and declarations referred to in Article 21;
f)    the denunciations referred to in the third paragraph of Article 30.

In witness whereof the undersigned, being duly authorised thereto, have signed the present Convention.

Done at The Hague, on the 15th day of November, 1965, in the English and French languages, both texts being equally authentic, in a single copy which shall be deposited in the archives of the Government of the Netherlands, and of which a certified copy shall be sent, through the diplomatic

channel, to each of the States represented at the Tenth Session of the Hague Conference on Private
International Law.

EXHIBIT 6

## Sean Carnathan

| | |
|---|---|
| **From:** | SB <sbaner@gmail.com> |
| **Sent:** | Wednesday, October 10, 2012 12:42 PM |
| **To:** | Dehmel, Paul R. |
| **Cc:** | Sean Carnathan; Bernard Posner |
| **Subject:** | Re: your email. |
| | |
| **Importance:** | High |
| | |
| **Follow Up Flag:** | Follow up |
| **Flag Status:** | Flagged |

Mr Dehmel,

I have tried my best to be cooperative with you and Akshita had sent you an email in September requesting the new deposition date via video/telephone etc. since I live in India. I even accepted the subpoena in CT when I was visiting over the summer and had adjusted my schedule to comply with the deposition date. However, since you canceled the deposition scheduled for 9/26 and postponed it indefinitely, I had not spent anytime on document production. The subpoena does not mention October 12 as any deadline.

However, in order to be cooperative, we can discuss the dates for document production since it is not very convenient for me to do this in India and I am very busy with my work. I am the sole provider for the family and I cannot adjust my schedule as your dates move around. I need to understand from you the next steps on deposition via video, etc. and then I can produce documents in advance of that date. Also, if you do not need the deposition (and can use the earlier deposition done in August 2011 for almost 8 hrs), let us know.

Hope that helps. Again, I am ready to cooperate with you on document production, etc. You need to understand that I live and work in India (as Mr. Carnathan has been aware for over 3 years) and I had changed my schedule to accomodate the deposition date in September and I do not have any plans now of being back in CT at least for the rest of the year. My request would be to accomodate my schedule and I am happy to cooperate with you in any way.
Thx

Best wishes,

Sumanta Banerjee
Sumanta Banerjee
Mobile: 203 501 0797
Tel: 203 533 4342
---------------------------------------------
Sent from my Verizon Wireless BlackBerry

**From:** "Dehmel, Paul R." <PDehmel@sgrlaw.com>
**Date:** Tue, 9 Oct 2012 16:58:17 -0400
**To:** 'sbaner@gmail.com'<sbaner@gmail.com>
**Cc:** 'scarnathan@ocmlaw.net'<scarnathan@ocmlaw.net>; 'bposner@ocmlaw.net'<bposner@ocmlaw.net>;
'Akshita Gandhi'<gandhibanerjee@gmail.com>
**Subject:** RE: Subpoena to Mr. Banerjee

Mr. Banerjee:

Since writing to you two weeks ago, we have not received a reply of any kind.  Kindly advise if you are prepared to produce the documents requested in the subpoena we issued to you by this Friday.

Thank you in advance.

Kind regards,
Paul

PAUL R. DEHMEL | **Attorney at Law**

212-907-9733 *phone*
212-907-9833 *fax*
*www.sgrlaw.com*
*pdehmel@sgrlaw.com*

250 Park Avenue
Suite 1900
New York, New York 10177

 SMITH, GAMBRELL & RUSSELL, LLP

**From:** Dehmel, Paul R. [mailto:PDehmel@sgrlaw.com]
**Sent:** Tuesday, September 25, 2012 4:37 PM
**To:** 'Akshita Gandhi'
**Cc:** scarnathan@ocmlaw.net; sbaner@gmail.com; bposner@ocmlaw.net
**Subject:** RE: Subpoena to Mr. Banerjee

Mrs. Banerjee (and Mr. Banerjee):

Thank you for your email.  Although we are open to discussing deposition timing, before we can agree to anything, we will need to better understand Mr. Banerjee's travel obligations.  Before getting into such issues, however, for the moment we would like to focus on the production of documents.  We appreciate the offer to make a production in advance of any deposition and would like to proceed.  As we are up against various deadlines, it is important that we receive Mr. Banerjee's documents in the near-term.  The subpoena and its predecessor have been in your hands for some time, and since Mr. Banerjee was prepared to appear today (September 25), we request that he provide us with all responsive documents by October 12.

