EXHIBIT 1

CASE NO.

v.

Defendant.

)

COMPLAINT

## INTRODUCTION

In May 2009, plaintiff Tuckerbrook Alternative Investments, LP

("Tuckerbrook") hired Defendant Sumanta Banerjee ("Banerjee") to manage the investments of two of Tuckerbrook's investment hedge funds, the Global Distressed Fund ("GDF") and the

John Special Situations Fund ("JSSF") (collectively, the "Funds").

2.    Several months thereafter, Banerjee breached his duties of loyalty to the confidentiality clauses of his employment agreement by, among other things, (i) failing to manage the Funds and instead using Tuckerbrook's resources to start his own hedge fund, (ii) misappropriating and using the proprietary and work product of Tuckerbrook to his competitive and personal benefit, (iii) soliciting Tuckerbrook's confidential information, (iv) misappropriating Tuckerbrook's clients to his own Tuckerbrook's legal, analytical, performance and marketing materials (v) disparaging Tuckerbrook clients and others in the employ and (vi) encouraging and enabling other Tuckerbrook employees to leave their employ and steal Tuckerbrook's intellectual property.

3.    When Tuckerbrook discovered Banerjee's actions, and made their demands upon him

the undefined [illegible] United [illegible]

Massive Investors In a [illegible] No. [illegible] 908 PBS [illegible]

Market.

4.     On September 24, 2010, the parties entered into a settlement agreement during the lawsuit. The terms of the [illegible] confidential that [illegible] such that, among other things, the Beatrice would not compete with Tuckerbrook [illegible] interfere with Tuckerbrook by [illegible] or disparaging [illegible] Tuckerbrook.

5.     In the course of discovery in a separate proceeding filed after the settlement, Aakek & Williams Ltd. et al. v. Tuckerbrook Alternative Investments L.P. et al., **Case** No. 4, 10-CV-3501, pending in the United States District Court for the Southern District of Texas (the "Aakek Lawsuit"), Tuckerbrook learned of overwhelming evidence of Beatrice's numerous breaches of the settlement by, inter alia, sharing the terms of the confidential agreement with the plaintiff in the Aakek Lawsuit, interfering with Tuckerbrook's relationships, claiming Tuckerbrook's work product as his own, and disparaging Tuckerbrook and its business.

## PARTIES

6.     Plaintiff Tuckerbrook Alternative Investments, LP, is a limited partnership organized under the laws of the State of Delaware, and has its principal place of business at the America's Cup Building, 30 Doaks Lane, Marblehead, Massachusetts 01945.

7.     Defendant Sumanta Banerjee, an individual, believed to be a dual citizen and American citizen who resides in Weston, Connecticut and India.

2

... ... ... ... ...

... ... ... ... ... ... **223A,**

Section 5.

9.  This Court has subject matter jurisdiction over this action based upon diversity of citizenship pursuant to 28 U.S.C. § 1332(a)(1) and the fact that the amount in controversy exceeds $75,000.

10.  Venue in the District of Massachusetts is appropriate pursuant to 28 U.S.C. § 1391(a) because a substantial part of the events or omissions giving rise to this claim occurred in Massachusetts and/or a substantial part of property that is the subject of the action is situated in Massachusetts.

## STATEMENT OF FACTS

11.  At all relevant times, Tuckerbrook was a registered investment adviser regulated by the Securities and Exchange Commission and manages hedge funds and private equity multi-manager-funds. Tuckerbrook's clients included university endowments, foundations, large and small wealth managers, private banks, fund-of-funds, and other institutions.

12.  Founded in 2003, Tuckerbrook employed 11 employees and maintains offices in or Marblehead, Massachusetts and Stamford, Connecticut.

13.  Because of the regulated and highly competitive nature of the investment management business, entities such as Tuckerbrook must protect their confidential business information, including, for example, information regarding the firm's fund-marketing and investment strategies and programs, its business plans, accounting details, and its personnel

3

14.     Tuckerbrook takes precautions to protect its proprietary information by limiting its dissemination within the firm to, for example, those individuals at senior executives of its offices and by requiring its employees, such as Mr. Banerjee, to sign employment agreements containing confidentiality, non-competition, and non-solicitation provisions.

