UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 12-11643-GAO

TUCKERBROOK ALTERNATIVE INVESTMENTS, LP,
Plaintiff,

v.

SUMANTA BANERJEE,
Defendant and Counterclaimant,

v.

TUCKERBROOK ALTERNATIVE INVESTMENTS, LP,
Counterclaim Defendant.

OPINION AND ORDER
September 30, 2014

O'TOOLE, D.J.

I. **Background**

This case arises out of the termination of counterclaimant Sumanta Banerjee's employment with counterclaim defendant Tuckerbrook Alternative Investments, LP ("Tuckerbrook"). The parties have a lengthy history of prior proceedings and factual disputes which this Court need not set out in detail. In relevant summary, Banerjee entered into an Employment Agreement with Tuckerbrook in May 2006 to serve as Portfolio Manager of certain hedge funds. Disputes between the parties began in early 2008 and led to the termination of the employment relationship. In April 2008, Tuckerbrook filed suit in Massachusetts Superior Court, and Banerjee removed the case to this Court. See Tuckerbrook Alternative Investments, LP v. Banerjee, 2008 WL 2356349 (D. Mass. June 4, 2008) ("Banerjee I"). The parties participated in court-sponsored mediation, and a final settlement agreement was executed by the parties on or about November 6, 2008. In October 2009, Tuckerbrook initiated a second action against

Banerjee, claiming, among other things, breach of the 2008 settlement agreement. Tuckerbrook Alternative Investments, LP v. Banerjee, 754 F. Supp. 2d 177 (D. Mass. 2010) (Banerjee II).

In early 2010, Always Investigations, on behalf of Tuckerbrook, contacted Banerjee in India in ways that Banerjee alleges were repeated and harassing. Meanwhile, Tuckerbrook and fund investors Alkek & Williams, Ltd. and Albert and Margaret Alkek Foundation (collectively "Alkek") were involved in unrelated litigation. Tuckerbrook and Banerjee contingently resolved Banjeree II through a settlement agreement, which required Banerjee to appear and testify at a deposition in the Alkek case, which he did. In September 2011, the parties again participated in arbitration regarding Tuckerbrook's allegations that Banjeree had violated the 2011 settlement agreement.

Before this Court, Tuckerbrook asserts breach of the 2008 settlement agreement, tortious interference with contract and/or advantageous business relations, misappropriation of trade secrets, and violation of Massachusetts General Laws Chapter 93A. Banerjee counterclaims alleging breach of the 2011 settlement agreement, abuse of process, defamation, and violation of Massachusetts General Laws chapter 93A. Tuckerbrook has moved to dismiss the counterclaims pursuant to Federal Rules of Civil Procedure 8(a)(2) and 12(b)(6). Tuckerbrook also has filed a motion to impound the related pleadings and exhibits, which Banerjee opposes.

## II.    Legal Standard

To survive a motion to dismiss a plaintiff must present facts that make his claim plausible on its face. Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). A viable complaint must be well-pled, and the facts must support logical conclusions. Specifically, the complaint must contain "more than labels and conclusions, and a formulaic recitation of the elements of the cause of action." Id. at 555. When evaluating a motion to dismiss, this Court must take "all the

factual allegations in the complaint as true." Maldonado v. Fontanes, 568 F.3d 263, 266 (1st Cir 2009) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)). This Court will also consider documents from prior related proceedings that were attached to the parties' memoranda, as well as the public record. See Watterson v. Page, 987 F.2d 1, 3 (1st Cir. 1993).

**III.** **Discussion**

    A.    Abuse of Process (Counterclaim II)

In Counterclaim II, Banerjee asserts that Tuckerbrook committed abuse of process through harassment in India and conduct during settlement negotiations. To prevail on a claim for abuse of process, the claimant must demonstrate that process was used against him for an "ulterior or illegitimate purpose," resulting in damage. Vittands v. Sudduth, 730 N.E.2d 325, 406 (Mass. App. Ct. 2000). "Process" in this context has a far narrower meaning than its colloquial definition and is "limited to three procedures: writs of attachment, process used to institute a civil action, and process related to the bringing of criminal charges." Cignetti v. Healy, 967 F. Supp. 10, 18 (D. Mass. 1997) (citing Jones v. Brockton Pub. Markets, Inc., 340 N.E.2d 484, 486 (1975)).