Once we are in receipt of the documents, we will be better able to assess the need for and logistics of any deposition.

Thank you in advance for your cooperation and we look forward to receiving the documentation.  Please let us know if you have any questions.

Kind regards,
Paul


PAUL R. DEHMEL | **Attorney at Law**

212-907-9733 *phone*
212-907-9833 *fax*
*www.sgrlaw.com*
*pdehmel@sgrlaw.com*

250 Park Avenue
Suite 1900
New York, New York 10177

 SMITH, GAMBRELL & RUSSELL, LLP

**From:** Akshita Gandhi [mailto:gandhibanerjee@gmail.com]
**Sent:** Tuesday, September 25, 2012 5:05 AM
**To:** Dehmel, Paul R.
**Cc:** scarnathan@ocmlaw.net; sbaner@gmail.com; bposner@ocmlaw.net; gandhibanerjee@gmail.com
**Subject:** Re: Read: RE: Subpoena to Mr. Banerjee

Mr. Dehmel,

I am writing on behalf of Mr. Banerjee since he has been traveling and has not been easily reachable. Mr. Banerjee was ready to appear in person for deposition on the initially scheduled date of September 25, 2012 and accepted the subpoena while he was visiting CT for the majority of the summer.

As you are aware, Mr.Banerjee, works in India and is an Indian resident and has been living and working in India for the last three years.   He had a very hectic travel schedule that he postponed in order to accommodate the deposition on September 25th, however, after you sent the initial communication in late August that you were cancelling and postponing the deposition date--Mr. Banerjee restarted his travel schedule. He could never accommodate anything in October or any other time this year since he had to be in India for his work and he is expected to remain here at least into the New Year.

However in order to be accommodating, he would be more than happy to cooperate with you regarding document production and also can make himself available on video/skype or via phone for deposition. As you are aware, there was an extensive deposition taken last year and you maybe able to use that or supplement that deposition. Mr. Banerjee stands ready to cooperate with you in any way but he does not expect to travel to CT at least for the rest of this year.

We trust you understand and we can cooperate with you on both document production and a phone/video deposition.

Best regards,

Akshita Banerjee

IRS Circular 230 Disclosure:
To ensure compliance with requirements imposed by the IRS, we inform you that any U.S. federal tax advice contained in this communication (including any attachments) is not intended or written to be used, and cannot be used, for the purpose of (i) avoiding penalties under the Internal Revenue Code or (ii) promoting, marketing or recommending to another party any transaction or matter addressed herein.

Confidentiality Notice
This message is being sent by or on behalf of a lawyer. It is intended exclusively for the individual or entity to which it is addressed. This communication may contain information that is proprietary, privileged or confidential or otherwise legally exempt from disclosure. If you are not the named addressee, you are not authorized to read, print, retain, copy or disseminate this message or any part of it. If you have received this message in error, please notify the sender immediately by e-mail and delete all copies of the message.

IRS Circular 230 Disclosure:
To ensure compliance with requirements imposed by the IRS, we inform you that any U.S. federal tax advice contained in this communication (including any attachments) is not intended or written to be used, and cannot be used, for the purpose of (i) avoiding penalties under the Internal Revenue Code or (ii) promoting, marketing or recommending to another party any transaction or matter addressed herein.


Confidentiality Notice
This message is being sent by or on behalf of a lawyer. It is intended exclusively for the individual or entity to which it is addressed. This communication may contain information that is proprietary, privileged or confidential or otherwise legally exempt from disclosure. If you are not the named addressee, you are not authorized to read, print, retain, copy or disseminate this message or any part of it. If you have received this message in error, please notify the sender immediately by e-mail and delete all copies of the message.