15.     The development and enhancement of its investment programs and the development of client goodwill were a critical factor in the success of Tuckerbrook's business since its inception, and at great effort and expense, Tuckerbrook developed and successfully marketed several investment programs, including the distressed investments, for which Banerjee was a portfolio manager. Clients have included university endowments, foundations, corporate pension plans, wealth managers and fund-of-funds. Tuckerbrook also established and cultivated programs and relationships, and it relied on these programs and relationships to grow its business.

6.     In May 2006, Tuckerbrook and Banerjee to be a portfolio manager for the

7.     When he commenced work for Tuckerbrook, Banerjee signed an employment agreement obligating him to keep confidential certain information belonging to the firm, and Tuckerbrook's sensitive information, trade secrets, and proprietary competitive changes, and all clients that were disclosed and proprietary and confidential information of

8.     The Employment Agreement also provided that Banerjee would return to Tuckerbrook and confidential information at the time of his termination of employment.

9.     Banerjee was a portfolio manager and worked in connection with Tuckerbrook's

proprietary information regarding the Funds, including investment strategy, marketing plans, partnership structure, compensation methods, and existing and prospective client information (the "Trade Secrets").

20. On March 25, 2008, Tuckerbrook terminated Mr. Banerjee's employment, on the grounds that he breached his Employment Agreement.

21. Tuckerbrook then sought and obtained in Tuckerbrook v. Banerjee I, temporary injunctive relief requiring that Mr. Banerjee abide by the Employment Agreement.

22. Banerjee counterclaimed for, inter alia, wrongful termination.

23. On September 23, 2008, following a day of mediation with Magistrate Hillman conducted in Worcester, Massachusetts, Tuckerbrook and Mr. Banerjee entered into a settlement resolving Tuckerbrook v. Banerjee I.

24. The settlement was memorialized in two ways: a master settlement agreement (the "Master Settlement Agreement") and a memorandum of understanding (MOU) signed by counsel for the District of Massachusetts at Boston that an Corbett, detailed account of the settlement reached during mediation (the "Mediation Settlement"). The Master Settlement and the Mediation Settlement Agreement are referred to collectively herein as the "Settlement").

**25.** The Tuckerbrook Settlement provides that, for a Period commencing on the commencement of one year after the Settlement Date

> directly or indirectly, as a consultant, advisor, employee, partner or in any other capacity or to then work for and on behalf of as a current employee, limited partner of GDF or GSS and will not directly or indirectly be a consultant, employee, owner, member, officer or in any other capacity or fashion work for and/or receive any compensation in any way, whether direct or in cash or in kind, from the GDF or GSS partnerships, their general partners or affiliates as defined herein respectively, that the parties acknowledge that Mr. Banerjee will not interfere with any relations Tuckerbrook has or will have with the same clients or GDF or GSS as they may

5

[illegible line] other alleged losses of [illegible] or other ...

... not reference the foregoing which we reference to here in in the "Settlement Non-competition"

**26.** Further, the Transcribed Settlement provided that the terms of the settlement

were to be kept confidential except that the parties could disclose to the limited partners of the

... [illegible] the Settlement Non-competition Provision

**27.** The Transcribed Settlement provided for the dismissal with prejudice of the

claims and counterclaims in Tuckerbrook v. Banerjee I.

28. As stipulated in the Transcribed Settlement, the Settlement Agreement consisted of

mutual releases by both Banerjee and Tuckabrook

29. Specifically Tuckerbrook released Banerjee from

> any and all claims, including both known and Unknown Claims . . .
> liabilities, causes of action, rights of action and actions, demands,
> suits, proceedings, damages, costs, fees and expenses, and any and
> all claims, demands, and liabilities whatsoever, of every name and
> nature, both at law and in equity, from the beginning of time to the
> Settlement Date, that TB has ever had or ever may have had against
> Banerjee . . . *except that nothing* in the Release is intended to or
> shall relieve Banerjee of their obligations under the settlement as
> reported to the Court.

(emphasis added).

30. Similarly, Banerjee released Tuckerbrook from

> any and all claims, including both known and Unknown Claims . . .
> liabilities, causes of action, rights of action and actions, demands,
> suits, proceedings, damages, costs, fees and expenses, and any and
> all claims, demands, and liabilities whatsoever, of every name and
> nature, both at law and in equity, from the beginning of time to the
> Settlement Date, that Banerjee has ever had or ever may have had
> against TB . . . *except that nothing* in the Release is intended to or
> shall relieve TB of its obligations under the settlement as reported
> to the Court.