The actions that Banerjee complains of and attributes to Tuckerbrook do not qualify as "process" in the sense required for abuse of process. Instead, Banerjee seems to invoke a colloquial definition and allege that the general process of Tuckerbrook's interactions with him were abusive. For example: "The Plaintiffs, Tuckerbrook, have been on a path of harassment and coercion of Banerjee since this case was started in October 2009. This Abuse of Process has been demonstrated repeatedly over the years through the various activities of Tuckerbrook, Hassett and his counsel." (Counterclaim ¶ 23 (dkt. no. 22).) The facts alleged are confined to Tuckerbrook's attempts "to extort 'a favorable deposition'" and "to extort an 'Affidavit', id. ¶

3

39; namely, by using agents in India to "coerce Banerjee to appear for the deposition" in the Alkek case and by emailing a settlement offer in Banerjee II which contained an affidavit for Banerjee's signature "filled with outright lies and misrepresentations," id. ¶¶ 24-26. These factual allegations do not come close to the appropriate meaning of "process."

B.   Defamation (Counterclaim III)

In his Counterclaim III for defamation, Banerjee alleges that:

> Tuckerbrook . . . has repeatedly and continually caused harm through disparagement and harassment through its Agents (Always) and Counsel. Counterclaim Defendant, Tuckerbrook, has sent its agents all the way to India to the Plaintiff [Banerjee]'s place of residence to harass and disparage the Plaintiff to both authorities and Plaintiff's doctors. Defendant [Tuckerbrook]'s Counsel, Carnathan repeatedly makes misstatements, outright lies, and purposely tries to confuse and obfuscate this Honorable Court.

(Counterclaim ¶ 43 (dkt. no. 21).).

To state a claim for defamation, a claimant must allege "'(1) a false and defamatory communication (2) of and concerning the plaintiff which is (3) published or shown to a third party.' A defamatory communication is only actionable if it states a fact or states an opinion that implies undisclosed defamatory facts." Protective Factors Inc. v. Am. Broad. Cos, Inc., 2002 WL 1477174, at *3 (D. Mass. May 28, 2002) (quoting Dorn v. Astra USA, 975 F.Supp. 388, 396 (D. Mass. 1997)). Moreover, "a defendant is entitled to knowledge of the precise language challenged as defamatory." Phantom Touring, Inc. v. Affiliated Publ'ns, 953 F.2d 724, 728 n.6 (1st Cir. 1992). Massachusetts courts have therefore typically required plaintiffs to plead the elements of defamation with more specificity to survive a 12(b)(6) motion to dismiss. See Burke v. Town of Walpole, 2003 WL 23327539, at *11 (D. Mass. Aug. 5, 2003).

Banerjee's threadbare allegations fail to state an actionable claim for defamation because they include no facts suggesting false and defamatory communications and do not identify the language at issue. His additional allegations under the heading of Counterclaim III that

4

Tuckerbrook "made many disparaging remarks," "continually and repeatedly made misstatements, misrepresentations, and outright lies," and "as a direct result of the frivolous lawsuit and the disparaging remarks of Tuckerbrook's agents (Always), Mr. Banerjee has been adversely impacted," id. ¶¶ 44-47, are nothing "more than labels and conclusions." Twombly, 550 U.S. at 555.

### C.  Breach of Contract (Counterclaim I)

In Counterclaim I, Banerjee successfully states a claim for breach of contract. He alleges that the terms of the 2011 settlement agreement, which was agreed to under seal, include the following stipulation: "[i]f this settlement shall be null and void, the Payment [of $12,500] shall be returned to Banerjee and the litigation shall continue." (Counterclaim ¶ 37 (dkt. no. 21).) Banerjee alleges that he has paid this amount and that it has not been returned to him as required, since the 2011 settlement agreement was indeed rendered null and void by the arbitration award. He therefore contends that, under the terms of the Agreement, Tuckerbrook must return the $12,500 to him and that its failure to do so constitutes breach of contract. Id.

In its motion to dismiss, Tuckerbrook urges this Court to consider the breach of contract claim as an affirmative defense of set-off instead, since Tuckerbrook is seeking $209,028 in damages from Banerjee for breach of the 2008 settlement agreement. (Motion to Dismiss at 12 (dkt. no. 22).) This distinction goes to the merits of the claims and need not factor into the Court's determinations at the motion to dismiss stage. Viewing the facts in the light most favorable to Banerjee, I am persuaded that he has provided sufficient detail to state a claim for breach of contract.