Volume 1, Pages 1-195

Exhibits: 1-30

UNITED STATES DISTRICT COURT

DISTRICT OF MASSACHUSETTS

- - - - - - - - - - - - - - - - - - - - - - - - - - - -

TUCKERBROOK ALTERNATIVE

INVESTMENTS, LP,

               Plaintiff,

vs.                        Case No. 09-CV-11672-WGY

SUMANTA BANERJEE,

               Defendant

- - - - - - - - - - - - - - - - - - - - - - - - - - - -

VIDEOTAPED DEPOSITION OF SUMANTA BANERJEE

Thursday, July 21, 2011, 10:08 a.m.

Gelb & Gelb LLP

84 State Street

Boston, Massachusetts 02109

- - - - - - -Reporter:  Alan H. Brock, RDR, CRR- - - - - - -

abrock@fabreporters.com   www.fabreporters.com

Farmer Arsenault Brock LLC

50 Congress Street, Suite 415

Boston, Massachusetts 02109

617.728.4404   fax 617.728.4403

**2**

1  APPEARANCES:
2    O'Connor, Carnathan and Mack LLC
3    David B. Mack, Esq.
4    Landmark One
5    1 Van de Graaff Drive, Suite 104
6    Burlington, Massachusetts 01803
7    781.359.9000  fax: 781.359.9001
8    dmack@ocmlaw.net
9    for Plaintiff
10
11    Liddle & Robinson, L.L.P.
12    Marc A. Susswein, Esq.
13    800 Third Avenue
14    New York, New York 10022
15    212.687.8500  fax: 212.687.1505
16    msusswein@liddlerobinson.com
17    for Defendant
18
19
20  ALSO PRESENT:
21    John Hassett
22    Akshita Banerjee
23    Michael Loiurio, Videographer
24

**3**

1              I N D E X
2
3            EXAMINATIONS
4  SUMANTA BANERJEE
5      MR. MACK                    8
6          EXHIBITS MARKED
7  Exhibit 1    settlement agreement    6
8  Exhibit 2    agreement, execution    6
9              version
10  Exhibit 3    limited partnership      6
11              agreement
12  Exhibit 4    letter, Hassett to      6
13              Banerjee, March 25, 2008
14  Exhibit 5    document, "Action Required  6
15              by March 31, 2008
16  Exhibit 6    verified complaint      6
17  Exhibit 7    letter, Seaman to "Dear  6
18              Sirs," April 25, 2008
19  Exhibit 8    Answer and counterclaims  6
20              of Defendant Sumanta
21              Banerjee
22
23
24

**4**

1  Exhibit 9    email, steering committee  6
2              of Debevoise-represented
3              limited partners to John
4              Hassett, April 30, 2008
5  Exhibit 10    letter, Klugman to "Dear  6
6              Sirs," July 9, 2003
7  Exhibit 11    release and            7
8              non-disparagement
9              agreement
10  Exhibit 12    plaintiffs' original      7
11              complaint
12  Exhibit 13    two emails              44
13  Exhibit 14    affidavit of Sumanta    58
14              Banerjee
15  Exhibit 15    email string            62
16  Exhibit 16    email                  67
17  Exhibit 17    email string            73
18  Exhibit 18    email string            94
19  Exhibit 19    document, "Tuckerbrook  132
20              Founder Exits After
21              Dispute"
22  Exhibit 20    email chain            134
23  Exhibit 21    email and attachment    139
24  Exhibit 22    email                  149

**5**

1  Exhibit 23    email string            157
2  Exhibit 24    email and attachment    164
3  Exhibit 25    document, "Tuckerbrook,  170
4              Banerjee Settle Dispute"
5  Exhibit 26    email string            174
6  Exhibit 27    handwritten notes        174
7  Exhibit 28    email string            187
8  Exhibit 29    email string            188
9
10
11
12
13
14
15
16  Exhibits returned to Attorney Mack
17
18
19
20
21
22
23
24