6

3. [illegible]

The Parties agree and warrant that they will refrain from making, disseminating, or causing to be made in the future, any derogatory or disparaging comments, whether orally, in writing, or in any other manner or to any news or third parties regarding the other Party or its business practices, its products or services, or practices, or regarding its practices, employees, [illegible]

32. The Settlement Date is September 21, 2010.

33. [illegible]

34. [illegible] provided substantial consideration for the execution of the Settlement, including a non-disclosure agreement, a covenant not to sue, a non-disparagement Settlement Non-competition Provision, the non-interference provision, and the non-disparagement provisions of the settlement, which in each case were bargained for in order to enter into the Settlement.

35. After the date of the Settlement, [illegible] received certain confidential, proprietary and Trade Secret information belonging to and from [illegible] including, but not limited to, [illegible] of confidential client information.

36. [illegible] violated the Settlement, including, but not limited to, the non-solicitation, non-interference and [illegible] provisions of the Settlement by actively soliciting clients of [illegible] in violation of [illegible] obligations as the personal and private and individual servant for [illegible] GNS firm.

37. [illegible] violated the [illegible] prohibition against [illegible] in breach of the terms of the Settlement.

38. [illegible] testified falsely at [illegible], and in his [illegible] deposition in the [illegible] lawsuit that [illegible] revealed to him the confidential nature of the

7

43. Mr. Banerjee's assistance to Mkek in its lawsuit, his continuing disparagement of Tuckerbrook, his breach of his fiduciary obligations under the terms and conditions of the Separation Agreement, his continuing interference with Tuckerbrook limited partners, and his theft of Tuckerbrook's work product and Trade Secrets have caused and continue to cause significant injury and damage to Tuckerbrook and the GSS fund.

## COUNT I

### (Breach of Contract)

44. Plaintiff realleges and incorporates, as if fully set forth herein, the foregoing paragraphs set forth fully set forth herein.

45. The parties entered into a valid, binding and enforceable agreement, to wit: under the Settlement.

... ... ... ...

... ... ... ... **23,** ...

... ... ... ...

... ... ... ... ... ... ...

- ... ... ...

- interfered with Tuckerbrook's client and customer relationship; and

- compete with Tuckerbrook ... to make it more ... ...
  Tuckerbrook, including its offering to provide an actually secondary
  fund to ... ... Short ... Tuckerbrook ... ...

37. Mr. Emerick's mismanagement and interference has led to and/or resulted in,
... ... ... ... ... ... ... ...
... substantial damages.

### COUNT ...

**(Tortious Interference with Contract and/or Advantageous Business Relations)**

... Plaintiff ... and re-alleges the allegations of the ...
foregoing paragraphs as if fully set forth herein.

... Plaintiff had contractual relationships, business and advantageous
relationships, clients and/or prospective clients and its partners on the basis of the Settlement Date.

... At the time referenced herein, there was a danger that ... had a
contractual and/or advantageous business relationships were interfered with by Tuckerbrook's
relationship by the ... ...
... assisting Tuckerbrook's partner and also an agent of Tuckerbrook.

**52.** Emerick's interference with these contractual and/or
advantageous business relationships is improper.

## COUNT III

### (Misappropriation of Trade Secrets)

54.    Plaintiff realleges and incorporates by reference the allegations set forth in the preceding paragraphs of this Complaint.

**55.**    Tuckerbrook's confidential and proprietary information regarding the Funds, including investment strategy, guidelines, trade flow, financial transactions, market, close partnership structure, compensation methods, and existing and prospective client relationships constitute . . .

**56.**    Tuckerbrook's Trade Secrets are not known outside of Tuckerbrook's business and are known only to employees of Tuckerbrook.

57.    Tuckerbrook expended great effort and money to develop the Trade Secrets.

58.    Tuckerbrook took reasonable steps to protect the confidentiality of its Trade Secrets, including, but not limited to, disclosing the Trade Secrets only to certain of its employees and client relationships under the conditions of confidentiality.