### D.  Violation of Massachusetts General Laws Chapter 93A (Counterclaim IV)

Banerjee alleges in counterclaim IV that "Tuckerbrook's conduct as described herein constitutes an unfair and deceptive trade practice within the meaning of M.G.L. Ch. 93A, entitling Banerjee to an award of treble damages and attorney fees." (Counterclaim ¶ 49 (dkt. no. 21).).

Mass. Gen. Laws ch. 93A, § 2(a) bars "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." Conduct is unfair where "it is within the penumbra of some common-law, statutory, or other established concept of unfairness; is immoral, unethical, oppressive, or unscrupulous; and causes substantial injury." Young v. Wells Fargo Bank, N.A., 717 F.3d 224, 240 (1st Cir. 2013). Conduct is deceptive where "it could reasonably be found to have caused a person to act differently from the way he or she otherwise would have acted." Johnson v. Indymac Mortg. Servicing, 2014 WL 1652594 at *12 (D. Mass. Apr. 22, 2014) (internal quotations omitted).

Mass. Gen. Laws ch. 93A, § 1(b) reads:

> "Trade" and "commerce" shall include the advertising, the offering for sale, rent or lease, the sale, rent, lease or distribution of any services and any property, tangible or intangible, real, personal or mixed, any security as defined in subparagraph (k) of section four hundred and one of chapter one hundred and ten A and any contract of sale of a commodity for future delivery, and any other article, commodity, or thing of value wherever situate, and shall include any trade or commerce directly or indirectly affecting the people of this commonwealth.

This text has been interpreted to exclude intra-enterprise disputes, where the undertaking is purely private and not in the ordinary course of a trade or business, such as disputes arising from an employment relationship and disputes between members of a partnership business. States Res. Corp. v. The Architectural Team, Inc., 433 F.3d 73, 84 (1st Cir. 2005). Moreover, simple breach of contract is not enough to constitute a Chapter 93A violation. To rise to that level, the breaching party must be using breach of contract as a bad faith tactic "to gain an unfair

6

advantage over the other, vesting the breach with an extortionate quality." <u>Monotype Imaging Inc. v. Deluxe Corp.</u>, 883 F. Supp. 2d 317, 323 (D. Mass. 2012) (internal quotations omitted); <u>see also</u> <u>Ahern v. Scholz</u>, 85 F.3d 774, 798-99 (1st Cir. 1996) (no ch. 93A violation where defendant "tried to hold on to [plaintiff's] money, but he was not using the breach 'to force [plaintiff] to do what otherwise [he] would not be legally required to do.'").

Banerjee does not identify the particular facts that constitute a Chapter 93A violation but instead merely incorporates by reference all the facts outlined in his petition. Without further clarification, this Court assumes Banerjee means to present his first three claims as a separate Chapter 93A violation. This repackaging exercise is unsuccessful. The abuse of process and defamation allegations fail to state a claim and do not otherwise rise to the level of a separate violation. The breach of contract claim alone is also insufficient to support a ch. 93A claim, since Banerjee has not alleged that any breach committed was for an extortionate purpose or in bad faith to gain an unfair business advantage. <u>Monotype Imaging Inc.</u>, 883 F. Supp. 2d at 323. He has also not alleged facts to show unfairness or deceit as defined by <u>Young</u> and <u>Johnson</u>. Accordingly, Banerjee fails to state a claim for a violation of Mass. Gen. Laws ch. 93A.

## IV. **Motion to Impound**

Tuckerbrook says it intends to file a Motion for Partial Summary Judgment on its breach of contract claim and has moved to impound the pleadings and exhibits thereto. Tuckerbrook asserts that its pleadings and exhibits contain references to settlement terms and information that the parties in the particular case have designated as confidential and/or that were filed under seal. Banerjee's Opposition to this motion contains arguments that are not relevant to this decision.

Tuckerbrook is granted leave to file confidential materials under seal, on the condition that redacted versions are filed in the public docket.

## V. Conclusion

For the foregoing reasons, the Motion to Dismiss Counterclaims (dkt. no. 22) is GRANTED as to counterclaims II, III, and IV and DENIED as to counterclaim I. The Motion to Impound Pleadings and Exhibits (dkt. no. 26) is GRANTED on the condition expressed.

It is SO ORDERED.

                                                      */s/* George A. O'Toole, Jr.
                                                      United States District Judge