FARMER ARSENAULT BROCK LLC

Videotaped Deposition of Sumanta Banerjee - Vol. 1 - 7/21/2011

3

**6**

1    July 21, 2011    10:08 a.m.
2    P R O C E E D I N G S
3        (Exhibit 1, settlement agreement, marked
4    for identification.)
5        (Exhibit 2, agreement, execution
6    version, marked for identification.)
7        (Exhibit 3, limited partnership
8    agreement, marked for identification.)
9        (Exhibit 4, letter, Hassett to Banerjee,
10    March 25, 2008, marked for identification.)
11        (Exhibit 5, document, "Action Required
12    by March 31, 2008," marked for identification.)
13        (Exhibit 6, verified complaint, marked
14    for identification.)
15        (Exhibit 7, letter, Seaman to "Dear
16    Sirs, April 25, 2008," marked for identification.)
17        (Exhibit 8, Answer and counterclaims of
18    Defendant Sumanta Banerjee, marked for
19    identification.)
20        (Exhibit 9, email, steering committee of
21    Debevoise-represented limited partners to John
22    Hassett, April 30, 2008, marked for identification.)
23        (Exhibit 10, letter, Klugman to "Dear
24    Sirs," July 9, 2003, marked for identification.)

**7**

1        (Exhibit 11, release and
2    non-disparagement agreement, marked for
3    identification.)
4        (Exhibit 12, plaintiffs' original
5    complaint, marked for identification.)
6        THE VIDEOGRAPHER:  We are now recording
7    and on the record.  My name is Michael Loiurio.  I'm
8    a legal video specialist for National Video
9    Reporters, Inc.  Our business address is 7 Cedar
10    Drive, Woburn, Mass. 01801.  Today is July 21st,
11    2011, and the time is 10:08.
12        This is the deposition of Sumanta
13    Banerjee in the matter of Tuckerbrook Alternative
14    Investments, LP versus Sumanta Banerjee, in the U.S.
15    District Court, District of Massachusetts,
16    09-CV-11672-WGY.
17        This deposition is being taken at 84
18    State Street in Boston, Massachusetts, on behalf of
19    the plaintiff.  The court reporter is Alan Brock, of
20    Farmer Arsenault Brock LLC.
21        Counsel will state their appearances,
22    and the court reporter will administer the oath.
23        MR. MACK:  David Mack, for the
24    plaintiff.

**8**

1        MR. SUSSWEIN:  Marc Susswein, for
2    Mr. Banerjee.
3        SUMANTA BANERJEE, Sworn
4        EXAMINATION
5    BY MR. MACK:
6    Q.  Good morning, Mr. Banerjee.
7    A.  Good morning.
8    Q.  Please state your name for the record and
9    spell your name, please.
10    A.  Sumanta Banerjee.  That's S-u-m-a-n-t-a and
11    Banerjee, that's B-a-n-e-r-j-e-e.
12    Q.  And where do you reside?
13    A.  I reside in India, but I also have a
14    residence in Connecticut.
15    Q.  And what's the address of the house in
16    Connecticut?
17    A.  23 Soundview Farm Road, Weston,
18    Connecticut.
19    Q.  And the address in India?
20    A.  It's 142B, 58/1, Baulygunji Circular Road,
21    Calcutta 70019.  I also have another residence in
22    India, which is in Delhi.
23    Q.  Which is in where?
24    A.  Delhi, which is where I reside currently in

**9**

1    India.
2    Q.  Is that where you intend to be residing for
3    the foreseeable future?
4    A.  It's kind of a shuttling-back-and-forth
5    situation.
6    Q.  Are you employed currently?
7    A.  I am an adviser to a big conglomerate in
8    India.
9    Q.  And what's the name of that conglomerate?
10    A.  It's Shristi and Srei Group.
11    Q.  Can you spell that for?
12    A.  It's S-h-r-i-s-t-i and S-r-e-i.
13    Q.  And what does that company do?
14    A.  The company is in various businesses -- in
15    real estate, infrastructure, finance/investment
16    banking, asset management.  It's also in security,
17    homeland security, power assets, telecommunications.
18    You name it; they're pretty much on everything.
19    Q.  And you said you're an adviser to, I'm just
20    going to call it S&S?
21    A.  Yeah.  Well, it's to the Srei group of
22    companies.
23    Q.  And what is your particular role as an
24    adviser?