59.    By virtue of his employment with Tuckerbrook, Banerjee learned of Tuckerbrook's Trade Secrets.

60.    The Trade Secrets were and are of great value to Tuckerbrook as its own and the unauthorized disclosure by the defendants . . .

Banerjee that they are his.

... However that ... the ... benefited by improper means ... inter alia, dissemination of Tuckerbrook's trade secrets are ... ... Tuckerbrook's competitors.

**62.** Tuckerbrook has been harmed by Banerjee's misdirection of the Trade Secrets.

### COUNT IV
#### (Violation of MGL Ch. 93A)

63. Plaintiff realleges and incorporates by reference its allegations set forth in the foregoing paragraphs as if fully set forth herein.

64. Banerjee's conduct as described herein constitutes an unfair and deceptive trade practice within the meaning of M.G.L. c. 93A, entitling Tuckerbrook to an award, treble damages and attorney's fees.

### COUNT V

#### (Breach of 2011 Settlement Agreement)

65. Plaintiff realleges and incorporates by reference its allegations set forth in the foregoing paragraphs as if fully set forth herein.

66. On or about June 29, 2011, Tuckerbrook and Banerjee entered into a settlement agreement, a material term of which was that Banerjee would appear for his deposition and testify truthfully.

67. ...

## PRAYERS FOR RELIEF

WHEREFORE, Plaintiff Tuckerbrook prays as follows:

a. Grant Tuckerbrook judgment on each of its claims;

b. Award Tuckerbrook damages, including its actual damages, its consequential and incidental damages, in relation to each Count;

c. Order Banerjee to account to and disgorge to Tuckerbrook all monies Banerjee as part of the Settlement;

d. Order Banerjee to cease and desist from disclosing any and all Tuckerbrook's work product, and trade or business confidential information, to third parties.

e. Order Banerjee to cease and desist from disclosing any and all Tuckerbrook's work product, confidential or business or any of Tuckerbrook's trade secrets;

f. Preliminarily and permanently enjoin Banerjee from further disparagement of Tuckerbrook;

g. Order Banerjee to provide the names of anyone with whom Banerjee has communicated concerning Tuckerbrook or Tuckerbrook's Trade Secret or other work product after September 23, 2008;

12

b.    Order Banerjee to provide the names of anyone to whom he disclosed the confidential terms of the Settlement;

c.    Grant Tuckerbrook such further and other relief as the Court deems just and proper, including costs and attorney's fees, incurred in this matter.

## PLAINTIFF DEMANDS A TRIAL BY JURY ON COUNTS SO TRIABLE.

Respectfully submitted

TUCKERBROOK ALTERNATIVE
INVESTMENTS, LP

By their attorneys,

_Sean T. Carnathan_
Sean T. Carnathan (BBO #636889)

O'Connor Carnathan and Mack LLC
1 Van de Graaff Drive, Suite 104
Burlington, MA 01803
Telephone: (781) 359-9000
Facsimile: (781) 359-9001

September 4, 2012

## CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing and copies will be sent to those indicated as non-registered participants on September 4, 2012.

_Sean T. Carnathan_

4816-5032-6032.

## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| TUCKERBROOK ALTERNATIVE INVESTMENTS, LP, | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) CASE NO.  | | 6 / 2 |
| SUMANTA BANERJEE, | ) ) ) |
| Defendant. | ) ) ) |

## **VERIFIED COMPLAINT**

### **Background**

In May of 2006, Plaintiff Tuckerbrook Alternative Investments L.P. ("Tuckerbrook")
hired Defendant Sumanta Banerjee ("Banerjee") to manage the investments in two of
Tuckerbrook's proprietary hedge funds, the Global Distressed Fund ("GDF") and the Global
Special Situations Fund ("GSS") (collectively, the "Funds"). Soon thereafter, Banerjee violated
the non-competition, intellectual property, and confidentiality clauses of his employment
agreement by, among other things:

- trying to steal the Funds and new funds Tuckerbrook was developing;

- divulging confidential information and work product of Tuckerbrook to its
  competitors and potential employers;

- retaining Tuckerbrook's confidential information after his separation from
  Tuckerbrook;

- claiming as his own Tuckerbrook's legal, analytical, performance and marketing
  materials;

- disparaging Tuckerbrook during and following his employ; and

• encouraging and enabling other Tuckerbrook employees to leave their employ and steal Tuckerbrook's intellectual property.