10

1    A. My role is to help them in acquisitions of
2  various businesses and to generally find investments
3  also for them around the world.
4    Q. How long have you been doing this for them?
5    A. Approximately two years.
6    Q. So we're talking about July of '09?
7    A. Well, I started with them officially, I
8  think it was right round the end of August, early
9  September.
10    Q. Of 2009?
11    A. Yeah.
12        MR. HASSETT:  Sumanta, how are you?
13        THE WITNESS:  Good.  How are you doing,
14  John?  Good to see you.
15        MR. MACK:  John Hassett.  He's the
16  president of Tuckerbrook Alternative Investments.
17    Q. Mr. Banerjee, has your role with Shristi
18  and Srei been the same in terms of the amount of
19  work you've done for them for the last two,
20  approximately, years?
21    A. Yes.
22    Q. And are you working for them full-time?
23    A. Yeah.
24    Q. And is there a particular area that you

11

1  focus in in terms of the type of businesses you are
2  trying to identify for the company?
3    A. It's anything and everything.  Any
4  businesses that they're in.
5    Q. Have you in fact located targets for that
6  company?
7    A. Uh-huh.
8    Q. Yes?
9    A. Yes.
10    Q. And how many, approximately?
11    A. I don't know.  Maybe over 15.
12    Q. Have they all closed?
13    A. No, not all.
14    Q. Approximately how many of the 15?
15    A. A couple, I would say.
16    Q. How did you end up getting that job?  Did
17  you have somebody introduce you to the company, or
18  did you do a blind resume, or something else?
19    A. It's an old college friend who is part of
20  the family that sponsors the group of companies, and
21  I grew up with him in India.
22    Q. There is a particular company within that
23  conglomerate that you are advising?
24    A. It is, as I said, both of them, the Shristi

12

1  and Srei Group.  It's all in one big conglomerate.
2  It could be any and all of their businesses.
3    Q. And how are you -- how's your compensation
4  derived, in terms of do you get a percentage of the
5  deal, are you salary, et cetera?
6    A. Percentage of the deal and then as a
7  retainer.  As I said to you, I'm not an employee of
8  the firm; I'm an adviser.
9    Q. What's your understanding as to -- what's
10  your understanding as to the reason why you're not
11  an employee and that you're an adviser?
12        MR. SUSSWEIN:  Objection.  Calls for
13  speculation.
14    Q. What's your understanding?
15    A. I have no idea.  I mean, it was sort of an
16  understanding.  I was an employee at one point.  It
17  was decided that I should advise all the group, as
18  opposed to just one company.  So it's not easy to be
19  an employee of all the companies.  So it's better to
20  be an adviser from that standpoint.  So they needed
21  me for all the companies, as opposed to one.
22    Q. So prior to you becoming an adviser, you
23  were an employee of this company for a period of
24  time?

13

1    A. Yeah.
2    Q. How long?
3    A. About a year or so.
4    Q. So when did you -- was that within that
5  August-'09-to-present period?
6    A. Yes.
7    Q. So you've been an adviser for about half
8  the time and an employee for half the time?
9    A. Yeah, I'd say so, roughly.  I don't recall
10  exactly the dates, but....
11    Q. Now, you understand that you are here today
12  being deposed in conjunction with a settlement you
13  reached with Tuckerbrook in this action?
14    A. Correct.
15    Q. And let me show you what's been marked as
16  Exhibit 1.
17    A. Okay.
18    Q. Do you recognize that document?
19        MR. SUSSWEIN:  Do you want to take a
20  moment and review that document?
21        THE WITNESS:  Sure.
22        (Pause.)
23        MR. SUSSWEIN:  Will you be marking a
24  fully executed copy of this document as part of this

USPS.com® - Track & Confirm                                                                      Page 1 of 1



Search USPS.com or Track Packages

Quick Tools                    Ship a Package          Send Mail          Manage Your Mail          Shop          Business Solutions

# Track & Confirm

GET EMAIL UPDATES          PRINT DETAILS

| YOUR LABEL NUMBER | SERVICE | STATUS OF YOUR ITEM | DATE & TIME | LOCATION | FEATURES |
|---|---|---|---|---|---|
| 70101670000170428938 | First-Class Mail® | Processed through USPS Sort Facility | October 09, 2012, 5:37 am | NORTH READING, MA 01889 | Expected Delivery By: September 19, 2012 Certified Mail™ Return Receipt |
| | | Unclaimed | October 05, 2012, 3:30 pm | WESTON, CT | |
| | | Notice Left | September 20, 2012, 2:28 pm | WESTON, CT 06883 | |
| | | Arrival at Unit | September 20, 2012, 6:58 am | WESTPORT, CT 06880 | |
| | | Depart USPS Sort Facility | September 20, 2012 | STAMFORD, CT 06910 | |
| | | Processed at USPS Origin Sort Facility | September 19, 2012, 11:08 pm | STAMFORD, CT 06910 | |
| | | Dispatched to Sort Facility | September 17, 2012, 5:30 pm | WILMINGTON, MA 01887 | |
| | | Acceptance | September 17, 2012, 4:41 pm | WILMINGTON, MA 01887 | |