When Tuckerbrook discovered the foregoing, it filed an action against Banerjee in the United States District Court for the District of Massachusetts, Tuckerbrook Alternative Investments L.P. v. Sumanta Banerjee, C.A. No. 08-10636-PBS ("Tuckerbrook v. Banerjee I"). On September 24, 2008, the parties entered into a settlement agreement ending the lawsuit. The terms of the settlement were confidential, but generally provided, among other things, that Banerjee would not compete with Tuckerbrook in any way or interfere with Tuckerbrook for a year after the date of the settlement, and that Banerjee would not disparage Tuckerbrook.

In the course of discovery in a separate proceeding filed after the settlement, Alkek & Williams Ltd. et al v. Tuckerbrook Alternative Investments L.P. et al., Case No. 4:08-CV-3501, pending in the United States District Court for the Southern District of Texas (the "Alkek Lawsuit"), Tuckerbrook has learned of overwhelming evidence of Banerjee's blatant breaches of the settlement by, inter alia, sharing the terms of the confidential agreement with the plaintiff in the Alkek Lawsuit, interfering with Tuckerbrook's relationships, claiming Tuckerbrook's work product as his own, and disparaging Tuckerbrook and its business.

## PARTIES

1.     Plaintiff, Tuckerbrook Alternative Investments, LP, is a limited partnership organized under the laws of the State of Delaware, and has its principal place of business at the America's Cup Building, 30 Doaks Lane, Marblehead, Massachusetts 01945.

2.     Defendant Sumanta Banerjee, an individual, believed to be an Indian and American citizen who resides in Weston, Connecticut.

2

## JURISDICTION AND VENUE

3.      This Court has personal jurisdiction over Defendants pursuant to M.G.L. c. 223A Section 3.

4.      This Court has subject matter jurisdiction over this action based upon diversity of citizenship pursuant to 28 U.S.C. §1332(a)(1) and the fact that the amount in controversy exceeds $75,000.

5.      Venue in the District of Massachusetts is appropriate pursuant to 28 U.S.C. §1391(a) because a substantial part of the events or omissions giving rise to this claim occurred in Massachusetts and/or a substantial part of property that is the subject of the action is situated in Massachusetts.

## STATEMENT OF FACTS

6.      Tuckerbrook is a registered investment advisor regulated by the Securities and Exchange Commission and manages hedge funds and private equity fund-of-funds. Tuckerbrook's clients include university endowments, foundations, large and small wealth managers, private banks, fund-of-funds, and other institutions.

7.      Founded in 2003, Tuckerbrook currently employs 11 employees. It maintains offices in Marblehead, Massachusetts and Stamford, Connecticut, with its principal place of business in Marblehead.

8.      Because of the regulated and highly competitive nature of the investment management business, entities such as Tuckerbrook must protect their confidential business information, including, for example, information regarding the firm's legal, marketing and investment strategies and programs, its business plans, accounting details, and its personnel

3

information, as well as highly confidential information concerning its clients and prospective clients.

9.     Tuckerbrook takes precautions to protect its proprietary information by limiting its dissemination within the firm by, for example, taking physical security measures at its offices, and by requiring its employees, such as Mr. Banerjee, to sign employment agreements containing confidentiality, non-competition, and non-solicitation provisions.

10.     The development and enhancement of its investment programs and the development of client goodwill are a critical factor in ensuring Tuckerbrook's success. Since its inception, and at great effort and expense, Tuckerbrook has developed and successfully marketed several investment programs, including for distressed investments, for which Banerjee was portfolio manager. Clients have included university endowments, foundations, corporate pension plans, wealth managers and fund-of-funds. Tuckerbrook has established and cultivated its programs and relationships, and it relies on these programs and relationships to grow its business.

11.     In May of 2006, Tuckerbrook hired Banerjee to be a portfolio manager for the Funds.

12.     When he commenced work for Tuckerbrook, Banerjee signed an employment agreement, which contained provisions relating to maintaining the confidentiality of Tuckerbrook's sensitive information, non-solicitation and non-competition clauses, a code of ethics, and an intellectual property ownership clause (the "Employment Agreement").

13.     The Employment Agreement also provided that Banerjee would return all Tuckerbrook material, confidential or not, upon his termination from Tuckerbrook.