### Check on Another Item

What's your label (or receipt) number?

Find

LEGAL                          ON USPS.COM                    ON ABOUT.USPS.COM              OTHER USPS SITES
Privacy Policy ›               Government Services ›          About USPS Home ›             Business Customer Gateway ›
Terms of Use ›                 Buy Stamps & Shop ›            Newsroom ›                    Postal Inspectors ›
FOIA ›                         Print a Label with Postage ›   Mail Service Updates ›        Inspector General ›
No FEAR Act EEO Data ›         Customer Service ›             Forms & Publications ›        Postal Explorer ›
                               Site Index ›                   Careers ›

Copyright© 2012 USPS. All Rights Reserved.

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| TUCKERBROOK ALTERNATIVE INVESTMENTS, LP, | ) ) ) | |
| Plaintiff | ) ) | |
| v. | ) ) | CASE NO. 12-CV-11643-JCB |
| SUMANTA BANERJEE, | ) ) ) | |
| Defendant | ) ) ) | |

**AFFIDAVIT OF SEAN T. CARNATHAN IN SUPPORT OF
PLAINTIFF TUCKERBROOK ALTERNATIVE INVESTMENTS LP'S
MOTION TO DEEM SERVICE OF PROCESS EFFECTUATED**

I, Sean T. Carnathan, under oath, state as follows:

1.      I am lead counsel to Plaintiff Tuckerbrook Alternative Investments, LP

("Tuckerbrook") in connection with this Action against Defendant Sumanta Banerjee

("Banerjee"). I am over 18 years of age and make these statements based upon my own

personal knowledge, information and belief. Where based on information and belief, I

believe these statements to be true.

2.      Attached hereto as Exhibit A is a true copy of a chain of email

correspondence in which I twice forwarded the summons and complaint to Sumanta

Banerjee in connection with this matter.

3.      Attached hereto as Exhibit B is a print out of the United States Postal

Service Report from my Firm's effort to serve Mr. Banerjee by certified mail at his

residence in Connecticut. The package we sent included the summons and complaint,

copies of which are included in Exhibit A hereto.

4.      Attached hereto as <u>Exhibit C</u> is a true copy of an email from Sumanta Banerjee responding to Tuckerbrook's Connecticut counsel, sent by Mr. Banerjee approximately 20 minutes before I sent the last email in <u>Exhibit A</u> to him.

5.      Mr. Banerjee never responded to either of my emails to him.

SIGNED UNDER THE PAINS AND PENALTIES OF PERJURY THIS 26th DAY OF OCTOBER, 2012.

/s/ Sean T. Carnathan
Sean T. Carnathan (BBO #636889)

2

EXHIBIT 7

# Letters Blogatory

*The Blog of International Judicial Assistance | By Ted Folkman of Murphy & King*

Home    About ▾    Special Coverage ▾    IJA Brigade    Resources    Contact

## Case of the Day: Tuckerbrook Alternative Investments v. Banerjee

by Ted Folkman on May 25, 2011 in Hague Service Convention

The case of the day, *Tuckerbrook Alternative Investments, LP v. Banerjee* (D. Mass. 2010), involves an attempt to serve process in India. **Tuckerbrook** was a registered investment adviser. Banerjee, a resident of India but (according to **Tuckerbrook**) a US citizen, was a portfolio manager for **Tuckerbrook**. The parties had a dispute in 2008, which they settled. **Tuckerbrook** then sued Banerjee for breach of the settlement agreement.