4

14.     Banerjee's role as portfolio manager allowed him access to Tuckerbrook's

proprietary information regarding the Funds, including investment strategy, marketing plans,

partnership structure, compensation methods, and existing and prospective client information

(the "Trade Secrets").

15.     On March 25, 2008, Tuckerbrook terminated Mr. Banerjee's employment, on the

grounds that he breached his Employment Agreement.

16.     Tuckerbrook then sought and obtained, in Tuckerbrook v. Banerjee I, temporary

injunctive relief requiring that Mr. Banerjee abide by the Employment Agreement.

17.     Banerjee counterclaimed for, inter alia, wrongful termination.

18.     On September 23, 2008, following a day of mediation with Magistrate Hillman

conducted in Worcester, Massachusetts, Tuckerbrook and Mr. Banerjee entered into a settlement

resolving Tuckerbrook v. Banerjee I.

19.     The settlement was memorialized in two ways:  a written settlement agreement

(the "Written Settlement Agreement") and a transcription in open court in the U.S. District Court

for the District of Massachusetts in Boston of an 11-point, detailed account of the settlement

reached during mediation (the "Transcribed Settlement") (the Transcribed Settlement and the

Written Settlement Agreement are referred to collectively herein as the "Settlement").

20.     The Transcribed Settlement provided that Banerjee would not, for a period of one

year after the Settlement Date:

> directly or indirectly as a consultant, employee of a third party, or in any other
> capacity or fashion work for and/or receive payment, compensation, or any other
> consideration from any current or former limited partner of GDF or GSS and will
> not directly or indirectly as a consultant, employee of a third party, or in any other
> capacity or fashion work for and/or receive payment, compensation, or any other
> consideration from or advise in any way the GDF or GSS partnerships, their
> general partner or affiliates as defined in the respective limited partnership
> agreements or GDF, GSS.  Further, Mr. Banerjee will not interfere with any

5

> relations Tuckerbrook has or will have with the limited partners to GDF or GSS
> or the third-party vendors or other affiliates of GDF or GSS.

(for reference the foregoing will be referred to herein as the "Settlement Non-competition

Provision").

21.    Further, the Transcribed Settlement provided that the terms of the settlement were

to be kept confidential, except that the parties could disclose to the limited partners of the Funds

the Settlement Non-competition Provision.

22.    The Transcribed Settlement provided for the dismissal with prejudice of the

claims and counterclaims in Tuckerbrook v. Banerjee I.

23.    As stipulated in the Transcribed Settlement, the Settlement Agreement contained

mutual releases by both Banerjee and Tuckerbrook.

24.    Specifically, Tuckerbrook released Banerjee from:

> any and all claims, including both known and Unknown Claims . . . liabilities,
> causes of action, rights of action and actions, demands, suits, proceedings,
> damages, costs, fees and expenses, and any and all claims, demands, and
> liabilities whatsoever, of every name and nature, both at law and in equity, from
> the beginning of time to the Settlement Date, that TB has ever had or ever may
> have had against Banerjee . . . *except that* nothing in the Release is intended to or
> shall relieve Banerjee of their obligations under the settlement as reported to the
> Court.

(emphasis added).

25.    Similarly, Banerjee released Tuckerbrook from:

> any and all claims, including both known and Unknown Claims . . . liabilities,
> causes of action, rights of action and actions, demands, suits, proceedings,
> damages, costs, fees and expenses, and any and all claims, demands, and
> liabilities whatsoever, of every name and nature, both at law and in equity, from
> the beginning of time to the Settlement Date, that Banerjee has ever had or ever
> may have had against TB . . . *except that* nothing in the Release is intended to or
> shall relieve TB of its obligations under the settlement as reported to the Court.

26.    Further, the Settlement Agreement provided that:

> The Parties agree and warrant that they will refrain from making, disseminating,
> posting, publishing, placing on Web sites, or otherwise distributing any
> derogatory or disparaging comments, whether orally, visually, or in writing,
> whether electronic or hard copy, to third parties regarding the other Party or its/his
> funds, partnerships, limited liability companies, business, products, services, or
> practices, or regarding its principals, employees, founders, customers, clients, or
> investors.