**Tuckerbrook**'s first attempt to serve process on Banerjee did not go so well. According to the return of service: "Since Mr. Sumanta Banerjee was not available," the process server "delivered the documents … to the letter box of Mr. S.K. Banerjee father of Mr. Sumanta Banerjee." (India has objected to service under Article 10(c), so it's not clear why **Tuckerbrook** thought this would work. Does Indian law permit alternate methods of service for documents coming from abroad, such that service would be permissible under Article 19?) On the basis of this return, **Tuckerbrook** requested entry of a default and then a default judgment. The clerk entered the default, but Banerjee (the defendant, not his father) then filed a motion to vacate the default, asserting that he had not been served with the summons and complaint. Judge Young granted the motion to vacate.

**Tuckerbrook** then filed a "motion to deem service of process effectuated," or in the alternative, to authorize service by e-mail. The motion asserted that **Tuckerbrook** had taken steps to serve process under the Hague Service Convention, though the motion does not spell out the action **Tuckerbrook** took. Presumably, **Tuckerbrook** sent a letter of request to the Indian Central Authority, which had not yet been executed.

The judge granted the motion without waiting for a response from Banerjee (the ruling came nine days after the motion was filed, and under the local rule, adverse parties ordinarily have 14 days to respond unless the motion "indicates in writing on the face of the motion that ex parte consideration is requested.") In my view, the judge should have given Banerjee a chance to respond, as he had appeared in the case.

After Banerjee complained that he still had not been served, the judge clarified his earlier order and ordered **Tuckerbrook** to serve another copy of the complaint (but not the summons) to Banerjee. This order seems to presume that Banerjee had already been served, as otherwise service of the summons would also be necessary, but if Banerjee *had* already been served, then why was another copy of the complaint required? Moreover, India has objected to service of judicial documents via the postal channel, and Banerjee refused delivery of the package. What a mess!

## Subscribe By Email

To subscribe by email, please enter your email address. You'll receive a confirmation email shortly.

Email

[ Subscribe ]

## Other Ways To Connect

Subscribe to the Letters Blogatory RSS feed, get Letters Blogatory for your Kindle, or connect on Twitter or Linkedin.

## Search

Search…    🔍

## Tags

1782 arbitration Argentina Australia Belfast Project BIT blocking statute Brazil Canada China Ecuador Email FAA France Frolic and Detour FSIA Germany Greece Hague Apostille Convention Hague Evidence Convention Hague Service Convention Hong Kong India Inter-American Convention Iran Israel Japan Lago Agrio Letter Rogatory meta Mexico MLAT Netherlands New York Convention Philippines prejudgment remedies Recognition and Enforcement Russia service by mail subpoena Sweden Switzerland Taiwan UK Vietnam

In any event, after further proceedings, the court entered a default judgment, and Banerjee moved to vacate it and, strangely and (for his service of process claims) fatally, also moved to dismiss. The motion to dismiss asserted several affirmative defenses, but it did not assert the defense of insufficient service of process.

The judge vacated the default judgment, but he indicated that Banerjee would not be permitted to contest service of process any further. While the judge was troubled by the apparent insufficiency of the service of process in the case, he held that under Rule 12(h), Banerjee's failure to include the defense of insufficient service of process in the motion to dismiss waived the defense. This is entirely correct as a matter of federal civil procedure.

In short, **Tuckerbrook** was lucky. Had Banerjee not omitted the defense from his motion, I think the defense of insufficient service of process would have held a lot of water.

⤳ Tweet    𝐹 Recommend    👍 +1

🔖 **Hague Service Convention**, India

‹ CTB v. Twitter again          Motions to "Validate" Questionable Service Of Process ›

*Trackbacks/Pingbacks*

Motions to "Validate" Questionable Service Of Process « Letters Blogatory - May 25, 2011
[...] a couple of recent cases of the day (Tuckerbrook v. Banerjee and Davoyan v. Turkey), plaintiffs who had reason to question whether their efforts to effect [...]

*Leave a Reply*

Name (required)

Email (will not be published) (required)

Website

Submit Comment

☐ Add me to the Letters Blogatory mailing list!

*Letters Blogatory © 2011-2013 Theodore J. Folkman and contributors.
Licensed under the CC BY-SA 3.0 license.*

Terms of Use • Privacy • Opt-out • Status