27.    The Settlement Date was September 23, 2008.

28.    Banerjee and Tuckerbrook each signed the Settlement Agreement.

29.    Tuckerbrook provided substantial consideration for the bargain of the Settlement,

including a substantial cash payment to Banerjee. The confidentiality provision, the Settlement

Non-competition Provision, the non-interference provision, and the non-disparagement provision

of the Settlement each were material to Tuckerbrook's willingness to enter into the Settlement.

30.    After the date of the Settlement, Banerjee remained in possession of certain of

Tuckerbrook's Trade Secrets, including but not limited to sensitive work product and a database

of confidential client information.

31.    On November 26, 2008, the Alkek Foundation, which is one of the limited

partners of the GSS, filed a lawsuit against the GSS partnership and Tuckerbrook alleging,

among other things, certain breaches by the partnership, and breaches by Tuckerbrook of its

obligations as the general partner and investment manager for the GSS fund.

32.    Discovery in the Alkek Lawsuit in August and September 2009 has revealed that

Banerjee has breached the terms of the Settlement.

33.    Specifically, the Director of the Plaintiff in the Alkek Lawsuit testified, in a

deposition in the Alkek Lawsuit, that Banerjee revealed to him the confidential terms of the

Settlement on the very day after the Settlement was reached.

7

34.    Further, Banerjee has interfered with Tuckerbrook's relationship with the limited partners of the Funds and the general partner of GSS, by assisting and coordinating with Alkek in its lawsuit against Tuckerbrook.

35.    In addition, Banerjee has been disparaging Tuckerbrook to, at minimum, Alkck, and, upon information and belief, to other current and prospective clients and business partners of Tuckerbrook.

36.    Further, upon information and belief, after the Settlement Date, Banerjee has claimed Tuckerbrook's work product and Trade Secrets as his own.

37.    Moreover, upon information and belief, after the Settlement Date, Banerjee has been using Tuckerbrook's work product and Trade Secrets in competition with Tuckerbrook by offering to provide them or actually providing them to Tuckerbrook's competitors, in an effort to compete with Tuckerbrook.

38.    Mr. Banerjee's assistance to Alkek in its lawsuit, his continuing disparagement of Tuckerbrook, his breach of confidentiality regarding the terms and conditions of the Settlement Agreement, his continuing interference with Tuckerbrook limited partners, and his theft of Tuckerbrook's work product and Trade Secrets has caused and continues to cause substantial injury and damage to Tuckerbrook and the GSS fund.

### COUNT I

### (Breach of Contract)

39.    Plaintiff realleges and incorporates by reference its allegations set forth in paragraphs 1-36 above.

40.    The Settlement is a valid contract and Tuckerbrook has performed its obligations under the Settlement.

8

41.    The Settlement provides that Banerjee is not to compete with Tuckerbrook,

interfere with Tuckerbrook's relationships or disparage Tuckerbrook from September 23, 2008

through September 23, 2009 (the "Restricted Period").

42.    In violation of the Settlement, during the Restricted Period, Banerjee has:

- disparaged Tuckerbrook;

- interfered with Tuckerbrook's client and partner relationships; and

- competed with Tuckerbrook or made significant efforts to compete with
  Tuckerbrook, including by offering to provide or actually providing
  Tuckerbrook's Trade Secrets to Tuckerbrook's competitors.

43.    Mr. Banerjee's disparagement of and interference and competition with

Tuckerbrook has caused, is continuing to cause and threatens to cause Tuckerbrook to suffer

substantial damages.

## COUNT II

### (Tortious Interference with Contract and/or Advantageous Business Relations)

44.    Plaintiff realleges and incorporates by reference its allegations set forth in

paragraphs 1-41 above.

45.    Tuckerbrook had contractual and/or advantageous business relations with its

employees, clients, prospective clients and its partners in the Funds as of the Settlement Date.

46.    After the Settlement Date, Banerjee, with knowledge of Tuckerbrook's

contractual and/or advantageous business relations, intentionally interfered with Tuckerbrook's

relations by, among other things, disparaging Tuckerbrook to its partners and employees and

assisting Tuckerbrook's partner with a lawsuit against Tuckerbrook.

47.    Banerjee's motive in interfering with Tuckerbrook's contractual and/or

advantageous business relations was improper.

9

48.     Tuckerbrook has suffered and will continue to suffer harm as a result of the defendant's tortious interference with its contractual and/or advantageous business relations, in an amount to be determined at trial.

## COUNT III

### ((Misappropriation of Trade Secrets)

49.     Plaintiff realleges and incorporates by reference its allegations set forth in paragraphs 1-45 above.

50.     Tuckerbrook's confidential and proprietary information regarding the Funds, including investment strategy, portfolio construction methods, research and analytics, marketing plans, partnership structure, compensation methods, and existing and prospective client information are trade secrets.

51.     Tuckerbrook's Trade Secrets are not known outside of Tuckerbrook's business and are known only to employees of Tuckerbrook.

52.     Tuckerbrook expended great effort and money to develop the Trade Secrets.

53.     Tuckerbrook took reasonable steps to protect the confidentiality of the Trade Secrets, including, but not limited to, disclosing the Trade Secrets only to certain of its employees and client relationships under the condition of confidentiality.

54.     By virtue of his employment with Tuckerbrook, Banerjee learned of Tuckerbrook's Trade Secrets.

55.     The Trade Secrets were and are of enormous value to Tuckerbrook as its own and that value is depleted by the unauthorized, improper use of the Trade Secrets and claims by Banerjee that they are his.

10

56.     Banerjee has, after the Settlement Date, used the Trade Secrets for his own benefit

and by improper means by, inter alia, claiming that Tuckerbrook's Trade Secrets are his own

work product and by offering to provide them, or actually providing them, to Tuckerbrook's

competitors.

57.     Tuckerbrook has been harmed by Banerjee's theft and use of the Trade Secrets.

## PRAYERS FOR RELIEF

WHEREFORE, Plaintiff Tuckerbrook respectfully requests that this Court:

a.      Grant Tuckerbrook judgment on each of its claims;

b.      Award Tuckerbrook damages, including but not limited to direct, consequential,
        and incidental damages, in relation to each Count;

c.      Order Banerjee to return the financial consideration that Tuckerbrook paid to
        Banerjee as part of the Settlement;

d.      Extend the Restricted Period from September 23, 2009 to September 23, 2010;

e.      Order Banerjee to cease and desist from disclosing any and all Tuckerbrook work
        product, confidential information, and/or Trade Secrets to anyone;

f.      Preliminarily and permanently enjoin Banerjee from further disparagement of
        Tuckerbrook;

g.      Order Banerjee to provide the names of anyone with whom Banerjee has
        communicated concerning Tuckerbrook or Tuckerbrook's Trade Secrets or other
        work product after September 23, 2008;

h.      Order Banerjee to provide the names of anyone to whom he disclosed the
        confidential terms of the Settlement;

11

i.    Grant Tuckerbrook such further and other relief as the Court deems just and
      proper, including costs and attorney's fees incurred in this action.

## PLAINTIFF DEMANDS A TRIAL BY JURY ON ALL COUNTS SO TRIABLE

Dated: October 6, 2009

Respectfully submitted,

Thomas N. O'Connor (BBO #377185)
Email: toconnor@ocmlaw.net
Sean T. Carnathan (BBO #636889)
Email: scarnathan@ocmlaw.net
Tara J. Myslinski (BBO #644936)
Email: tmyslinski@ocmlaw.net
O'Connor Carnathan & Mack LLC
8 New England Executive Park, Suite 310
Burlington, MA 01803
Telephone: 781.359.9000
Facsimile: 781.359.9001

12

## **VERIFICATION**

I, John J. Hassett, a Managing Principal of Tuckerbrook Alternative Investments, LP, depose and say that I am personally familiar with the facts upon which this Verified Complaint is based. I have read the foregoing Verified Complaint and hereby swear, on the pains and penalties of perjury, that the factual statements contained therein are true to the best of my knowledge, except as to those allegations made upon information and belief, and, as to those allegations, I believe them to be true.

Dated: September 25, 2009

John J. Hassett
Managing Principal, Tuckerbrook Alternative
Investments, LP

## CERTIFICATE OF SERVICE

I, Sean T. Carnathan, hereby certify that a true and accurate copy of the foregoing Verified Complaint has been filed and served through the Court's electronic filing system, this 6th day of October, 2009 and that a hard copy will be served upon the defendant along with service of process.

/s/ Sean T. Carnathan
Sean T. Carnathan

14